## NonFormulary Drug Request
### CDCR Form 7374

**Nonformulary Drug Request Process:**

This form must be completed and sent to the Facility Medical Authority (CMO, Chief Psychiatrist, Regional Dentist) along with the prescription (Physicians Order Form 7221).

2. If approved, the Facility Medical Authority shall forward the nonformulary request and the prescription to the pharmacy for dispensing (forms 7374 and 7221). If denied, the request and prescription should be returned to the requesting provider with reason for denial.

3. This form must be completed before the pharmacy can acquire a nonformulary drug for dispensing.

4. A 24 to 48 hour advance notice may be required before approved nonformulary drugs can be obtained by the pharmacy for dispensing.

5. A therapeutically equivalent agent may be available on the formulary. Please consult your pharmacist for assistance in formulary selection.

---

**REQUESTING PROVIDER:** _____ **CONTACT NO.:** NEUZARTH **DATE OF REQUEST:** 1/24/11

**DRUG REQUESTED** Neuberth NEU BARTH 1 24 11

| Medication Requested: Bloost | Strength: | Dosage Form(s): T 1 D |
|---|---|---|

**PATIENT INFORMATION & JUSTIFICATION**

| Patient's Name: WHEELER | CDCR Number: E82060 | Housing: CTC #34 |
|---|---|---|

1. Indication: _____ wired jaw

2. Expected Duration of Therapy: 6 weeks

3. Does the patient have a documented allergy or adverse reaction to the formulary alternative(s) which precludes its use? Document the offending agent(s) and the reaction below.

4. Does the patient have a documented therapeutic failure with the formulary alternative(s)? Document previous medication trials including dose, duration and measures for which failure was based (blood pressure, lab values, etc.).

5. Have other nonformulary medications been tried for this indication? List all previous medications tried including dose, duration and response.

6. Other justification. Please explain below.

7. Does the requested medication require any special monitoring or follow-up by specialist? If yes, please indicate monitoring parameter, frequency and follow-up plan.

---

**FACILITY REVIEW AND APPROVAL**

| [X] Approved | [ ] Denied | Length of Approval Granted (if different from that requested on Rx): |
|---|---|---|

Comments: _____ [maximum 6 months]

O. Beregovskaya
Int. Medicine
M.D.

_____ Facility Medical Authority _____ Date 1/28/11

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 1/25/11 | 0820 | | MOM 30 cc po prn constipation x 30 days |
| | | | O Dr. Beregovskaya / B. Lowder RN |
| | | | O Balpelif |
| Noted | 1/25/11 @ 0825 | | B. Lowder RN |
| 1/25/11 | 1715 | | Increase Boost to 3 cans tid x 30 |
| | | | May have w/c in cell |
| | | | X-ray L Knee (3 series) R/O fx on 1/26 |
| | | | MacD... |
| | | | noted 1/25/11 1730 ...twe RN |
| 1-26-11 | HN | — | 24° Chart ✓ Bml | T mmiz |
| 1-27-11 | LW | — | 24° Chart ✓ | C. ...LW |
| 1/28/11 | LW | — | 24 Chart ✓ done | |
| 1/29/11 | LW | — | 24 Chart ✓ done | |
| 1/30/11 | LW | — | 24 Chart ✓ on | |
| 1/31/11 | LW | — | 24 Chart ✓ | ...RN |

ALLERGIES: Penicillin

INSTITUTION: CSATF

ROOM/WING: 34

CDC NUMBER, NAME (LAST, FIRST, MI)

Confidential
client information
See W & I Code, Sections 4514 and
5328

Wheeler, Eric

E 82064

**PHYSICIAN'S ORDERS**

DOB: 5/14/58

page 61

CDC 7221 (2/00)
STATE OF CALIFORNIA        OSP 05 93459        DEPARTMENT OF CORRECTIONS

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 1/31/11 | | 1. | d/c naproxen |
| 1505 | | 2. | ibuprofen 600 mg PO TID prn pain X 30 days c̄ food |
| | | | _[signature]_ |
| | | | _[illegible]_ |
| 2/1/11 | W | | 24° Chart ✓ PMN — J. Munoz LVN |
| | W | | 24 _[illegible]_ ✓done — W _[illegible]_ |
| 2/2/11 | 0540 | / | please obtain labs ordered for 1/24/11 |
| | | | _[signature]_ Mendoza |
| | | | NOTED @ 0710 2/24/11 T. _[illegible]_ R.N. |
| 2/2/11 | 0925 | / | change ibuprofen to 600 mg P.O. q 8 hrs prn pain X 30 days |
| | | | _[signature]_ Mendoza |
| | | | NOTED @ _[illegible]_ |
| 2/7/11 | W | | 24° Chart ✓ done — _[illegible]_ |
| 2/_/11 | Lu | | 24° Chart ✓ done — _[illegible]_ |
| 2/9/11 | W | | 24 Chart ✓ done — _[illegible]_ |

| ALLERGIES: PCN | INSTITUTION SATF | ROOM/WING 34 |
|---|---|---|

CDC NUMBER, NAME (LAST, FIRST, MI)

Confidential
client information
See W & I Code, Sections 4514 and 5328

Wheeler, Eric
E 82064
5.14.58

**PHYSICIAN'S ORDERS**

# MEDICATION RECONCILIATION - ACTIVE MEDICATIONS AS OF 2/8/2011 2:39:16 PM

**Patient (DOB): WHEELER, ERIC (5/14/1958)**
**CDCR#: E82064   Unit#: CTC 0-034**

CALIF SUBSTANCE ABUSE TREATMENT FACILITY

Page 1 of 3

| | | Drug Name (Generic Name) | Start Date | Last Dispense | Expiration Date | Rx #, Doctor | Refills Left | Qty | Days |
|---|---|---|---|---|---|---|---|---|---|
| ☐ REFILLS: | PRN ☐ KOP ☐ STOP | ASPIRIN 81 MG TABLET DR (aspirin 81 mg tablet ec)<br>SIG: TAKE 1 TABLET BY MOUTH EVERY DAY **(CRUSH AND FLOAT) **CTC** **CTC | 1/21/2011 | 1/21/2011 | 2/20/2011 | 176461720-1<br>NEUBARTH-MD J. | 0 | 30 | 30 |
| ☐ REFILLS: | PRN ☐ KOP ☐ STOP | HYDROCHLOROTHIAZIDE 25 MG TABLET (hydrochlorothiazide 25 mg tab)<br>SIG: TAKE 1 TABLET BY MOUTH EVERY DAY **(CRUSH AND FLOAT) **CTC** **CTC | 1/21/2011 | 1/21/2011 | 2/20/2011 | 176461719-1<br>NEUBARTH-MD J. | 0 | 30 | 30 |
| ☐ REFILLS: | PRN ☐ KOP ☐ STOP | IBUPROFEN 600 MG TABLET (ibuprofen 600 mg tablet)<br>SIG: TAKE 1 TABLET BY MOUTH EVERY 8 HOURS AS NEEDED FOR PAIN **CTC** **CTC | 2/3/2011<br>CTC | 2/3/2011 | 3/5/2011 | 176456870-1<br>NEUBARTH-MD J. | 0 | 90 | 30 |
| ☐ REFILLS: | PRN ☐ KOP ☐ STOP | LACTOSE-FREE FOOD LIQUID (boost energy drink)<br>SIG: DRINK 2 CONTAINERS ORALLY 3 TIMES A DAY **CTC** FLOORSTOCK NON-FORMULARY APPROVED ** MAR ONLY | 2/2/2011 | 2/2/2011 | 3/4/2011 | 176466306-1<br>NEUBARTH-MD J. | 0 | 42,680 | 30 |
| ☐ REFILLS: | PRN ☐ KOP ☐ STOP | MAGNESIUM HYDROXIDE 400 MG/5 ML ORAL SUSP (milk of magnesia suspension)<br>SIG: TAKE 2 TABLESPOONSFUL BY MOUTH 3 TIMES A DAY AS NEEDED FOR CONSTIPATION **CTC** FLOORSTOCK ** MAR ONLY | 1/25/2011 | 1/25/2011 | 2/24/2011 | 176462836-1<br>BEREGOVSKAYA-MD, O. | 0 | 473 | 5 |
| ☐ REFILLS: | PRN ☐ KOP ☐ STOP | SIMVASTATIN 20 MG TABLET (simvastatin 20 mg tablet)<br>SIG: TAKE 1 TABLET BY MOUTH AT BEDTIME **(CRUSH AND FLOAT) **CTC** **CTC | 1/21/2011 | 1/21/2011 | 2/20/2011 | 176461721-1<br>NEUBARTH-MD J. | 0 | 30 | 30 |

# MEDICATION RECONCILIATION - INACTIVE MEDICATIONS AS OF 2/8/2011 2:39:16 PM

**Patient (DOB): WHEELER, ERIC (5/14/1958)**
**CDCR#: E82064   Unit#: CTC 0-034**

CALIF SUBSTANCE ABUSE TREATMENT FACILITY

| | | Drug Name (Generic Name) | Start Date | Last Dispense Description Date | Rx #, Doctor | Refills Left | Qty | Days |
|---|---|---|---|---|---|---|---|---|
| ☐ REFILLS: | PRN ☐ KOP ☐ STOP | | | | | | | |

**❶ ONLY CHANGE OR PROCESS CHECKED PRESCRIPTIONS**

albuterol 0.12 %
disp. 3 one line bottles
Sig. fine times daily for 30 record
nebulization 1 1/2 cc

DR. M. ANCHETA, CSATF
DISPENSE AS WRITTEN SIGNATURE

*(signature)*

NEW PRESCRIPTION:
allergies: PENICILLIN

SUBSTITUTION PERMITTED SIGNATURE    DATE / TIME   1-18-2011    PROV#

*** SEND TO PHARMACY ONCE COMPLETE ***

DEA# REQUIRED FOR CONTROLLED SUBSTANCES

NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| | | | |
| 2/7/11 | /W | | 2V° *illegible* ✓ *illegible* |
| 2/8/11 | /W | | 2V° *illegible* ✓ *illegible* |
| 2/8/11 | | | R F S - E N T |
| | | | O. Beregovskaya, M.D. Int. Medicine |
| | | | |
| | | | *illegible* |
| 2/9/11 | | | wired jaw diet |
| 6530 | | | NEOEARTH |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | T. MUÑOZ LVN |
| | | | T. MUÑOZ LVN |
| | | | |

**ALLERGIES:** PCN

**INSTITUTION** CSATF

**ROOM/WING** 34

CDC NUMBER, NAME (LAST, FIRST, MI)

Confidential
client information
See W & I Code, Sections 4514 and 5328

WHEELER, ERIK

E-82064

5/14/6Y

**PHYSICIAN'S ORDERS**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 1/6/11 | | 1. | *illegible* |
| 0500 | | 2. | *illegible* |
| | | | *illegible* |
| | | | *illegible* |
| | | | |

| ALLERGIES: | | | INSTITUTION C.S.A.T.C. | ROOM/WING 74 |

CDC NUMBER, NAME (LAST, FIRST, MI)

Confidential
client information
See W & I Code, Sections 4514 and
5328

Wheeler, Eric
CDCR E82064
DOB: 5/14/58
Allergies: Penicillin
Dr. Neubarth

## PHYSICIAN'S ORDERS

## MEDICATION RECONCILIATION - ACTIVE MEDICATIONS AS OF 2/16/2011 2:14:27 AM

**Patient (DOB): ERIC WHEELER (5/14/1958)**

CDCR#: E82064    Unit#: CTC 0-034

CALIF SUBSTANCE ABUSE TREATMENT CTC

| | Drug Name (NDC) | Start Date | Last Dispense | Expiration Date | Rx # - Doctor | Refills Left | Qty | Days |
|---|---|---|---|---|---|---|---|---|
| ☐ REFILLS: ☐ PRN ☐ KOP ☐ STOP | CHLORHEXIDINE GLUCONATE 0.12% MOUTHWASH (chlorhexidine 0.12% rinse)<br>SIG: RINSE 15MLS TWICE A DAY FOR 30 SECONDS THEN SPIT **KOP** NO REFILLS** KOP | 2/8/2011 | PENDING | 2/23/2011 | 178469800-1<br>M. ANICHETA-DDS | 0 | 473 | 16 |
| ☒ REFILLS: ☐ PRN ☒ KOP ☐ STOP | ASPIRIN 81 MG TABLET DR (aspirin 81 mg tablet ec)<br>SIG: TAKE 1 TABLET BY MOUTH EVERY DAY **(CRUSH AND FLOAT)** **CTC** CTC | 1/21/2011 | 1/21/2011 | 2/20/2011 | 176451720-1<br>J. NEUBARTH-MD | 0 | 30 | 30 |
| ☒ REFILLS: ☐ PRN ☐ KOP ☐ STOP | HYDROCHLOROTHIAZIDE 25 MG TABLET (hydrochlorothiazide 25 mg tab)<br>SIG: TAKE 1 TABLET BY MOUTH EVERY DAY **(CRUSH AND FLOAT)** **CTC** CTC | 1/21/2011 | 1/21/2011 | 2/22/2011 | 176451719-1.<br>J. NEUBARTH-MD | 0 | 30 | 30 |
| ☐ REFILLS: ☐ PRN ☐ KOP ☐ STOP | IBUPROFEN 600 MG TABLET (ibuprofen 600 mg tablet)<br>SIG: TAKE 1 TABLET BY MOUTH EVERY 8 HOURS AS NEEDED FOR PAIN **CTC** CTC | 2/3/2011 | 2/3/2011 | 3/5/2011 | 176456870-1<br>J. NEUBARTH-MD | 0 | 90 | 30 |
| ☐ REFILLS: ☐ PRN ☐ KOP ☐ STOP | LACTOSE-FREE FOOD LIQUID (boost energy drink)<br>SIG: DRINK 2 CONTAINERS ORALLY 3 TIMES A DAY **CTC** FLOORSTOCK NON-FORMULARY APPROVED ** MAR ONLY | 2/2/2011 | 2/2/2011 | 3/4/2011 | 176456308-1<br>J. NEUBARTH-MD | 0 | 42,660 | 30 |
| ☒ REFILLS: ☐ PRN ☐ KOP ☐ STOP | MAGNESIUM HYDROXIDE 400 MG/5 ML ORAL SUSP (milk of magnesia suspension)<br>SIG: TAKE 2 TABLESPOONSFUL BY MOUTH 3 TIMES A DAY AS NEEDED FOR CONSTIPATION **CTC** FLOORSTOCK **MAR ONLY | 1/25/2011 | 1/25/2011 | 2/24/2011 | 176452836-1<br>O. BEREGOVSKAYA-MD | 0 | 473 | 5 |
| ☒ REFILLS: ☐ PRN ☐ KOP ☐ STOP | SIMVASTATIN 20 MG TABLET (simvastatin 20 mg tablet)<br>SIG: TAKE 1 TABLET BY MOUTH AT BEDTIME **(CRUSH AND FLOAT)** **CTC** CTC | 1/21/2011 | 1/21/2011 | 2/20/2011 | 176451721-1<br>J. NEUBARTH-MD | 0 | 30 | 30 |

## MEDICATION RECONCILIATION - INACTIVE MEDICATIONS AS OF 2/16/2011 2:14:28 AM

**Patient (DOB): ERIC WHEELER (5/14/1958)**

CDCR#: E82064    Unit#: CTC 0-034

CALIF SUBSTANCE ABUSE TREATMENT CTC

| | Drug Name (NDC) | Start Date | Last Dispense | Deactivation Date | Rx # - Doctor | Refills Left | Qty | Days |
|---|---|---|---|---|---|---|---|---|
| ☐ REFILLS: ☐ PRN ☐ KOP | ACETAMINOPHEN 325 MG TABLET (mapap 325 mg tablet)<br>SIG: TAKE 2 TABLETS BY MOUTH 3 TIMES A DAY AS NEEDED FOR PAIN **NA** **REQUEST REFILL** N/A | 1/3/2011 | D/A 1/3/2011 | 1/21/2011 | 176452797-1<br>W. KOKOR-MD | 2 | 60 | 10 |

ONLY CHANGE OR PROCESS CHECKED PRESCRIPTIONS

NEW PRESCRIPTION:

SUBSTITUTION PERMITTED SIGNATURE _____

DATE _____

PROV# _____

DISPENSE AS WRITTEN SIGNATURE

DEA# REQUIRED FOR CONTROLLED SUBSTANCES

*** SEND TO PHARMACY ONCE COMPLETE ***

NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 2/16/11 | | 1. | enalapril 5 mg P.O. daily × 30 days |
| 6500 | | 2. | XR L knee today please |
| | | | Noted @ 0635 2/16/11 ↑ Tommy, R. |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| ALLERGIES: | | INSTITUTION | ROOM/WING |
|---|---|---|---|
| P.C. N | | CSATF | 24 CTC |

CDC NUMBER, NAME (LAST, FIRST, MI)

Confidential.
client information
See W & I Code, Sections 4514 and
5328

**PHYSICIAN'S ORDERS**

Wheeler, Eric
CDCR E82064
DOB: 5/14/57
Allergies: Penicillin
Dr. Neubarth

CDC 7221 (2/00)
STATE OF CALIFORNIA          OSP 05 93459          DEPARTMENT OF CORRECTIONS

# MEDICATION RECONCILIATION - ACTIVE MEDICATIONS AS OF 2/16/2011 2:14:27 AM

**Patient (DOB): ERIC WHEELER (5/14/1958)**
CDCR#: EB2064   Unit#: CTC 0-034

CALIF SUBSTANCE ABUSE TREATMENT CTC

| | Drug Name (NDC) | Start Date | Last Dispense | Expiration Date | Rx # - Doctor | Refills Left | Qty | Days |
|---|---|---|---|---|---|---|---|---|
| ☐ REFILLS: ☐ PRN ☐ KOP ☐ STOP | CHLORHEXIDINE GLUCONATE 0.12 % MOUTHWASH (chlorhexidine 0.12% rinse)<br>SIG: RINSE 15MLS TWICE A DAY FOR 30 SECONDS THEN SPIT **KOP** **NO REFILLS** **KOP | 2/8/2011 | PENDING | 2/23/2011 | 176459800-1<br>M. ANCHETA-DDS | 0 | 473 | 16 |
| ☑ REFILLS: ☐ PRN ☑ KOP ☐ STOP | ASPIRIN 81 MG TABLET DR (aspirin 81 mg tablet ec)<br>SIG: TAKE 1 TABLET BY MOUTH EVERY DAY **(CRUSH AND FLOAT)** **CTC** **CTC | 1/21/2011 | 1/21/2011 | 2/20/2011 | 176461720-1<br>J. NEUBARTH-MD | 0 | 30 | 30 |
| ☑ REFILLS: ☐ PRN ☐ KOP ☐ STOP | HYDROCHLOROTHIAZIDE 25 MG TABLET (hydrochlorothiazide 25 mg tab)<br>SIG: TAKE 1 TABLET BY MOUTH EVERY DAY **(CRUSH AND FLOAT)** **CTC** | 1/21/2011 | 1/21/2011 | 2/20/2011 | 176461719-1<br>J. NEUBARTH-MD | 0 | 30 | 30 |
| ☐ REFILLS: ☐ PRN ☐ KOP ☐ STOP | IBUPROFEN 600 MG TABLET (ibuprofen 600 mg tablet)<br>SIG: TAKE 1 TABLET BY MOUTH EVERY 6 HOURS AS NEEDED FOR PAIN **CTC** **CTC | 2/3/2011 | 2/3/2011 | 3/5/2011 | 176466870-1<br>J. NEUBARTH-MD | 0 | 90 | 30 |
| ☐ REFILLS: ☐ PRN ☐ KOP ☐ STOP | LACTOSE-FREE FOOD LIQUID (boost energy drink)<br>SIG: DRINK 2 CONTAINERS ORALLY 3 TIMES A DAY **CTC** FLOORSTOCK NON-FORMULARY APPROVED ** MAR ONLY | 2/2/2011 | 2/2/2011 | 3/4/2011 | 176466308-1<br>J. NEUBARTH-MD | 0 | 42,660 | 30 |
| ☑ REFILLS: ☐ PRN ☐ KOP ☐ STOP | MAGNESIUM HYDROXIDE 400 MG/5 ML ORAL SUSP (milk of magnesia suspension)<br>SIG: TAKE 2 TABLESPOONSFUL BY MOUTH 3 TIMES A DAY AS NEEDED FOR CONSTIPATION **CTC** FLOORSTOCK **MAR ONLY | 1/25/2011 | 1/25/2011 | 2/24/2011 | 176452835-1<br>O BEREGOVSKAYA-MD | 0 | 473 | 5 |
| ☑ REFILLS: ☐ PRN ☐ KOP ☐ STOP | SIMVASTATIN 20 MG TABLET (simvastatin 20 mg tablet)<br>SIG: TAKE 1 TABLET BY MOUTH AT BEDTIME **(CRUSH AND FLOAT)** **CTC** **CTC | 1/21/2011 | 1/21/2011 | 2/20/2011 | 176461721-1<br>J. NEUBARTH-MD | 0 | 30 | 30 |

# MEDICATION RECONCILIATION - INACTIVE MEDICATIONS AS OF 2/16/2011 2:14:28 AM

**Patient (DOB): ERIC WHEELER (5/14/1958)**
CDCR#: EB2064   Unit#: CTC 0-034

CALIF SUBSTANCE ABUSE TREATMENT CTC

| | Drug Name (NDC) | Start Date | Last Dispense | Deactivation Date | Rx # - Doctor | Refills Left | Qty | Days |
|---|---|---|---|---|---|---|---|---|
| ☐ REFILLS: ☐ PRN ☐ KOP | ACETAMINOPHEN 325 MG TABLET (mapap 325 mg tablet)<br>SIG: TAKE 2 TABLETS BY MOUTH 3 TIMES A DAY AS NEEDED FOR PAIN **NA** **REQUEST REFILL** **N/A | 1/3/2011 | D/A 1/3/2011 | 1/21/2011 | 176452797-1<br>W. KOKOR-MD | 2 | 60 | 10 |

DISPENSE AS WRITTEN SIGNATURE

DEA# REQUIRED FOR CONTROLLED SUBSTANCES

"**" - nonformulary Medication

**- - - SEND TO PHARMACY ONCE COMPLETE - - -**

☐ SUBSTITUTION PERMITTED SIGNATURE _____   DATE _____   PROV# _____

NEW PRESCRIPTION:

ONLY CHANGE OR PROCESS CHECKED PRESCRIPTIONS

NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 2/23/11 | 0110 | | d/c ibuprofen |
| | | | Neubarter |
| | Noon | 2/23 | R os 1010  S. Freeda  DC |
| 2/24/11 | 1W | — | 24 Crant v done      Ju Jw |
| | | | |
| | | | |
| | | | |

ALLERGIES:

INSTITUTION
CSATF

ROOM/WING
CTC 34

CDC NUMBER, NAME (LAST, FIRST, MI)

Confidential
client information
See W & I Code, Sections 4514 and
5328

WHEELER    ERIC

E82064

5/14/58

**PHYSICIAN'S ORDERS**

CDC 7221 (2/00)
STATE OF CALIFORNIA            OSP 05  93459       DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

## PHYSICIAN REQUEST FOR SERVICES

(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME | CDC NUMBER | INSTITUTION |
|---|---|---|

| DATE OF BIRTH | EPRD DATE | | GENDER |
|---|---|---|---|

| PRINCIPLE DIAGNOSIS | | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|---|

| REQUESTED SERVICE(S) | | | # OF DAYS RECOMMENDED |
|---|---|---|---|

*Please circle all that apply:* Diagnostic Procedure/Consultation   Outpatient/Inpatient   Initial/Follow-up

Requested Treatment/Service is:   **EMERGENT**   **URGENT**   **ROUTINE**

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _____   Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution. transfer): _____

Medical Necessity (*briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant*): _____

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____
Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE |
|---|---|---|

| REQUESTING PHYSICIAN SIGNATURE | DATE | Utilization management tracking # |
|---|---|---|

| DATE OF CONSULTATION: | PRINTED NAME OF CONSULTANT: |
|---|---|

FINDINGS: _____

RECOMMENDATIONS: _____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | |
| PCP SIGNATURE | DATE | |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL · FILE IN UHR
GREEN · TO UHR PENDING ORIGINAL
CANARY · CONSULTANT
PINK · UM
GOLD · SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)        CDC 7243 (Rev. 11/02)

Substance Abuse Treatment Facility and State Prison, Corcoran
## Malnutrition Screen and Dietitian Referral

Instructions: Upon admission, assess the patient's status utilizing the clinical parameters listed by marking Yes or No. If Yes, is checked (√) in any of the parameters listed below or if in your critical thinking process you feel that a patient needs a referral, please fill out the form and put in the RD's box.

| Parameters | Yes | No |
|---|---|---|
| Hunger Strike | | |
| Unintentional Weight Loss (5% wt loss in 1 month; ≥10% in 6 months or 2% or greater in one week | | √ |
| Cachectic Appearance | | √ |
| Fed by Staff, Tube Fed, TPN, Nutritional Supplements  *Denied diet* | X | X |
| Dysphagia | | √ |
| Decub (Pressure Ulcers) | | √ |
| Admit Diagnosis of Malnutrition | | √ |
| New Onset of Diabetes or Poorly controlled Diabetes | | √ |
| Acute/End Stage Renal or Liver Failure | | √ |
| Cancer or AIDS | | √ |
| Pancreatitis | | √ |
| Patient with the following abnormal lab values: Albumin <3.0g/dl; Creatinine > 2.0 mg/dl; H/H <9/30 | | N/A |

Date Screened /21/11  Time /6 €  Signature ___

Dietitian Notified: Date /21/11  Time: 6 ─  Signature ___

RD Response: Date ___  Time ___  Signature ___

(☼ Utilize 24 hr clock when recording time)

## Comments

_____

_____

_____

( B. Obsequio, RD ext.#5486)

IM Name _____  Number _____

CDCR 7202

Wheeler, Eric
CDCR E82064
DOB: 5/14/58
Allergies: Penicillin
Dr. Neubarth

Substance Abuse Treatment Facility and State Prison, Corcoran
Correctional Treatment Center Policy and Procedure Manual          Food and Nutrition Services

CORRECTIONAL TREATMENT CENTER

## NUTRITION PROGRESS NOTES

| DATE | NOTES |
|---|---|
| 2/8/11 | Nutrition |
| | S/P ASpen #1 int: good: because of: 1 pain. from, leg. Feels the 6 cans of |
| | Boost/day are enough. Not getting hungry. No nausea or vomiting. |
| | Drinks the 6 Boost daily plus 1-2 juices 1-2 milks daily. Was |
| | constipated. had good BM this morning. Unable to chew due to mouth |
| | wired shut. No difficulty swallowing. Difficulty getting puree |
| | through straw. therefore not eating food on trays. |
| | O/ 52 yo 68" 160 lbs (½) refused Feb monthly wt   BMI 24.2 |
| | Admit Dx: 5/2 closed reduction L mandible fx with wire fixation ¼ec |
| | @ Knee pain. |
| | Other Dx: HTN  hyperlipidemia  multiple lipomes, osteopenia  psych issues |
| | Diet: puree (2700-2900 Kcal/day) + 474 mL Boost TID (414+0 Kcal) |
| | 60 gm protein daily) |
| | Meds: HCTZ  ASA, simvastatin |
| | (2/14) hgb/hct 13.1/40.5  Na/K 135/4.4  BG 95  BUN/cr 10/0.9  Ca 9.3  Alb 4.0 |
| | Chol 170  HDL 30  LDL 109  Chol:HDL 5.7  Trig 153 |
| | A/ Estimated Nutritional Needs: 1456 - 2016 Kcal/day (23-28/kg BW) |
| | 72 gm protein/day (1/kg BW)  1800 mL fluid (25/kg BW) |
| | Appears nourished & hydrated. BMI indicates normal wt/ht. Wt |
| | maintenance indicated. Current diet alone provides adequate nutrition |
| | but pt unable to eat it, he's relying on Boost which alone doesn't |
| | meet estimated needs. Wired Jaw diet indicated to maintain wt & help |
| | with healing. Was on cholecalciferol & calcium supplements prior to broken jaw |
| | Pt unable to take them at this time due to jaw wired shut. These should |
| | be resumed once wires cut. Per Chol: HDL, pt at average risk of |
| | heart failure. HDL low. Exercise indicated once L/R knee issue resolved |
| | to help improve HDL & decrease risk of heart failure |
| | Education: Importance of adequate nutritional intake including both |
| | the Boost supplement & his diet. Recommended pt add fluid to his |
| | pureed food to thin it to consistency he can suck through a straw |
| | P/@ Recommend: change diet to " Wired Jaw Diet "/ spoke with Kitchen |
| | already which agreed to thin pt's puree diet |
| | @ Will F/u in 4xweeks 7-10 days |
| | ME Smith RD |

| CDC # | E - 82 0u 4 |
|---|---|
| Name: | Wheeler  Eric |
| DOB: | 5/14/55 |
| Physician: | |
| Facility: | |

Substance Abuse Treatment Facility and State Prison, Corcoran          Food and Nutrition Services
Correctional Treatment Center Policy and Procedure Manual

CORRECTIONAL TREATMENT CENTER

## NUTRITION PROGRESS NOTES

| DATE | NOTES |
|------|-------|
| 2/11/11 | F/m-pt w/ drinking 100% Boost still & is able to eat more food now |
| | that it has been changed to Wired Jaw Diet. F/m meeting |
| | estimated nutritional needs new. |
| | Suillantiqui Wired Jaw Diet |
| | Continue 237 mL Boost x 2   T7D |
| | Will F/u in 7-10 days   ME Smith RD |
| 2/15/11 | Follow-up |
| | F/m pt feels that he is lost wt. Says he can see it in his |
| | stomach & calves. Says he worked out daily before this incident & isn't |
| | now so he knows he's lost muscle wt. Says 80% of the time |
| | his food is pureed properly. 20% of the time it has chunks in it or |
| | he gets regular consistency food (ie. cereal, crackers) Not eating |
| | lunch today - says his sick of eating the same food. Mentioned |
| | to he think he's getting too many carbohydrates. Advised Pt his |
| | lunch was a sandwich with meat which is a good source of |
| | protein. He then said he just didn't want to eat today. |
| | He requested Boost Plus vs Boost. Discussed with him - |
| | getting weighed. Says he still can't walk. May be willing to |
| | be weighed using hoyer lift. |
| | O) wt: 0 new |
| | Conditions: 0 change. to see oral surgeon next week |
| | Meds: started enalapril 2/11 |
| | Labs: 0 new |
| | Diet - Wired-jaw diet (2700 - 2900 Kcal/day)   474 mL Boost T7D |
| | 1440 Kcal 60 gm protein/day. |
| | P.G. Intake  2/17   2/11   2/15 |
| | breakfast   0   100   100 } 1.9% /meal average |
| | lunch   50   100   100 |
| | dinner   ↑   ↑   75 |
| | A/ Estimated needs (from assessment 2/6): 1650 - 2000 Kcal/day |
| | (23-28 / Kg Body Wt), 72 gm protein/day (1/Kg body wt) |
| | 1800 - 2100 mL fluid /day (25-30 /Kg body wt) |
| | Pt appears hydrated & nourished. Wt maintenance indicated |
| | Mostly tolerating wired jaw diet. Probably meeting estimated |
| | (continued) |

| CDC # | E-52064 |
|-------|---------|
| Name: | Wheeler, Eric |
| DOB: | 5/14/58 |
| Physician: | page 8 |
| Facility: | |

Revised: December 11, 2009                4-5

Substance Abuse Treatment Facility and State Prison, Corcoran
Correctional Treatment Center Policy and Procedure Manual          Food and Nutrition Services

CORRECTIONAL TREATMENT CENTER

## NUTRITION PROGRESS NOTES

| DATE | NOTES |
|------|-------|
| 2/18/11 | Continued estimated nutritional needs with few p.o. intakes of meals - 100% intake of Boost. Higher nutrient Boost Plus not indicated. Actual weight needed to better assess objectively nutritional status. |
|  | P Klimmate with poor diet |
|  | @ Inservice Kitchen again on wired jaw diet |
|  | ③ Will F/u within 7 days |
|  | Mary-Eileen Smith RD |

| CDC # | E - 82064 |
|-------|-----------|
| Name: | Wheeler, Eric |
| DOB: | 5/14/58 |
| Physician: | |
| Facility: | |

Correctional Treatment Center Policy and Procedure Manual - Food and Nutrition Services

Corcoran SATF

## Corcoran SATF Nutrition Care Plan – Mental Health page 1

| Date Initials | Problem / Need | Goal | Interventions | Dept | Date Reviewed | Date Reviewed | Date Reviewed | Date Resolved |
|---|---|---|---|---|---|---|---|---|
| | **Inmate Patient at Nutrition Risk / (Clinical Conditions) e.g.** | Goal Wt ___ to ___ lbs | Diet as Rx | ◉ | | | | |
| | | | MVI/Min Zn; Vit C | | | | | |
| | Refusal to eat | By ___ | CMP; Lipid Panel; HgA1c | | | | | |
| | Restrictive Therapeutic Diet | By ___ | Less restrictive diet if approved by MD | ◉ | | | | |
| | Increased biological demand of nutrients e.g. wound healing, chronic infection, multiple fractures; Advanced Disease (s). | By ___ | Fortified Cereal, Fortified or Whole Milk, Fortified Potatoes, Extra marg/gravy, Snacks to increase kcals | | | | | |
| | Depression Dementia & other Psych dx Pacing, Wandering, Easily distracted from eating | Labs will return to/ remain within nl / accept levels | Med Pass (Resource) 2.0 cc ___ x per day | | | | | |
| | Drug Nutrient Interaction S/S | By ___ | Limit Caffeine/Grapefruit | ◉ | | | | |
| | Dental Status or Mouth Sores | By ___ | Dental Consult | | | | | |
| | Drugs (polypharmacy) | By ___ | Pharmacy Consult | | | | | |
| | Poor P O Intake | No Significant Loss | Provide freq sm feedings | | | | | |
| 2/8/11 | Mech Altered Diet/ Dysphagia | No S/S aspiration | Nx w/meals or between. Provide feed at meals time; Pro Powder/liquid | ◉ | 2/8/11 | | | |
| | BMI < 18.5 | By ___ | | ◉ | | | | |
| | Abnormal Nutrition Labs | By ___ | Wt wkly until stable | | | | | |
| | Unplanned Wt Loss / gain | By ___ | Monitor wt q mo. | | | | | |

◉ Dietary   ▪ Nurse   Chaplain   M.D.

Wheeler, Eric
CDCR E82064
DOB: 5/14/58
Allergies: Penicillin
Dr. Neubarth

Correctional Treatment Center Policy and Procedure Manual – Food and Nutrition Services

Corcoran SATF

## Corcoran SATF Nutrition Care Plan – Mental Health page 2

| Date / Initials | Problem / Need | Goal | Interventions | Dept. | Date Reviewed | Date Reviewed | Date Reviewed | Date Reviewed | Date Resolved |
|---|---|---|---|---|---|---|---|---|---|
| | Food Safety issues | No food borne illness | Remove trays before 4 ° | | | | | | |
| | Inadequate Calcium intake | | Offer other Calcium rich food/supplement | | | | | | |
| | Intake that exceeds estimated needs wt ↑ (not fluid retention) | | Encourage wt loss | | | | | | |
| | Self Feeding Deficits | | Encourage self efforts Adaptive Equip/table ht Finger foods | | | | | | |
| | Patient at Nutrition Risk / Dehydration Risk Factors | Will have moist mucous membranes | Xtra Fluids-Med Pass ☐ Xtra Fluids w/Meals ☐ | | | | | | |
| | Vomiting/Diarrhea /Fever | By_____ | I & O's to meet fluid goal | | | | | | |
| | Unable to Obtain Fluids (l) | By_____ | Hi Fiber Foods | | | | | | |
| | Anemia / Internal Bleeding | By_____ | Iron rich food 1 x q d | | | | | | |
| | Fluid Restriction / Edema | | Monitor BP / SOB | | | | | | |
| | Diuretic or Dilantin | Will have Cap. Refill < 3sec.unless Cardiac condition | Monitor Edema | | | | | | |
| | Thickened Liquids | is significant | SLP eval | SLP | | | | | |
| | Inadequate Fluid Intake | | Encourage fluids | | | | | | |
| | Capillary Refill >5 sec | By_____ | Monitor care of nausea, vomiting, loose stools, loss of appetite | | | | | | |
| | Output Exceeds Intake | By_____ | | | | | | | |
| | Lacks Sensation of Thirst | By_____ | | | | | | | |
| 10-5-07 | Constipation / Impaction | | Meds as Rx | | | | | | |

☐ Nurse  ☐ Dietary  ☐ Chaplain  MID

Wheeler, Eric
CDCR E82064
DOB: 5/14/58
Allergies: Penicillin
Dr: Neubarth

page 84

ADDRESSOGRAPH

## NURSING DISCHARGE SUMMARY:

(Please include admission Date/Time, Housing, Diagnosis)

admitted 1/21/11 ~ 1630 ere #24. Left mandible fracture
Jaw fracture

Vital Signs: T 57.8  R 3~  c~ sat 97.2
P 76.  Bp 137/5 c  Allergies: PCN

Medication: See Med profile

Comments: Consume small portions of goods to aid in swallowing untill mouth can accommodate larger portions. Don't eat hard food. See md on yard for follow up appointment Instructed that w/c will remain outside of this cell.

Follow-up Appointments: Follow up appt c PCP on yd within 5 days

Date Discharge Written: 1/23/11 ___  Date/Time Left CTC: 1615  2/24/11

Discharged to Housing Unit: E, - 113 L

Copy to: RN EP7 c lemet OTHER forced discharge order to E,

| TYPE OF REPORT (Check one) | | Signature of Provider | | |
|---|---|---|---|---|
| ☐ HISTORY & PHYSICAL EXAM CDC 7206 | ☐ DISCHARGE SUMMARY CDC 7218 | PATIENTS NAME (LAST, FIRST, MI) | | |
| | | CDC NUMBER | DATE DICTATED | DATE TYPED |
| ☐ PROGRESS NOTE CDC 7230 | ☐ DEATH REPORT CDC 7229 | INSTITUTION | | |
| ☐ CONSULTATION REPORT CDC 7243 | ☐ TRANSFER SUMMARY CDC 7295 | UNIT / WING / BED # | | |
| | | HOSPITAL / CENTER | | |
| ☐ OPERATION REPORT CDC 7205 | ☐ OTHER (Specify) | | | |

HEALTH RECORD REPOR

Wheeler, Eric
CDCR E82064
DOB: 5/14/58
Allergies: Penicillin
Dr. Neubarth
DEPARTMENT OF COR...

CDC 7292 (11/89)
STATE OF CALIFORNIA

page 8

| RESTORATIONS AND TREATMENTS (Completed during incarceration) | SUBSEQUENT DISEASES AND ABNORMALITIES |
|---|---|
|  |  |

| REMARKS | REMARKS |
|---|---|
| BP_____ P_____ T_____ WT_____<br><br>Pt rinsed with peridex for _____ SEC | |

Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.

| DATE OF ACTION (month/day/year) | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|

THE DISABILITY EFFECTIVE COMMUNICATION(DEC) SYSTEM, UHR OR APPROPRIATE LISTS WERE REVIEWED FOR EFFECTIVE COMM NEEDS:

| S" was Identified with: | Assistance provided to ensure effective communication: | Method used to determine communication was effective: |
|---|---|---|
| TABE 4.0 or lower<br>Hearing<br>Vision<br>Speech<br>Learning Disability<br>Developmental Dis<br>Mobility Impairment | □Use of Text Magnifier □Sign Language Interpreter<br>□Read Documents to "S" □Written Notes(see attached)<br>□Lip Reading □Simple, Slow, Clear English<br>□Foreign Lang Interprtr "S" was wearing hearing aid(s)<br>"S" stated he did not need any assistance for effective communication<br>□Other | □"S" restated, what was explained to him<br>□"S" provided appropriate response to questions<br>□"S" asked appropriate questions regarding the information<br><br>Date  2-8-2011 |

DATE: 02/08/11

Dr- Hospital

1/8/11

#3a

5: EY needed some hung " because his jaw is wired shut.

O: HPI. med hx reviewed PCN allergy.

He 1/2 mandi. fx 1-19-11 fixed 1-31-11. Very limited opening but can talk.

A: Post-mandi-tubm fixation check. Pain minimum non but peeks rinse

[signature] Whitle Y. Ancheta

DR. M. ANCHETA, CSATF    **M. ANCHETA, DDS**

**CSATF**

DRUG ALLERGIES? Penicillin.

☐ NO  ☒ YES

DENTAL PROGRESS NOTES

CDCR NUMBER, NAME (LAST, FIRST, MI). AND DATE OF BIRTH

E 8 2 0 6 4

WHEELER, ERIC

0 5 1 4 5 8

EPRD: 11/23/2040

STATE OF CALIFORNIA
Case 1-12-cv-00861-RAD-GSA   Document 1-1   Filed 05/25/12   Page 20 of 121
DEPARTMENT OF CORRECTIONS AND REHABILITATION
SUPPLEMENTAL TO DENTAL PROGRESS NOTES
CDCR 237-C-1 (Rev. 04/06)

*Page 1 of 2*

Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.

| DATE OF ACTION (month/day/year) | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|
| 1/18/11 | (Cont) | P: Rx Chlorhexidine 0.12%/ rinse 2x a day expectorate using by. Infor going back to the OS. Pain + was post op; check IH was told to put in a 7362 when he returns from OS. Check. | | |
| | | C: OHI given *Dr. M. Ancheta* DR. M. ANCHETA, CSATF | 1, B | CSATF |

DRUG ALLERGIES?

☐ NO   ☐ YES

**SUPPLEMENT TO DENTAL PROGRESS NOTES**

NAME (LAST, FIRST, MI), CDCR NUMBER, AND DATE OF BIRTH

E 82064

WHEELER, ELIC

DOB 05-14-58

over

page 87

# WILBUR SUESBERRY, M.D.

EAR, NOSE AND THROAT

1205 GARCES HWY., STE. 207
DELANO, CALIFORNIA 93215
TELEPHONE (661) 721-1422

FEBRUARY 22, 2011

State of California
Department of Corrections

RE:  WHEELER, ERIC

CDC# E82064

DOB:  05/14/58

D/VISIT:  02/22/11

HISTORY OF PRESENT ILLNESS:  _52 y/o male S/P Closed_
_reduction Fx mandible 1/20/11_

PHYSICAL EXAMINATION:  _Interdental fixation — released_
_Acceptable Occlusion_

DIAGNOSIS:  _S/P Fx mandible_

TREATMENT PLAN:  _Start Reg diet_

_Fu 3/8/11_

Thank you for allowing me to see your patient.

Sincerely,

Wilbur Suesberry, M.D.

STATE OF CALIFORNIA-                                                        DEPARTMENT OF CORRECTIONS

## HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME Wheelen Eric | CDC NUMBER E 82069 | INSTITUTION SATF |
|---|---|---|

| DATE OF BIRTH 5/14/58 | EPRD DATE | GENDER M |
|---|---|---|

PRINCIPLE DIAGNOSIS S/P mandibular wand repair          ICD - 9 CODE          CPT CODE(S)

REQUESTED SERVICE(S) ENT                                        # OF DAYS RECOMMENDED

Please circle all that apply: Diagnostic Procedure (Consultation)          (Outpatient/Inpatient)          Initial/Follow-up

Requested Treatment/Service is:     EMERGENT          URGENT          ROUTINE

For the purpose of retrospective review, if emergent or urgent, please justify:

Proposed Provider: DR W. Suesberry          Anticipated Length of Stay:

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer):

Medical Necessity (briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant): S/P mandibular fracture S/P surgery 1/20/11

Estimated time for service delivery, recovery, rehabilitation and follow-up:

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months):

Comments (diagrams, risk factors, prognosis, alternative management, etc.):

| REQUESTING PHYSICIAN PRINTED NAME Beneyo Silveyda | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE 2.8.11 |
|---|---|---|

| REQUESTING PHYSICIAN SIGNATURE | DATE 2.8.11 | Utilization management tracking #: 3/8/11 - 10/11 - 3248049 |
|---|---|---|

O. Beregovskaya
Int. Medicine

DATE OF CONSULTATION 2/22/11                    PRINTED NAME OF CONSULTANT

FINDINGS: In occlusion - Occlusion Released

Start Regular diet

RECOMMENDATIONS:

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: 3/8/11

| CONSULTANT SIGNATURE Suesberry | DATE 2/22/11 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | |
| PCP SIGNATURE | DATE 2/23/11 | FAXED FEB 08 ENT'D |

Attach Progress Note page for additional information.
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**          FAXED FEB 14 ENT'D

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN   - TO UHR PENDING ORIGINAL
CANARY  - CONSULTANT
PINK    - UM
GOLD    - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)          CDC 7243 (Rev. 11/02)

9865631

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

### PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

*If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.*

REQUEST FOR:    MEDICAL ☐    MENTAL HEALTH ☐    DENTAL ☐    MEDICATION REFILL ☐

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| Wheeler | E 82064 | E1-113L |

PATIENT SIGNATURE    Emm Wheeler          DATE    2-23-11

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem)  I came from CTC - I have severe knee pain, cannot walk - High blood pressure daily - The wires in my mouth are cutting into my cheeks. Thank you

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

### PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

### PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: | 2/2/11  @ 2000 | Received by: |
|---|---|---|
| Date / Time Reviewed by RN: | 2/24/11 @ 1220 | Reviewed by: |

S:                          Pain Scale:  1  2  3  4  5  6  7  8  9  10

(1) c/o L knee pain — no distribent enc. ROM
(2) ↓ BP or pht; ≈ writes — I'm denied any drear plans, SPP, preparation
    v/s are ok + MEM w/ line
(3) writes cutting into cheeks — c/o MD — ℞ bleeding non severe just pain no FU
    writes to suppress inner teeth in act.

O:    T: 97.4   P: ☐   R: 20    BP: 142/90    WEIGHT: 151 lbs

[diagonal lines]   c/ 10th ascmt.

A:
P:  ☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|

| REFERRED TO PCP: | | DATE OF APPOINTMENT: |
|---|---|---|
| COMPLETED BY    ✗ Hunter | | NAME OF INSTITUTION   CSATF |
| PRINT / STAMP NAME | SIGNATURE / TITLE    Hunter | DATE/TIME, COMPLETED  2/24/11 |

CDC-7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

page 90

California Department of Corrections                    Health Care Services Division

Inst: _N.S.F_   Encounter Form: Musculoskeletal Complaint (Non-Traumatic)

Name: _Wheeler, Eric_   CDC# _E82064_   DOB: _1/4/58_   Date/Time _2/25/11 @ 144_

Fill in the blanks and check all that apply

## SUBJECTIVE:

Chief Complaint: _(L) knee pain_

Date and time of onset: _1/8/11_

Pain: Scale of 0-10 (0=no pain 10=worst pain): _5/10_

Area of pain: _L knee_

Quality of pain: _aching_

What makes it better? _until own_

History of prior pain / duration: _1 mol (wt by a Ritm in 1/19/11_

☐ Low back pain ☐ Flank pain ☐

Urinary symptoms: ☐ Urinary frequency   ☐ Dysuria ) denied

☐ Burning on urination   ☐ Hematuria

☐ Muscle spasms   ☐ Numbness   ☐ Tingling ) denied

Other:

History of chronic illness: ☐ Arthritis ☐ Cancer

☐ Diabetes ☐ Blood dyscrasias ☐ Renal Disease

Other: _HTN_ , _A. arrythmia_   denied

History of: ☐ Fever ☐ Chills ☐ Headache

☐ Nausea /Vomiting ☐ Diarrhea ☐ Fatigue ) bel

☐ Recent Trauma

Other:

Allergies: _NKA_

Current medications: _feel Msh Neom_

## OBJECTIVE:

☐ Awake, alert, oriented to person, place, time

Vital signs: BP: _124/96_ Pulse: _54_   Resp: _20_

Temp: _97.4_ ☐ Urine dipstick ) N/A   HH - 5.1×8   wt - 151 lbs

Urinalysis: _____ glove - 100/104_

Assess areas involved:

Extremity: ☐ Upper ☑ Lower ☐ Right ☑ Left (knee)

Describe: Color: _at all widcat, w_

4 ☐ Warmth   ☐ Tenderness   ☑ Swelling: _minimal_

6 ☐ Deformity   ☐ Circulation   ☑ Sensation _good_

☑ ROM   Describe: _good_

_painful 2° report of pain_

Muscle: ☐ Atrophy ☐ Hypertrophy ☐ Weakness ) wl

☐ Tremors

Gait / Stance (describe): _in sh w/o_

## ASSESSMENT:

☐ Impaired physical mobility related to: _____

☑ Pain related to / evidenced: _5/10 (L) true pain_

## PLAN:

MD referral completed: (circle)   NO / YES  If yes:

☐ STAT ( Positive urine dipstick and patient has signs
and symptoms consistent with a UTI; alterations in

---

-circulation or sensation, new deformity or discoloration,
or patient appears ill or has history of fever, chills,
headache, nausea, vomiting, or diarrhea; severe muscle
cramps; muscle weakness with or without fever; warm or
acutely swollen, joints)

☐ Urgent        ☐ Routine

Physician notified (name / time) _____

Physician Responded (time) _____

### MUSCLE CRAMPS / EXTREMITY PAIN

☑ ASA 325 mg; 2 tabs, PO QID PRN pain x 7 days

☐ Tylenol 325 mg 2 tabs, PO QID PRN pain x 7 days

☐ Ibuprofen 400 to 600 mg PO TID PRN pain x 7 days

☐ Naprosyn 220 mg 2 tabs. PO BID PRN X 7 days

☐ Activity as tolerated.

### JOINT PAIN / LOW BACK PAIN

☐ Apply (circle one) ice or heat as appropriate.

☐ ASA 325 mg; 2 tabs, PO QID PRN pain x 10 days

☑ Tylenol 325 mg 2 tabs, PO QID PRN pain x 10 days ( 1 AM as _TM x 10_

☐ Ibuprofen 400 to 600 mg PO TID PRN pain x 10 days

☐ Naprosyn 220 mg 2 tabs. PO BID PRN X 10 days

☐ Activity as tolerated.

☑ Treatment given per RN Protocol: _M 15_

### EDUCATION:

Patient instructed in:   ☑ Use of medications

☐ Level of activity

☑ Patient Health Care Education Forms given to patient:
(specify) _visual instruc given_

☑ Resubmit a Health Care Service Request Form (CDC
7362) if increased swelling or pain; decreased ROM
or CSM; or _____

☐ Patient verbalized understanding of instructions

☑ Education deferred due to patient condition.

### DISPOSITION:

Time released _AM_

☐ Condition on release: _G/Abu - Vid w/c_

☑ Returned to housing unit

☐ Housing reassignment to: _____

☐ Referred for follow-up

☐ Physician clinic   ☐ RN clinic

☐ Referred to higher level of care: (specify) _____

Person/time contacted: _____

Time/Mode of transfer: _____

ERV contacted (time) _____

ERV arrived (time) _____

_(signature)_

Signature / Title

---

ENCOUNTER FORM: MUSCULOSKELETAL
COMPLAINTS (NON-TRAUMATIC
CDC XXXX

3/04

9165631

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.

REQUEST FOR: MEDICAL ☑ MENTAL HEALTH ☐ DENTAL ☐ MEDICATION REFILL ☑

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| Wheeler, Eric | E 82064 | E1-113L |
| PATIENT SIGNATURE: Eric Wheeler | | DATE: 3/6/11 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) I need to see the doctor before 3/21/11, my medications expires. Last time my [illegible] need renewed. I was in CTC 5 wks, 12-11-10 [illegible] Mercy hospital. I still have wires in my jaw (broken jaw) have [illegible] weight loss, my left knee, tendon, nerve damage, unable to walk, climb stairs since [illegible] incident, struck with baton 3 times on outside left thigh (central outside knee), swelling, severe pain, [illegible]. This pain stress is causing my high blood pressure to stay high, night sweats, chills. I was told by [illegible] I would have a follow up appointment by ENT [illegible]

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| | |
|---|---|
| Date / Time Received: 3/6/11 @ 1800 | Received by: A. Talavera LPT |
| Date / Time Reviewed by RN: 3/7/11 @ [illegible] | Reviewed by: [illegible] |

S: Pain Scale: 1 2 3 4 5 6 7 8 9 10

[illegible handwriting] 3/11/11 [illegible]

O: T: 98 P: 97 R: 20 BP: 141/84 WEIGHT: 151 lbs [illegible] 5'8" [illegible]

A:

P:

☒ See Nursing Encounter Form N/S

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY: A. Hunter | | NAME OF INSTITUTION: CSATF | |
| PRINT / STAMP NAME | SIGNATURE / TITLE: [signature] | DATE/TIME COMPLETED: 3/8/11 @ [illegible] | |

CDC 7362 (Rev. 03/04) Original - Unit Health Record Yellow - Inmate (if copayment applicable) Pink - Inmate Trust Office (if copayment applicable) Gold - Inmate

page 92

California Department of Corrections          Health Care Services Division

Inst: __CMF__   **Encounter Form: Musculoskeletal Complaint (Non-Traumatic)**

Name: __Whidden  Eric__ CDC# __E82064__ DOB: __5/19/58__  Date/Time __3/8/11 @ 1045__

*Fill-in-the-blanks and check-all-that-apply*

### SUBJECTIVE:

Chief Complaint: __(L) lower extrem. pain__

Date and time of onset: __4(c-8 wulds ?__

Pain: Scale of 0-10 (0=no pain 10=worst pain): __7/10__

Area of pain: __(L) back crown__

Quality of pain: __pulling__

What makes it better? __warm__

History of prior pain / duration: __i was his leg a bottom leg in c/o in 1/9/11.__

☐ Low back pain   ☐ Flank pain ) denia

Urinary symptoms: ☐ Urinary frequency   ☐ Dysuria

☐ Burning on urination   ☐ Hematuria   ) denial

☐ Muscle spasms   ☐ Numbness   ☐ Tingling

Other: ·

History of chronic illness: ☐ Arthritis  ☐ Cancer  ) denia

☐ Diabetes ☐ Blood dyscrasias  ☐ Renal Disease

Other: __HTN & cholstrn__

History of: ☐ Fever ☐ Chills ☐ Headache  ) denial

☐ Nausea /Vomiting ☐ Diarrhea ☐ Fatigue

☐ Recent Trauma

Other:

Allergies: __PCN__

Current medications: __all meds nkm – M fullmus –__
__thin & Warfarin for pain__

### OBJECTIVE:

☐ Awake, alert, oriented to person, place, time

Vital signs: BP: __141/89__ Pulse: __77__ Resp: __20__

Temp: __9.8__ ☐ Urine dipstick __7N/B ft – 58"__

Urinalysis: __w+ 15/hs__

Assess areas involved: __oxgn - 100 IVI__

Extremity: ☐ Upper ☒ Lower ☐ Right ☒ Left

Describe: Color: __of discoloration__

☒ Warmth   ☒ Tenderness   ☒ Swelling (L knee & L. thigh, treating

☒ Deformity   ☒ Circulation   ☒ Sensation  ant

☒ ROM   Describe: __legoth__

Muscle: ☐ Atrophy ☐ Hypertrophy ☒ Weakness LUE

☐ Tremors

Gait / Stance (describe): __in via w/c__

### ASSESSMENT:

☐ Impaired physical mobility related to: _____

☒ Pain related to / evidenced: __9/10 L Lt pain__

### PLAN:

MD referral completed: (circle) NO / YES If yes:

☐ STAT ('Positive urine dipstick and patient has signs
and symptoms consistent with a UTI; alterations in

circulation or sensation, new deformity or discoloration,
or patient appears ill or has history of fever, chills,
headache, nausea, vomiting, or diarrhea; severe muscle
cramps; muscle weakness with or without fever; warm or
acutely swollen, joints)

☐ Urgent      ☒ Routine      – ch MD L 3/11/11

Physician notified (name / time) _____

Physician Responded (time) _____

**MUSCLE CRAMPS / EXTREMITY PAIN**

☐ ASA 325 mg, 2 tabs, PO QID PRN pain x 7 days

☐ Tylenol 325 mg 2 tabs, PO QID PRN pain x 7 days

☐ Ibuprofen 400 to 600 mg PO TID PRN pain x 7 days

☐ Naprosyn 220 mg 2 tabs. PO BID PRN X 7 days

☒ Activity as tolerated.

**JOINT PAIN / LOW BACK PAIN**

☐ Apply (circle) ice or heat as appropriate.

☐ ASA 325 mg, 2 tabs, PO QID PRN pain x 10 days

☐ Tylenol 325 mg 2 tabs, PO QID PRN pain x 10 days

☐ Ibuprofen 400 to 600 mg PO TID PRN pain x 10
days

☐ Naprosyn 220 mg 2 tabs. PO BID PRN X 10 days

☐ Activity as tolerated.

☒ Treatment given per RN Protocol: __VM L.S__

### EDUCATION:

Patient instructed in:   ☒ Use of medications __– und. con__

☒ Level of activity   __pain mgt__

☐ Patient Health Care Education Forms given to patient:
(specify) __verbal advic. gvn__

☐ Resubmit a Health Care Service Request Form (CDC
7362) if increased swelling or pain; decreased ROM
or CSM; or _____

☒ Patient verbalized understanding of instructions

☐ Education deferred due to patient condition.

### DISPOSITION:

Time released __11:10__

☒ Condition on release: __stable – via w/c__

☒ Returned to housing unit

☐ Housing reassignment to: _____

☒ Referred for follow-up __LTN: – I'll alw pgm__

☒ Physician clinic   ☐ RN clinic  __reserva of__

☐ Referred to higher level of care: (specify) __w/c chair__

Person/time contacted: _____

Time/Mode of transfer: _____

ERV contacted (time) _____

ERV arrived (time) _____

__[signature]__

Signature / Title

| RESTORATIONS AND TREATMENTS (Completed during incarceration) | SUBSEQUENT DISEASES AND ABNORMALITIES |
|---|---|



REMARKS   BP _____ P _____ T _____ WT _____

Pt rinsed with peridex for _____ SEC

REMARKS

**Teri Bowers, RDA**

Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.

| DATE OF ACTION (month/day/year) | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|

THE DISABILITY EFFECTIVE COMMUNICATION(DEC) SYSTEM, UHR OR APPROPRIATE LISTS WERE REVIEWED FOR EFFECTIVE COMM NEEDS:
"S" was Identified with:
☐TABE 4.0 or lower
☐Hearing
☐Vision
☐Speech
☐Learning Disability
☐Developmental Dis
☐Mobility Impairment

Assistance provided to ensure effective communication:
☐Use of Text Magnifier     ☐Sign Language Interpreter
☐Read Documents to "S"     ☐Written Notes(see attached)
☐Lip Reading     ☐Simple, Slow, Clear English
☐Foreign Lang Interprtr     "S" was wearing hearing aid(s)
☐"S" stated he did not need any assistance for effective communication
☐Other

Method used to determine communication was effective:
☐"S" restated, what was explained to him
☐"S" provided appropriate response to questions
☐"S" asked appropriate questions regarding the information
Date 3-9-2011

DATE: 3/9/11   #22   S: IM present for follow - up pan OS   CSATF

O: NOR Vitals WNL. HTN controlled w/ meds.

P&V - reaffirmed allergies. Brackets
& units & immobilize fx jaw still.

Lidocaine # 22 supra - bringted aplusing

trauma to opposing upper teeth. ☑

& chin or swelling noted. I.M.

wants brackets removed   Matt V. Ouellet

M. ANCHETA, DDS

DRUG ALLERGIES?
☐ NO   ☑ YES

DENTAL PROGRESS NOTES

CDCR NUMBER, NAME (LAST, FIRST, MI), AND DATE OF BIRTH
**E 8 2 0 6 4**
**WHEELER, ERIC**

EPRD: 11/23/2040

**0 5 1 4 5 8**

STATE OF CALIFORNIA
SUPPLEMENTAL TO DENTAL PROGRESS NOTES
CDCR 237-C-1 (Rev. 04/06)

MENT OF CORRECTIONS AND REHABILITATION
Document 1-1  Filed 05/25/12  Page 28 of 121
*Page 1 of 2*

Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.

| DATE OF ACTION (month/day/year) | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|
| 3  9  2011 | # 22 (Cont) | A. Traumatic occlusion # 22 dist | | |
| | | & hyper occlusion after jury | | |
| | | P: #22 leveled to normal | | |
| | | occlusion using diamond bur. | | |
| | | Smoothened rough edges of chipped | | |
| | | 23 & 24. I/M says it feels a | | |
| | | lot better. Need to pull & | | |
| | | OS for removal of brackets & | | |
| | | wire & do comp exam after. | | |
| | | √ APO taken | | |
| | | E: OHI given. 2362 signed for | | |
| | | comp exam N.V. | (2) | CSATF |
| | | *Kinde G. Ancheta* | | |
| | | M. Ancheta, DDS | | |
| | | | | |
| | | | | |
| | | | | |

DRUG ALLERGIES?

☐ NO   ☒ YES  PCN  seafood

**SUPPLEMENT TO DENTAL PROGRESS NOTES**

NAME (LAST, FIRST, MI), CDCR NUMBER, AND DATE OF BIRTH

E 82064

WHEELER, ERIC

DOB  5-14-1968

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.

REQUEST FOR:   MEDICAL ☐   MENTAL HEALTH ☐   DENTAL ☑   MEDICATION REFILL ☐

NAME: Wheeler, Eric

CDC NUMBER: E82064

HOUSING: E1-113L

PATIENT SIGNATURE: Eric Wheele

DATE: 3-9-2011

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem)

Long off an after pull of O.S. for bracket removal

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: | | Received by: |
|---|---|---|
| Date / Time Reviewed by RN: | | Reviewed by: |

S:                Pain Scale:   1   2   3   4   5   6   7   8   9   10

RECEIVED

MAR 0 9 2011

CSATF-DENTAL

O:   T:   P:   R:   BP:   WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |
| PRINT / STAMP NAME | SIGNATURE / TITLE | | DATE/TIME COMPLETED |

STATE OF CALIFORNIA
PRIMARY CARE PROVIDER PROGRESS NOTE
CDCR 7230-M (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

DATE: 3/11/12   TIME: 0420   AGE: 53   UHR Present: ☒ Yes ☐ No   MAR Present: ☒ Yes ☐ No

| Temp: | Pulse: | BP: | RR: | Ht: | Wt: | BMI: |
|---|---|---|---|---|---|---|
| 92.6 | 83 | 126/77 | 20 | 5.8.7 | 151 | |

Chief Complaint: FX JAW   Allergies: ☐ NKA   PCN SEAFOOD   Signature/Title: STEVE LVN

SUBJECTIVE: S/P ± A WARDS JAW 20 ASSAULT & ALSO HAS
(L) KNEE PAIN SINCE THE ASSAULT, IST & IS H2? ±
A BATON & STATES THAT HE CANNOT BEND HIS KNEE.
HE APPEARS TO HAVE A SPASM @ H2S LATERAL @TH2GH.
& BRUISING @ WC USE NOW, HE WT IS STABLE FROM 2009.
& CARDIOPULMONARY COMPLAINTS.

| | OBJECTIVE: | WNL* | ABN | *Checking "WNL" documents that all exam elements listed in the Primary Care Provider Clinical Decision Support dated June 11, 2009 are within normal limits. | | | WNL* | ABN | STUDY RESULTS: |
|---|---|---|---|---|---|---|---|---|---|
| 1. | General | ☒ | ☐ | | 7. | Musculoskeletal | ☐ | ☒ | MARKED ↓ EXTENSION |
| 2. | HEENT/Neck | ☒ | ☐ | | 8. | Skin/Ext. | ☒ | ☐ | ± (+)VASTUS LATERALUS |
| 3. | Cardio | ☒ | ☐ | | 9. | Neurological | ☒ | ☐ | SPASM . UNABLE TO |
| 4. | Pulmonary | ☒ | ☐ | | 10. | Psychiatric | ☒ | ☐ | BEAR WT |
| 5. | Abdomen | ☒ | ☐ | | 11. | Rectal/Prostate | ☐ | | |
| 6. | Genito-Urinary | ☐ | ☒ | | 12. | Breast/Pelvic | ☒ | | |

ASSESSMENT/PLAN: For all chronic conditions list degree (G, F, P) of control and clinical trend (I, S, W)
(1) KNEE PAIN - ARZ
ROBAXIN

MANDIBULAR FX ± WIRES PRESENT

PATIENT EDUCATION: ☒ Patient able to verbalize understanding of A/P ☐ Meds ☐ Lab/Study Results ☐ Diet ☐ Exercise ☒ Wt. Mgmt. ☐ Smoking

Self Management Goal(s):

Next Visit: 30 Days

| Primary Care Provider (Print Name/Title): T. Byers, PA | CDC Number, Name (Last, First, MI), Date of Birth, Institution/Housing |
|---|---|
| Primary Care Provider Signature: | WHEELER, EREC |
| | E82064 |

STATE OF CALIFORNIA

## HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES

(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME WHEELER, ERIC | CDC NUMBER E82064 | INSTITUTION CSAF |
|---|---|---|

| DATE OF BIRTH 5/14/58 | EPRD DATE 2041 | | GENDER |
|---|---|---|---|

| PRINCIPLE DIAGNOSIS (L) KNEE ↓ ROM | | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|---|

| REQUESTED SERVICE(S) (L) KNEE ARI | | | # OF DAYS RECOMMENDED |
|---|---|---|---|

*Please circle all that apply:* Diagnostic Procedure/Consultation        Outpatient/Inpatient        Initial/Follow up

Requested Treatment/Service is:        EMERGENT        URGENT        (ROUTINE)

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _____ Anticipated Length of Stay: _____

Medical Necessity (*briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, questions for the consultant*): I.IP WAS ASSAULTED ~ 1½ MONTHS AGO & WAS HIT @ THE (L) KNEE. = A BATON STILL CANNOT BEAR WEIGHT & HAS A UNKNOWN OUTPOUCHING @ THE DISTAL VASTUS LATERALUS

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4 viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME T. BYERS | APPROVED / AUTHORIZED / DENIED / DEFERRED Y N DATE |
|---|---|
| | Goodwin USWO |
| | Tony Nissler  Physician & Surgeon 1/16 |
| REQUESTING PHYSICIAN SIGNATURE | DATE 3/11/11 | Utilization management tracking # 4/27/11 10/11 -578910 |

| DATE OF CONSULTATION 5/3/11 | PRINTED NAME OF CONSULTANT Chanel Dracy |
|---|---|

FINDINGS: MRI L KNEE b/un _____

RECOMMENDATIONS: _____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE 5/3/11 | CDC NUMBER, NAME (LAST, FIRST, MI AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | WHEELER, ERIC |
| PCP SIGNATURE | DATE | E82064 |

Attach Progress Note page for additional information.
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN - TO UHR PENDING ORIGINAL
CANARY - CONSULTANT
PINK - UM
GOLD - SPECIALTY SCHEDULER

APR 28 2011

PHYSICIAN REQUEST FOR SERVICES (RFS)        CDC 7243 (Rev. 11/02)

# COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS**: A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

## A. HOUSING

None

1. Barrier Free/Wheelchair Access P/T
2. Ground Floor Cell          P/T  3 5/11/11
3. Continuous Powered Generator P/T

4. Bottom Bunk                P/(T)  5/11/11
5. Single Cell (See 128-C date: _____ )   P/T
6. Permanent OHU / CTC (circle one)   P/T
7. Other _____   P/T

## B. MEDICAL EQUIPMENT/SUPPLIES

None

8. Limb Prosthesis           P/T
9. Brace                     P/T
10. Crutches                 P/T
11. Cane: (type) wair wai     P/(T)  5/11/11
12. Walker                   P/T
13. Dressing/Catheter/Colostomy Supplies   P/T
14. Shoe: (specify) _____   P/T
15. Dialysis Peritoneal      P/T

16. Wheelchair: (type) _lateral_   P/(T)  5/11/11
17. Contact Lens(es) & Supplies   P/T
18. Hearing Aid              P/T
19. Special Garment:
    (specify) _____   P/T
20. Rx. Glasses: _Prescription_   (P)/T  3/11/11
21. Cotton Bedding           P/T
22. Extra Mattress           P/T
23. Other _____   P/T

## C. OTHER

None

24. Attendant to assist with meal access   P/T
    and other movement inside the institution.

Attendant will not feed or lift the inmate/patient
or perform elements of personal hygiene.

25. Wheelchair Accessible Table   P/T

26. Therapeutic Diet: (specify)   P/T

27. Communication Assistance   P/T
28. Transport Vehicle with Lift   P/T
29. Short Beard              P/T
30. Other_____   P/T

## D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments? ☑ Yes  ☐ No
If yes, specify: _____

| INSTITUTION | COMPLETED BY (PRINT NAME) | TITLE |
|---|---|---|
| CSATF | | PAC |
| SIGNATURE | DATE 5/11/11 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| HCM/CMO SIGNATURE | DATE | E82 |
| APPROVED (list the number of items approved) | | WHEELING , E820 |
| DENIED (list the number of items denied) | | 5/14/58 |
| COMPREHENSIVE ACCOMMODATION CHRONO | | E1-113L |

Distribution:
Original - Unit Health Record   Canary - Central File   Pink - Correctional Counselor   Gold - Inmate

9874316

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

REQUEST FOR:   MEDICAL ☐   MENTAL HEALTH ☐   DENTAL ☒   MEDICATION REFILL ☐

NAME: Wheeler - Eric

CDC NUMBER: E 82064

HOUSING: C-1 - A 116 L

DATE: 3 - 26 - 11

PATIENT SIGNATURE: Eric Wheeler

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) TO CTC - DENTAL, I am suppose to already have went out to Dr. Swisher on Delano to have the bars removed from my mouth - (broken jaw) two months reao, and a follow-up with Dr. Swisher as I would like to make sure this appointment is scheduled! Then I am suppose to see the CTC - Dentist after - I would like to make sure this is scheduled!

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT (Send pink copy to Inmate Trust Office.)

☐ Visit is not exempt from $5.00 copayment.                                           Dental

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

Date / Time Received: 3/27/11  (OY) 1740   Received by: VK [signature]

Date / Time Reviewed by RN: 3/28/11  0315   Reviewed by: [signature]

Pain Scale:  1  2  3  **4  5  6  7  8  9  10**

S:                                          3                     RECEIVED

                                                              MAR 28 2011

                                          [signature]        CSATF-DENTAL

O:   T:      P:      R:      BP:         WEIGHT:

A:   F/F.  R: [strikethrough] liquid supplement,  O.S. requested.
P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|

REFERRED TO PCP:

COMPLETED BY:   L. Le, DDS   [signature]

DATE OF APPOINTMENT: 4/11/11

NAME OF INSTITUTION: CSATF

Page 1 of [?]

9874316

DEPARTMENT OF CORRECTIONS

# HEALTH CARE SERVICES REQUEST FORM

STATE OF CALIFORNIA
CDC 7362 (Rev 03/04)

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.

REQUEST FOR:   MEDICAL ☒   MENTAL HEALTH ☐   DENTAL ☐   MEDICATION REFILL ☐

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| Wheeler, Eric | E-82064 | G-I-A116L |
| | | DATE |
| | | 3-26-11 |

PATIENT SIGNATURE  *Eric Wheeler*

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) _I was in E-1 on E-yard. I am suppose to have a MRI, and a follow-up to see the doctor in two weeks — since I just arrived here on G-yard; I would like to make sure I see the E-yard doctor in two weeks and that the MRI is scheduled. Notice._

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment.  (Send pink copy to Inmate Trust Office.)   MD

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| | Received by: | |
|---|---|---|
| Date / Time Received: | Reviewed by: | |
| Date / Time Reviewed: | Pain Scale:  1  2  3  4  5  6  7  8  9  10 | |

S:

*Seen MD*

O:   T:       P:       R:       BP:           WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

Page 1 of 1

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | | |
| COMPLETED BY: | | DATE OF APPOINTMENT: | |
| | | NAME OF INSTITUTION: | |

STATE OF CALIFORNIA — Case 1:12-cv-00861-DAD-GSA Document 1-1 Filed 05/25/12 Page 35 of 121 AND REHABILITATION
DENTAL PROGRESS NOTES
CDCR 237-C (Rev. 04/06)

Page 1 of 2

| RESTORATIONS AND TREATMENTS (Completed during incarceration) | SUBSEQUENT DISEASES AND ABNORMALITIES |
|---|---|



| REMARKS | REMARKS |
|---|---|

**Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.**

| DATE OF ACTION (month/day/year) | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|
| 4 / 1 / 11 | | | | CSATF |
| G y/d | | | | |
| 10:25 | | BP 137/93P 93 T 98.6 WT 149 | | |
| | | Pt rinsed with peridex for 30 SEC | | |
| | | R ants R D/A | | |
| | | S: pt presents for triage. cc: " My teeth | | |
| | | hurt and the wizes cut my gum, | | |
| | | my cheek when I eat. It hurts, I | (2) | |
| | | can't eat. I am supposed to be sent | | |
| | | to O.S / CTC for follow up." | | |
| | | O. HQR. Med profile Reviewed. Le, DDS | | |
| | | (see cont'd note) | LE. L. DDS/SATF | |

**DRUG ALLERGIES?**
☐ NO   ☒ YES  1/3 pen

**DENTAL PROGRESS NOTES**

| CDC NUMBER, NAME (LAST, FIRST, MI), AND DATE OF BIRTH |
|---|
| **WHEELER, ERIC** |
| 0  5  1  4  5  8    EPRD: 11/23/2040 |

**Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.**

| DATE OF ACTION (month/day/year) | | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|---|
| 4 | 1  11 | | O: pt had mandibular fracture | | CSATF |
| Dyd. | | | and was sent out to O.S on 2/8/11, | | |
| | | | should be sent out for follow up | | |
| | | | on 3/8/11 per O.S. pt still has | | |
| | | | max and mand wires, has not | | |
| | | | yet sent out to O.S | | |
| | | | A. Need to be sent out to O.S for | | |
| | | | follow up and Max and Mand wires | | |
| | | | removal | | |
| | | | P Triage today. Filled out paper | | |
| | | | work to request to send pt out to | | |
| | | | O.S. Refilled f liquid suppliment | | |
| | | | for 30 days pt has naproxen | | |
| | | | on file for pain. (see next page for E@) | | |
| | | | E: Reassure pt that paper work to | | |
| | | | request to send pt out filled out today | ②  | |
| | | | and will try to refill liquid suppliment | | |
| | | | however, it may not be approved | | |
| | | | N: p.o after O.S visit. | | |
| | | | | LE, L. DDS/SATF | |

DRUG ALLERGIES?   2/3

☐ NO   ☑ YES   penr

**SUPPLEMENT TO DENTAL PROGRESS NOTES**

NAME (LAST, FIRST, MI), CDCR NUMBER, AND DATE OF BIRTH

E 82064
Wheeler, Eric
05/14/58

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME WHEELER, ERIC | CDC NUMBER E. 82064 | INSTITUTION CSATF |
|---|---|---|

| DATE OF BIRTH 05/14/1958 | EPRD DATE 11/23/2040 | GENDER MALE |
|---|---|---|

| PRINCIPLE DIAGNOSIS Max and Mand wizes, brackets need to be remove | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|

| REQUESTED SERVICE(S) follow up Mand Fx | | # OF DAYS RECOMMENDED out pt |
|---|---|---|

*Please circle all that apply:* Diagnostic Procedure/Consultation     Outpatient/Inpatient     Initial/Follow-up

Requested Treatment/Service is:    EMERGENT      URGENT     (ROUTINE)

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _____ Oral surgeon _____     Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* _____

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____ Mandibular Fx on 2/8/11. Need O & follow up

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME L. LE DDS | APPROVED / AUTHORIZED / DENIED / DEFERRED BY Lum Fx | DATE 4/14/11 |
|---|---|---|

| REQUESTING PHYSICIAN SIGNATURE | DATE 4/01/11 | Utilization management tracking #: |
|---|---|---|

| DATE OF CONSULTATION 5/2/11 | PRINTED NAME OF CONSULTANT P. Park |
|---|---|

FINDINGS: _____ Pt s/p c/R mandibular fracture i removed arch bars occlussion s/R. Pt had removal of superficial hard ware _____

RECOMMENDATIONS: _____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____ F/U prn

| CONSULTANT SIGNATURE | DATE 5/2/11 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE 5-2-11 | Wheeler, Eric |
| PCP SIGNATURE | DATE | 05/14/58 E 82064. G / 1162. FAXED APR 1 9 EN'D |

Attach Progress Note page for additional information.
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN - TO UHR PENDING ORIGINAL
CANARY - CONSULTANT
PINK - UM.
GOLD - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)      CDC 7243 (Rev. 11/02)

page 154

STATE OF CALIFORNIA
PRIMARY CARE PROVIDER PROGRESS NOTE
CDCR 7230-M (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

DATE: 4/26/11   TIME: 3:08   AGE: 53   UHR Present: ☑Yes ☐No   MAR Present: ☑Yes ☐No

| Temp: | Pulse: 104 | BP: 132/79 | RR: 15 | Ht: 5'8" | Wt: | BMI: |

Chief Complaint:   Allergies: ☐ NKA   Signature/Title:

SUBJECTIVE:

Recently transpexed from CTC housing

Allegedly was assaulted 1/20/11 Sustained several

injuries including # mandibular bones S/P fixation

Too Also presenting for need removal of fixers. Also Cb

knee pain x ... Complained → pending Ame=

Today would like to be out of WC need cane to walk around

Dysuria/emia → Controlled in Statins - Pending Lip DC

HTN → Controlled in Acts, HCTZ - No Chest pains

| OBJECTIVE | WNL | ABN | "Checking "WNL" documents that all exam elements listed in the Primary Care Provider Clinical Decision Support dated June 11, 2009 are within normal limits. | | | WNL | ABN | STUDY RESULTS:↓ |
|---|---|---|---|---|---|---|---|---|
| 1. General | ☐ | ☐ | | 7. | Musculoskeletal | ☐ | ☑ | knee |
| 2. HEENT/Neck | ☐ | ☐ | WIC | 8. | Skin/Ext. | ☑ | ☐ | Ten der wea |
| 3. Cardio | ☐ | ☐ | mail | 9. | Neurological | ☑ | ☐ | |
| 4. Pulmonary | ☐ | ☐ | apicaule | 10. | Psychiatric | ☑ | ☐ | Lef ACPein |
| 5. Abdomen | ☐ | ☐ | Not | 11. | Rectal/Prostate | ☐ | ☐ | ⊖ Swelly |
| 6. Genito-Urinary | ☐ | ☐ | Considered | 12. | Breast/Pelvic | ☐ | ☐ | |

ASSESSMENT/PLAN: For all chronic conditions list degree (G, F, P) of control and clinical trend (I, S, W)

① Mobility issue S/P Gracuit
   D/C WIC
   Start Cane for assistance to ambulate

② HTN → Chronic Stable   S/ C/p OR JT
   Still Cntrol   Man dibular #
   Contine Cancer   Lfs remove

③ Dyshpidemia → Controlled Stable flu Lip d level   of hardware
   ⊖ Steoprosu (fee AExA i Ist/i,)   Ofcal - D 500

PATIENT EDUCATION: ☑Patient able to verbalize understanding of A/P ☐Meds ☐Lab/Study Results ☐Diet ☐Exercise ☐Wt. Mgmt ☐Smoking

Self Management Goal(s):

Next Visit: 60 Days   Winfred Kokor MD

Primary Care Provider (Print Name/Title):   Physician & Surgeon

Primary Care Provider Signature:   4/26/11

CDC Number, Name (Last, First, MI), Date of Birth, Institution/Housing

E 82064

Wheeler, Eric
5/14/1958

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

## HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES

(To be completed by requesting Physician and forwarded to Utilization Management Unit).

| PATIENT NAME WHEELER, Eric | | CDC NUMBER E 82064 | INSTITUTION CSATF |
|---|---|---|---|
| DATE OF BIRTH 5/14/58 | EPRD DATE | GENDER | |
| PRINCIPLE DIAGNOSIS SIP Surgery | | ICD - 9 CODE | CPT CODE(S) |
| REQUESTED SERVICE(S) ENT | | | # OF DAYS RECOMMENDED 14 |

*Please circle all that apply:* Diagnostic Procedure/**Consultation**          **Outpatient**/Inpatient          Initial/Follow-up

Requested Treatment/Service is:    EMERGENT          URGENT          **ROUTINE**

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider:    Dr. Silverberg _____          Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity (*briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant*): _____

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME W. WOLBE | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE |
|---|---|---|
| REQUESTING PHYSICIAN SIGNATURE | DATE 4/25/11 | Utilization management tracking #: |
| DATE OF CONSULTATION | PRINTED NAME OF CONSULTANT | |

FINDINGS: _____

RECOMMENDATIONS: _____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | WHEELER, Eric |
| PCP SIGNATURE | DATE | E 82064 |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

5/14/58

DISTRIBUTION:
ORIGINAL  -  FILE IN UHR
GREEN  -  TO UHR PENDING ORIGINAL
CANARY  -  CONSULTANT
PINK  -  UM
GOLD  -  SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)          CDC 7243 (Rev. 11/02)

**DENTAL PROGRESS NOTES**

CDCR 237-C (Rev. 04/06)

| RESTORATIONS AND TREATMENTS (Completed during incarceration) | SUBSEQUENT DISEASES AND ABNORMALITIES |
|---|---|
| | |
| REMARKS | REMARKS |

**Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.**

| DATE OF ACTION (month/day/year) | | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|---|
| 5 | 2 | n. | DOC's phone failed. DR Newbast, MD was ok w/ medication. | | |
| | | | | | LE, L. DDS/SATF |
| 5 | 5 | n. | Talked to OT. Tim House, to schedule pt for follow up | | |
| | | | | | LE, L. DDS/SATF |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**DRUG ALLERGIES?**

☐ NO   ☐ YES

**DENTAL PROGRESS NOTES**

CDCR NUMBER, NAME (LAST, FIRST, MI), AND DATE OF BIRTH

Wheeler, Eric

E82064

page 40.7

STATE OF CALIFORNIA
**DENTAL PROGRESS NOTES**
CDCR 237-C (Rev. 04/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2 of 2

## INSTRUCTIONS

This form shall be completed by a licensed CDCR dentist.

Restorations and Treatments (teeth diagram on upper left portion):

1. Using *black ink*, draw the restoration on the tooth diagram, showing approximate size, location, and shape. Use "Remarks" section to note pertinent data not shown on diagram.

Subsequent Diseases and Abnormalities (teeth diagram on upper right portion):

1. Using *red ink*, draw the carious lesion or abnormality on the tooth diagram, showing approximate size, location, and shape. Use "Remarks" section to note pertinent data not shown on diagram.

Progress Notes:

1. Date of Action: **Using *black ink*, enter the full date (month,day,year).**

2. **Tooth Number:** Using *black ink*, enter the appropriate tooth number, (Universal System #1-32). . If more than one tooth is involved, proceed down the column until all teeth involved have been recorded. If no tooth is involved, leave the tooth number column blank.

3. **Progress Notes:** When applicable, using *black ink*, enter and complete in SOAPE format as follows:

   *Subjective:* entry is the inmate-patient's perception of the problem, using his/her own words to describe the chief complaint. It is non-observable/non-measurable.

   *Objective:* entry is the clinician's clinical observations or facts based on examination, radiographs, and health history.

   *Assessment:* entry is the clinician's initial impression or appraisal of the condition or problem. This is the diagnosis.

   *Plan:* entry is the proposed care or treatment required to resolve the initial complaint.

   *Education:* entry is oral hygiene instructions (OHI) or other dental education.

   - Using *black ink*, record the following: the service or treatment provided, quadrants involved, type and amount of local anesthetic used (note if no anesthetic was indicated or used), dental materials used (include brand, size, shade), any medications prescribed or given (include dosage, amount, directions, and refills).
   - Using *black ink*, document post-operative instructions given, and specify if instructions were given orally, in writing, or both.
   - Using *black ink*, print or stamp the dentist's name on the next available line after the last recorded entry. The dentist enters his or her signature beside or beneath his or her printed or stamped name. A black rubber stamp may be substituted for the dentist's printed name, but the dentist's signature must be original.

4. **Priority After Visit:** Record the Dental Priority Classification after the dental appointment in *black ink.*

5. **Prison Location:** Using upper case letters, print the prison's official acronym in *black ink.*

Drug Allergies: Using *black ink*, place an "X" or "✓" to indicate if the inmate-patient has drug allergies.

Addressograph: (if unavailable or inoperable, enter, in *black ink*, the inmate-patients following information):

CDCR NUMBER
LAST NAME, FIRST NAME
DATE OF BIRTH (MM/DD/YY)

| RESTORATIONS AND OTHER TREATMENTS (Completed during incarceration) | SUBSEQUENT DISEASES AND ABNORMALITIES |
|---|---|



RIGHT  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  LEFT
32  31  30  29  28  27  26  25  24  23  22  21  20  19  18  17

RIGHT  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  LEFT
32  31  30  29  28  27  26  25  24  23  22  21  20  19  18  17

| REMARKS | REMARKS |
|---|---|

Prior to each treatment, the clinician *must* review the inmate-patient's health history, note changes or specify no change. Use S.O.A.P.E. format to document patient care.

| Date (mm/dd/yy) | Tooth # | PROGRESS NOTES (include signature at the end of each data entry) | DPC After Encounter | Prison Acronym |
|---|---|---|---|---|
| 5 4 11 | | | | CSATF |
| Gry d | | | | |
| 1 8 10 | | BP 155/92 P 13 T 10.5 WT 151 | | J. Robertson, RDA |
| | | Pt rinsed with peridex for ____ SEC | | |
| | | | | |
| | | Appeal Log Number SATF - 33 - 11 - 11307 | | |
| | | by Inmate Wheeler (E 82064) was answered | | |
| | | by Dr. Le, DDS. This appeal was fully granted. | | |
| | | Max and Mandibular arch bars was removed | | |
| | | on 5/4/11. The financial compensation is | | |
| | | beyond the scope of this appeal process | | |
| | | (See cont'd note for other issue.) | | LE, L. DDS/SATF |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| DRUG ALLERGIES? | CDC Number: | E 8 2 0 6 4 |
|---|---|---|
| ☐ NO   ☑ YES - pen | Inmate Name: | WHEELER, ERIC |
| DENTAL PROGRESS NOTES CDCR 237-C  1/4 | | (Last, First, Middle Initial) |
| | Date of Birth: | 0 5 1 4 5 8    EPRD: 1/25/2041 |
| | | (mm/dd/yy) |

CDCR 237-C DENTAL PROGRESS NOTES

page 1 08/

STATE OF CALIFORNIA
**Dental Progress Notes**
CDCR 237-C (REV. 08/10)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 2 of 2*

---

## INSTRUCTIONS – DENTAL PROGRESS NOTES

This form shall be completed by a licensed CDCR dentist, dental hygienist or dental assistant as the first, initial document on which dental progress notes are recorded. Subsequent or supplemental progress notes shall be recorded on a CDCR Form 237-C-1 when no room is available on the CDCR Form 237-C.

Restorations and Other Treatments (**Top left** schematic tooth chart): *Use black ink to complete the following:*
1. Draw restorations on the schematic tooth chart, showing approximate size, location, and shape. Identify as follows:
   a. Amalgam: Outline and block in solidly.
   b. Non-metallic restorations: Outline restoration size, location and shape; only.
   c. Combination restorations: Show each material used. Outline area showing overall size, location, and shape; partition at junction of materials.
2. Other Treatments
   a. Extractions: Draw an "X" on the root(s) of each tooth extracted.
   b. Root Canal: Outline each canal and block in solidly.

Use "Remarks" section to note pertinent data not shown on schematic tooth diagram.

Subsequent Diseases and Abnormalities (**Top right** schematic tooth chart):
1. Caries: Using *red ink*, outline and block in solidly the carious portion(s) of the teeth.
*Use black ink to complete the following:*
2. Extraction Indicated: Draw two parallel vertical lines "||" through the tooth/root. For retained roots, indicate missing tooth portions with an "X"; and draw two parallel lines "||" along the retained root's long axis.
3. Crown indicated: Outline clinical crown of tooth.
4. Root Canal Indicated: Outline canal and block in solidly.
5. Fractured Tooth: Draw a jagged line to show approximate size and location. If extraction is indicted, document as above in "Extraction Indicated."
6. Defective Restoration: Outline the defect and block in solidly.

Use "Remarks" section to note pertinent data not shown on schematic tooth diagram.

Remarks: *Use black ink to complete the following:*

Record under "Remarks" any findings such as: erosion, abrasion, rotation, leukoplakia, diastema, tori or other abnormalities.

Progress Notes: *Use black ink to complete all of the following:*
1. **Date:** Enter the current date (mm/dd/yy).
2. **Tooth Number:** Enter the appropriate tooth number (#1-32). If more than one tooth is involved, proceed down the column until all teeth involved have been recorded. If no tooth is involved, leave the tooth number column blank.
3. **Progress Notes:** Enter and complete in SOAPE format as follows: (*Do not leave blank lines between entries*).
   *Subjective:* entry is the inmate-patient's perception of the problem, using his/her own words to describe the *chief complaint* (**OR** the purpose of the visit). It is non-observable and non-measurable.
   *Objective:* entry is the clinician's clinical observations or facts based on examination, clinical tests, vital signs, radiographs, and health history.
   *Assessment:* entry is the clinician's initial impression or appraisal of the condition or problem. This is the *diagnosis*.
   *Plan:* entry is the proposed care or treatment required to resolve the initial complaint.
   Record the following at a minimum: the service or treatment provided or refused, teeth or quadrant(s) involved, type and amount of local anesthetic used (note if no anesthetic was indicated or used), dental materials used (include brand, size, and shade), any medications prescribed or given (include dosage, amount, directions, and refills).
   *Education:* entry is oral hygiene instructions (OHI), post-operative instructions, or other dental education. Document education or instructions given, and specify if given orally, in writing, or both.
4. **Name and Signature:** Stamp or print the clinician's name on the next available line after the last recorded entry followed by the clinician's signature beside or beneath his or her stamped or printed name.
5. **DPC After Encounter:** Record the Dental Priority Classification after Encounter.
6. **Prison Acronym:** Using upper case letters, print the prison's official acronym.

Drug Allergies: Place an "X" or "✓" to indicate if the inmate-patient has drug allergies.

Patient Data: Enter the following inmate-patient information:
   CDC Number
   Last Name, First Name, Middle Initial
   Date of Birth (mm/dd/yy)

CDCR 237-C DENTAL PROGRESS NOTES

STATE OF CALIFORNIA Case 1:12-cv-00861-DAD-GSA   Document 1-1   Filed 05/25/12 Page 44 of 121 REHABILITATION
SUPPLEMENTAL TO DENTAL PROGRESS NOTES
CDCR 237-C-1 (Rev. 04/06)

*Page 1 of 2*

**Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.**

| DATE OF ACTION (month/day/year) | | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|---|
| 5 | 4 | 11 | S: pt was also scheduled for post | | CSATF |
| | | | oral surgery visit follow up. cc. | | |
| | | | I need to be refered out for cleaning | | |
| | | | and teeth fix, after my gaw broke | | |
| | | | and wearing wire, my teeth shift, they | | |
| | | | need to grind down. | | |
| | | | O: No HHR today: Med profile reveiwed (E/M upset) | | |
| | | | A Max and Mand wires were removed did not fill out health questionare | | |
| | | | on 5/2/11. | | |
| | | | P: pt came to the clinic, upset, and uncooperative | | |
| | | | very argumentative. He requested to be | | |
| | | | seen out to O.S for his teeth clean and fixed | | |
| | | | pt kept talking, complaining, did not | | |
| | | | gave me a chance to explain to him. | | |
| | | | Robertson, RDA called Perez officer, CO | | |
| | | | Silva came into the clinic - pt was | | |
| | | | calm down a little bit. I told him | | |
| | | | that he misunderstood what Dr. Anchatta | | |
| | | | said. Dr. Anchatta meant that he | | |
| | | | would have comp of teeth clean... (con'd) LE, L. DDS/SATF | | |

**DRUG ALLERGIES?**

☐ NO   ☒ YES   4/4

**SUPPLEMENT TO DENTAL PROGRESS NOTES**

NAME (LAST, FIRST, MI), CDCR NUMBER, AND DATE OF BIRTH

E 82064.

wheeler, Eric

05/14/58

AAG 7.0.9

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION
SUPPLEMENTAL TO DENTAL PROGRESS NOTES
CDCR 237-C-1 (Rev. 04/06)

*Page 1 of 2*

**Prior to each treatment, the Dentist *must* review the inmate-patient's health history, note changes or specify no change, and use S.O.A.P.E. format when applicable.**

| DATE OF ACTION (month/day/year) | TOOTH NUMBER | PROGRESS NOTES (include signature at the end of each data entry) | PRIORITY AFTER VISIT | PRISON LOCATION (ACRONYM) |
|---|---|---|---|---|
| 5 4 11 | | P. (con't.) after the nurses were removed | | |
| | | by an O.S. She did not mean to send | | |
| | | him out to O.S. for other dental procedure; | | |
| | | done. And around his birthday, he | | |
| | | would receive the a notification from us | | |
| | | asking if he wanted to have dental exam, | | |
| | | he needed to submit 7362 request for OF | | |
| | | to dental pt said whatever, I already | | |
| | | file another 602" and requested to | | |
| | | leave the clinic. (see con'd in F.C.) | | |
| | | NV. Comp of /upon request | | |
| | | | | LE, L. DDS/SATF |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DRUG ALLERGIES?

☐ NO   ☑ YES   3/4

**SUPPLEMENT TO DENTAL PROGRESS NOTES**

NAME: (LAST, FIRST, MI), CDCR NUMBER, AND DATE OF BIRTH

E 82064,
wheeler, Eric
05/14/58

Report: WHEELER, ERIC · RAD NUMBER: E82084 · CLINIC: Shared Imaging CA · EXAM DATE: 2011-05-03 · PHYSICIAN: Byers

**Southeast X-Ray, Inc.**
102 North 17th Street, Ozark, AR 72949
Phone: (479) 667-4000 | reports@sxrmedical.com | Fax: (479) 667-9729

IMAGES SUBMITTED BY: Shared Imaging 800 606 0266

Radiology Interpretation

PATIENT NAME: WHEELER, ERIC
DATE OF BIRTH: 1958-05-14
RAD NUMBER: E82064
PHYSICIAN: Byers
FACILITY: California SATF
DATE OF EXAM: 2011-05-03
HISTORY: DECREASE ROM..INJURY X 1.1\2.MOS..HOUSING:FGB1T1A-116L

# SIGNIFICANT FINDINGS

MRI LEFT KNEE WITHOUT CONTRAST:
Multiplanar and sequence imaging obtained of the left knee. There is diffuse bone bruising and edema involving the distal lateral left femur and the lateral femoral condyle. There is evidence of fracture lines, nondisplaced involving the lateral distal femoral condyle with associated effusion. The medial and lateral collateral ligaments are maintained. The anterior and posterior cruciate ligaments are maintained. There are intermediate signals consistent with degenerative tear posterior horn medial meniscus. The lateral meniscus is maintained.

IMPRESSION:
1. Evidence of bone trauma with edema and fracture distal lateral left femur.
2. Chronic degenerative tear medial meniscus.

Attempt was made to relay significant findings to California Substance Abuse Treatment Facility and State Prison. (559)992-7100 x5498/x5494. There was no answer at either extension. 2:24 PM CST. JJ

Electronically Signed By: Dr. Julie Farrell M.D.

Report Completed: 2011-05-04 14:55:09 CDT
TS: sh

STATE OF CALIFORNIA
PRIMARY CARE PROVIDER PROGRESS NOTE
CDCR 7230-M (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| DATE: | TIME: | AGE: | UHR Present: ☐ Yes ☐ No | MAR Present: ☐ Yes ☐ No |
|---|---|---|---|---|

| Temp: 97.0 | Pulse: 70 | BP: 130/70 | RR: 22 | O₂%: | Ht: 5'5" | Wt: 151 | BMI: |
|---|---|---|---|---|---|---|---|

| Chief Complaint: | | Allergies: ☐ NKA | Signature/Title: |
|---|---|---|---|

SUBJECTIVE:

presenting for imaging review -

Recently seen 4/26/11 for chronic care

will not address those issues today. See 4/26/11

note for complete details

See MRI Report. Patient is s/p assault 1/2011

multiple injuries

| OBJECTIVE: | WNL | ABN | "Checking "WNL" documents that all exam elements listed in the Primary Care Provider Clinical Decision Support dated June 11, 2009 are within normal limits. | | | WNL | ABN | | STUDY RESULTS: |
|---|---|---|---|---|---|---|---|---|---|
| 1. General | ☐ | ☐ | | 7. | Musculoskeletal | ☐ | ☐ | | MRI |
| 2. HEENT/Neck | ☐ | ☐ | | 8. | Skin/Ext. | ☐ | ☐ | H LE | 5/3/11 |
| 3. Cardio | ☐ | ☐ | depressed | 9. | Neurological | ☐ | ☐ | arthry | |
| 4. Pulmonary | ☐ | ☐ | | 10. | Psychiatric | ☐ | ☐ | | Bone trauma |
| 5. Abdomen | ☐ | ☐ | | 11. | Rectal/Prostate | ☐ | ☐ | | Edema |
| 6. Genito-Urinary | ☐ | ☐ | | 12. | Breast/Pelvic | ☐ | ☐ | | fracture |
| | | | | | | | | | dislocated |
| | | | | | | | | | lateral |
| | | | | | | | | | femur |

ASSESSMENT/PLAN: For all chronic conditions list degree (G, F, P) of control and clinical trend (I, S, W)

(1) Multiple injury
s/p assault

(2) H femur # per MRI
Ref ortho/tun

PATIENT EDUCATION: ☐ Patient able to verbalize understanding of A/P ☐ Meds ☐ Lab/Study Results ☐ Diet ☐ Exercise ☐ Wt. Mgmt. ☐ Smoking

Self Management Goal(s):

Next Visit: ___ 2 Days

Primary Care Provider (Print Name/Title): Winfred Kokor, MD
Physician & Surgeon

Primary Care Provider Signature: 5/5/11

CDC Number, Name (Last, First, MI), Date of Birth, Institution/Housing

STATE OF CALIFORNIA
PROBLEM LIST/FLOW RECORD - MALE
CDCR 7420-A (REV. 12/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE ORDER #_____   DATE 5/5/11

**Allergies:**  Yes ☐  No ☐   _____

**Chronic problems/Significant diagnostic studies and consultations:**

(1)  Dyslipidemia

(2)  ___TN

(3)  3rd Degree hemorrhoids

(4)  Multiple injuries
      S/P R/Elbow fracture
      Mandibular # (ORIF)
      Brow #

(5)  Inguinal Hernia

**Hospitalizations and surgeries:**

| Preventive Health Measures: USPSTF recommendations | | | | | | | |
|---|---|---|---|---|---|---|---|
| Hemoccult x3 annual high sensitivity screen ages 50-75 | Date: | | Date: | | Date: | | Date: |
| | Result: | | Result: | | Result: | | Result: |
| Lipids men only every 5 years ≥35 if low risk CHD | Date: | | Date: | | Date: | | Date: |
| Cholesterol HDL LDL | | | | | | | |
| Prostate CA screen discussed insufficient evidence to assess risk/benefit of screening / if PSA requested | Date: | | Date: | | Date: | | Date: |
| | Yes | No | Yes | No | Yes | No | Yes | No |
| | Result:** | | Result:** | | Result:** | | Result:** |
| Abdominal Aortic Aneurysm screen 1 x between 65-75 in men who ever smoked | Date: | | Result: | | RPR Date: | | |
| | | | | | | | Pos | Neg |
| HCV AB positive? See HCV tracking sheet for treatment | | | | HCV Qual Positive? (if indicated) | | | |
| | Date: | | Yes | No | Date: | | Yes | No |
| HCV viral load/genotype (if indicated) | | | | Hep B surface antigen | | | |
| | Date: | Result: | | Date: | | Pos | Neg |
| Date HIV test offered? | Date: | | Date: | | Date: | | Date: |
| HIV test declined? | Yes | No | Yes | No | Yes | No | Yes | No |
| TB Code if not 722, describe TB status in Chronic Problems | Date: | | Date: | | Date: | | Date: |
| | Result:* | | Result:* | | Result:* | | Result:* |
| Test: | Date: | | Date: | | Date: | | Date. |
| | Result: | | Result: | | Result: | | Result: |
| Test: | Date: | | Date: | | Date: | | Date: |
| | Result | | Result: | | Result: | | Result. |
| Test: | Date: | | Date: | | Date: | | Date: |
| | Result: | | Result: | | Result: | | Result. |
| Test: | Date | | Date: | | Date: | | Date: |
| | Result | | Result: | | Result: | | Result: |
| Test: | Date: | | Date: | | Date: | | Date |
| | Result: | | Result: | | Result. | | Result: |
| Date Advance Directive discussed with patient. | | | | | | Date | | Date |
| Advance Directive completed by patient? | | | | | | Yes | No | Yes | No |
| Date POLST/DNR discussed with patient. | | | | | | Date: | | Date |
| POLST DNR completed by patient? | | | | | | Yes | No | Yes | No |

CDCR Number, Name (Last, First, MI) & DOB, Institution/Housing

E 32-064
W. hold down, Celi
PAGE 137
c-1  12-458

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## HEALTH CARE SERVICES
### PHYSICIAN REQUEST FOR SERVICES
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME WHEELER, ERIC | CDC NUMBER E 82064 | LOCATION CSMF |
| DATE OF BIRTH 5/14/58 | EPRD DATE 2040 | GENDER |

| PRINCIPLE DIAGNOSIS (L) femur # | ICD-9 CODE | CPT CODE(S) |
| REQUESTED SERVICE(S) ortho | | # OF DAYS RECOMMENDED 14 |

*Please circle all that apply:* Diagnostic Procedure **Consultation**          **Outpatient/Inpatient**          **Initial/Follow-up**

Requested Treatment/Service is:     **EMERGENT**          **URGENT**          **ROUTINE**

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _____          Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation: the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* ___ Multiple injuries S/P assault MRI (H) knee
# closed lateral femur Request MTD ConSult
for review.     New arrival form

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME W. Loker | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE 5/18/11 |
| REQUESTING PHYSICIAN SIGNATURE | DATE 5/5/11 | Utilization management tracking # 5/17/11 10/11- 345640 |

| DATE OF CONSULTATION | PRINTED NAME OF CONSULTANT |

FINDINGS: _____

RECOMMENDATIONS: _____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| ETA RN SIGNATURE | DATE 6/18/11 | E 82064 |
| PCP SIGNATURE | DATE | WHEELER, ERIC |
| | | 5/14/58 |

Attach Progress Note page for additional information.
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN   - TO UHR PENDING ORIGINAL
CANARY  - CONSULTANT
PINK    - UM
GOLD    - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES FIRST CDC-7243 (Rev. 11/02)

NOTE:  SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| | 5/5/11 | (1) | RFS · Ortho |
| | | (2) | mid line p̄ n |
| | | | w cows |
| | | | ⌐ sted  L̄  5/5/11  15:20 |

ALLERGIES:

INSTITUTION

ROOM / WING  G1 - 114L

Confidential
client information
See W & I Code, Sections 4514 and
5328

CDC NUMBER, NAME (LAST, FIRST, MI)

E 82064

Wheeler, Eric

51/12/58

**PHYSICIAN'S ORDERS**

CDC 7221 (4/90)

STATE OF CALIFORNIA          OSP 09 116447          DEPARTMENT OF CORRECTIONS

| DATE | |
|------|--|
| 6-8-11 | Orthopedics Clinic - Dr. Smith |

INSTITUTION: CSATF
HOUSING UNIT: 61-116L

INTERDISCIPLINARY PROGRESS NOTES

CDC 7230 (Rev 04/03)
STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

Name: Wheeler, Eric
CDC # E82064
D.O.B. 5-14-58

page 51/116

**Received**
APR 14 2013
DEPARTMENT OF CORRECTIONS
Medical Records

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.

| REQUEST FOR: | MEDICAL ☑ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| Eric Wheeler | E82064 | E-GYM-137L |

| PATIENT SIGNATURE | DATE |
|---|---|
| Eric Wheeler | 6-29-11 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had
The Problem) I have torn cartiledge, left knee bone fractured, came net a lower floor

bunk bunk at lowest climb stairs, bend, kneel down chrono CDC-7410; my UHR is

in G yard Building two (Ewp) will you please call LTT Evins, IPT Alcantra And ask them

to FAX A copy of this chrono ASAP because the officers in the E gym Are trying to force

me to have a upper bunk and E chrono climb up. My E yet chrono wheelchair chrono Lower Level

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)   MD

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: 7/1/11  0838 | Received by: Mungo |
|---|---|
| Date / Time Reviewed by RN: 5/1/11  0838 | Reviewed by: Mungo |

S:                                    Pain Scale:  1  2  3  4  5  6  7  8  9  10

MD 7/20/11

O:    T:    P:    R:    BP:    WEIGHT:

A:
P:
☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☒ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION CSATF | |

| PRINT / STAMP NAME | SIGNATURE / TITLE | DATE/TIME COMPLETED |
|---|---|---|
| Mungo | Mungo | 7/1/11 |

page 1787

Egym-1372

RE: WHEELER, Eric
Date of Examination: July 6, 2011
CDCR No: E82064
California Substance Abuse Treatment Facility and
State Prison at Corcoran (CSATF)

Mr. Wheeler is still experiencing pain in his left lateral distal femur area as I have indicated in my previous note. He has not yet achieved full range of motion of the left knee.

Range of motion of the knee is from about 10-80 degrees. He still has some quad weakness on the left side.

At this time I am recommending that he undergo some therapy twice a week for 2 weeks. I am also recommending a lower bunk chrono for him. I will see him back on a p.r.n. basis.

David G. Smith, M.D.
Diplomate, American Board of Orthopaedic Surgery
Fellow, American Academy of Orthopaedic Surgeons
Qualified Medical Examiner, State of California

DGS:seg



| DATE | TIME | |
|------|------|---|
| 1-6-11 | | Orthopedics Clinic - Dr. Smith |

Orthopedics Clinic - Dr. Smith

| INSTITUTION | HOUSING UNIT | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|-------------|--------------|------------------------------------------------------|
| CSATF | EGYM - 137L | Name: Wheeler, Eric |
| | | CDC # E82064 |
| | | D.o.B. 5-14-58 |

INTERDISCIPLINARY PROGRESS NOTES

CDC 7230 (Rev 04/03)
STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

Page 119

## COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS:** A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

### A. HOUSING

None

| | | |
|---|---|---|
| 1. Barrier Free/Wheelchair Access | P / T | |
| 2. Ground Floor Cell | P / T | |
| 3. Continuous Powered Generator | P / T | |
| 4. Bottom Bunk | P / T | |
| 5. Single Cell (See 128-C date: _____ ) | P / T | |
| 6. Permanent OHU / CTC (circle one) | P / T | |
| 7. Other _____ | P / T | |

### B. MEDICAL EQUIPMENT/SUPPLIES

None

| | | |
|---|---|---|
| 8. Limb Prosthesis | P / T | |
| 9. Brace | P / T | |
| 10. Crutches | P / T | |
| 11. Cane: (type) WALKING | P / T | |
| 12. Walker | P / T | |
| 13. Dressing/Catheter/Colostomy Supplies | P / T | |
| 14. Shoe: (specify) _____ | P / T | |
| 15. Dialysis Peritoneal | P / T | |
| 16. Wheelchair: (type) MANUAL | P / T | |
| 17. Contact Lens(es) & Supplies | P / T | |
| 18. Hearing Aid | P / T | |
| 19. Special Garment: (specify) _____ | P / T | |
| 20. Rx. Glasses: PRESCRIPTION | P / T | |
| 21. Cotton Bedding | P / T | |
| 22. Extra Mattress | P / T | |
| 23. Other _____ | P / T | |

### C. OTHER

None

| | | |
|---|---|---|
| 24. Attendant to assist with meal access and other movement inside the institution. | P / T | |
| Attendant will not feed or lift the inmate/patient or perform elements of personal hygiene. | | |
| 25. Wheelchair Accessible Table | P / T | |
| 26. Therapeutic Diet: (specify) _____ | P / T | |
| 27. Communication Assistance | P / T | |
| 28. Transport Vehicle with Lift | P / T | |
| 29. Short Beard | P / T | |
| 30. Other _____ | P / T | |

### D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments? ☒ Yes ☐ No

If yes, specify: SedenTary

| INSTITUTION SATF | COMPLETED BY (PRINT NAME) T BYERS | TITLE PA-C |
|---|---|---|
| SIGNATURE Byers PA-C V D N Haines | DATE 7-1-11 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| HCM/CMO SIGNATURE ___ Phillips | DATE 7/5/2011 | Wheeler Bric |
| **APPROVED** (list the number of items approved) 2, 4, 11, 16, 20, D. | | 882064 |
| **DENIED** (list the number of items denied) | | 5/14/58 page 120 |

COMPREHENSIVE ACCOMMODATION CHRONO

Equm. 13

CDC 7410 (08/04)

1669468

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

**HEALTH CARE SERVICES REQUEST FORM**

DEPARTMENT OF CORRECTIONS

### PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.

| REQUEST FOR: | MEDICAL ☑ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

NAME: Wheeler, Eric

CDC NUMBER: E-82064

HOUSING: EGYM 137L

PATIENT SIGNATURE: Eric Wheeler

DATE: 7-28-11

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) 1. I need all of my meds reneewed — by doctor. 2. I have not seen the doctor since April!! I was suppose to have 30 day follow ups!! 3. The orthopedic surgeon recommended physical therapy, refer to the CTC dietician this has not been sent to see orthopedic surgeon twice in 2½ months yet no doctor to make the necessary orders for all of this !!! I have a new lumpin my knee

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

### PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

### PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: | | Received by: | |
|---|---|---|---|
| Date / Time Reviewed by RN: | 7/30/11 1000 | Reviewed by: | |

S:

Pain Scale: 1 2 3 4 5 6 7 8 9 10

O: T: 97.4 P: 82 R: 4 BP: 142/80 WEIGHT: 141 ½

BMI 22

A:

P:

☐ **See Nursing Encounter Form**

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☐ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|

| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
|---|---|---|---|

COMPLETED BY: R. HANDY RN

NAME OF INSTITUTION

PRINT / STAMP NAME: R. HANDY RN

SIGNATURE:

DATE/TIME COMPLETED:

California Department of Corrections and Rehabilitation — Division of Correctional Health Care Services

Inst: SATF Encounter Form: Musculoskeletal Complaints (Non-Traumatic)

Name: Wheeler CDC# E 32064 DOB: 5/14/58 Date/Time 8/1/11 1400

Fill in the blanks and check all that apply

**DISPOSITION:**

Time released 1430

☐ Condition on release: Stable

☒ Returned to ~~housing unit~~ CC

☐ Housing reassignment to:

☐ Referred for follow-up

☐ Physician clinic ☐ RN clinic

☐ Referred to higher level of care: (specify)

Person/time contacted:

Time/Mode of transfer:

ERV contacted (time)

ERV arrived (time)

COMMENTS:

Pt claimed to injure (L) LB in Jan 2011. Pt claimed x-ray to (L) LB was (−). Pt claimed to have older MRI but transfer yards. Pt claimed to have MRI and is poor historian about results. Pt [illegible] not [illegible] to read. Pt claims to have outside ortho consult but not exact of ortho MDs exact recommendations. Pt (R) LB & (L) LB are symmetric. Pt uses cane to ambulate but seems to put little weight or effort when ambulating. Pt able to use/move LLB as RLB. Skin to LB is CDI. Ø discolor. Skin color is sym c RLB. Pt denies any popping or crunching sounds when ambulating. Edu pt in [illegible], pursue w/ ortho, [illegible] MRI/x-ray

Pt received Edu to [illegible] on own wave. Return

List name(s) of RN Protocols used:

R. HANDY RN

Signature / Title

California Department of Corrections and Rehabilitation      Division of Correctional Health Care Services

Inst: __SATF__    Encounter Form: Musculoskeletal Complaint (Non-Traumatic)

Name: __Wheele__    CDC# __E-82064__ DOB: __5/14/58__ Date/Time __6/11 .1400__

Fill in the blanks and check all that apply.

**SUBJECTIVE:**

Chief Complaint: _Rt Knee Pain_

Date and time of onset: _Jun 2011_

Pain: Scale of 0-10 (0=no pain 10=worst pain): _8/10_

Area of pain: _Rt Knee_

Quality of pain: _Aching, sharp_

What makes it better? _rest_

History of prior pain / duration: ___

☐ Low back pain   ☐ Flank pain

Urinary symptoms: ☐ Urinary frequency   ☐ Dysuria

   ☐ Burning on urination   ☐ Hematuria

☐ Muscle spasms   ☐ Numbness   ☐ Tingling

Other: ___

History of chronic illness: ☑ Arthritis ☐ Cancer

  ☐ Diabetes ☐ Blood dyscrasias ☐ Renal Disease

Other: _HTN DSkeo multes_

History of: ☐ Fever ☐ Chills ☐ Headache

 . ☐ Nausea/Vomiting ☐ Diarrhea ☐ Fatigue

     ☐ Recent Trauma: Describe: ___

☑ Other:

_Rt Swollen ☐ Knee in 2011/5 cm_

Allergies: _Fish, Penicillian_

Current medications: _See MAR_

**OBJECTIVE:**

☑ Awake, alert, oriented to person, place, time

Vital signs: BP: _142/92_ Pulse: _82_ Resp: _16_

Temp: _98.7_ ☐ Urine dipstick

Results of dipstick / urinalysis: ___

Assess areas involved: /

Extremity: ☐ Upper ☑ Lower ☐ Right ☐ Left-

Describe: Color: _No Asymetry 2 knee_

☐ Warmth   ☐ Tenderness   ☐ Swelling:

☐ Deformity   ☐ Circulation   ☐ Sensation

☑ ROM   Describe: _Leg_

Muscle: ☐ Atrophy ☐ Hypertrophy ☐ Weakness

   ☐ Tremors

☐ Gait/Stance (describe): _Steady & came_

**ASSESSMENT:**

☐ Impaired physical mobility related to: ___

☑ Pain related to / evidenced: _CLO Pain Rt_
_DLt_

**PLAN:**

MD referral completed: (circle) NO / YES. If yes:

☐ STAT (Positive urine dipstick and patient has signs
and symptoms consistent with a UTI; alterations in
circulation or sensation, new deformity or discoloration,
or patient appears ill or has history of fever, chills,
headache, nausea, vomiting, or diarrhea; severe muscle
cramps; muscle weakness with or without fever; warm or
acutely swollen, joints)

☐ Urgent     ☐ Routine

☐ Orders received by phone from POC

Physician notified (name / time) ___

Physician Responded (time) ___

MUSCLE CRAMPS / EXTREMITY PAIN

.☐ Acetaminophen 325mg 2 tabs PO Q4-6 hours PRN
pain while symptoms persist; not to exceed 12tabs/24hr.

☐ Ibuprofen 200mg 1-2 tabs PO Q4-6hrs PRN pain while
symptoms persist; not to exceed 6 tabs/24hrs

☐ Naproxen Sodium 220mg 2 tabs PO 1st hour; 1 tab Q8-12
hrs PRN pain while symptoms persist; not to exceed 3
tab/24hr.

☑ Activity as tolerated.

JOINT PAIN / LOW BACK PAIN.

☐ Apply (circle one) ice or heat as appropriate.

☐ Acetaminophen 325mg 2 tabs PO Q4-6 hours PRN
pain while symptoms persist; not to exceed 12 tabs/24hrs

.☐ Ibuprofen 200mg 1-2 tabs PO Q4-6hrs PRN pain while
symptoms persist; not to exceed 6 tab/24 hrs

☐ Naproxen Sodium 220mg 2 tabs 1st hour; 1 tab PO Q8-12
hrs PRN pain while symptoms persist; not to exceed 3
tab/24hr

☑ Activity as tolerated.

☐ Treatment given per RN Protocol:

**EDUCATION:**

Patient instructed in:   ☐ Use of medications

☑ Level of activity

☐ Patient Health Care Education Forms given to patient:
(specify) ___

☑ Resubmit a Health Care Service Request Form (CDC
7362) if symptoms persist, deteriorate, increase in
swelling or pain; decreased ROM or CSM; or

☑ Patient verbalized understanding of instructions

_KM_

_K. HANDY RN_

ENCOUNTER FORM: MUSCULOSKELETAL COMPLAINTS (NON-TRAUMATIC
CDC XXXX Revised 4-11    2

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

## COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS:** A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

### A. HOUSING

**None**

| | | | |
|---|---|---|---|
| 1. Barrier Free/Wheelchair Access P / T | | (4.) Bottom Bunk | P /(T) 10/1/11 |
| (2.) Ground Floor Cell | P /(T) 10/1/11 | 5. Single Cell (See 128-C date: _____ ) | P / T |
| 3. Continuous Powered Generator P / T | | 6. Permanent OHU / CTC (circle one) | P / T |
| | | 7. Other _____ | P / T |

### B. MEDICAL EQUIPMENT/SUPPLIES

**None**

| | | | |
|---|---|---|---|
| 8. Limb Prosthesis | P / T | (16) Wheelchair: (type) manual | P /(T) 10/1/11 |
| 9. Brace | P / T | 17. Contact Lens(es) & Supplies | P / T |
| 10. Crutches | P / T | 18. Hearing Aid | P / T |
| (11.) Cane: (type) walking | P /(T) 10/1/11 | 19. Special Garment: | |
| 12. Walker | P / T | (specify) | P / T |
| 13. Dressing/Catheter/Colostomy Supplies | P / T | (20.) Rx. Glasses: prescription | (P) T |
| 14. Shoe: (specify) _____ | P / T | 21. Cotton Bedding | P / T |
| 15. Dialysis Peritoneal | P / T | 22. Extra Mattress | P / T |
| | | 23. Other _____ | P / T |

### C: OTHER

**None**

| | | |
|---|---|---|
| 24. Attendant to assist with meal access   P / T and other movement inside the institution. | 26. Therapeutic Diet: (specify) | P / T |
| Attendant will not feed or lift the inmate/patient or perform elements of personal hygiene. | 27. Communication Assistance | P / T |
| | 28. Transport Vehicle with Lift | P / T |
| | 29. Short Beard | P / T |
| 25. Wheelchair Accessible Table       P / T | 30. Other _____ | P / T |

### D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments?   ☒ Yes   ☐ No

If yes, specify: **Sedentary**

| INSTITUTION CSATF | COMPLETED BY (PRINT NAME) T. Byers | TITLE PA-C |
|---|---|---|
| SIGNATURE [signature] MD   DATE 8/23/11 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH | |
| HCM/CMO SIGNATURE [signature]   DATE 8/24/11 | Wheeler, Bric | |
| APPROVED (list the number of items approved) 2, 4, 11, 16, 20 | E 82064 | |
| DENIED (list the number of items denied) | 5/14/58 | |

**COMPREHENSIVE ACCOMMODATION**
**CHRONO**

DPO   G3-2131

CDC 7410 (08/04)          Original - Unit Health Record   Canary - Central File   Pink - Correctional Counselor   Gold - Inmate

PAGE 124

No Record available

**List Chronic Diseases:**

| (1) HTN | (2) HLP | (3) GERD |
|---|---|---|

**HISTORY:** (Attach a progress note form, if needed, to provide a more complete history.)
Current medications (*if no pharmacy profile attached*) and adherence since last visit: _____

See Med profile

RN SIGNATURE

**Complaints/Problems:** (Discuss in space provided)

CV / Hypertension: Chest Pain: ☐ Yes ☒ No    SOB: ☐ Yes ☒ No    Diabetes Mellitus: # of hypoglycemic reactions since last visit: _____

Asthma: # attacks since last visit? _____    Seizure Disorder: # seizures since last visit: _____

# short acting beta agonist canisters in last month: _____    Discussion: freeventing today for

# visits to ETA for asthma since last visit: _____    several issues allegst has

# times awakening with asthma symptoms per week: _____

Additional History: _____    Not seen MD since 4/2011

No MHR tods

**CCP compliance** (e.g. diet, exercise, medications): Labs reviewed 5/5/11    B Fost

CBC TSH WNL

**EXAM:** *HEENT/Neck:* Supple    *Rectal:* Not examined.

*Heart:* S1 S2 prefont    *Neurological:* grossly intact

*Lungs:* CTA BL    *Other (specify):* Allergies PCN    Age 52    6.8

*Abdomen:* Soft WW reducible    Comments on BP or Glucose Monitoring:
BP 101/65    P65    T97.7

*Extremities/Pulses:* ⊕ pedal edema    PP 98%    WT 140

| ASSESSMENT: Diagnoses | Degree of Control | | | | Clinical Status | | | |
|---|---|---|---|---|---|---|---|---|
| | G | F | P | NA | I | S | W | NA |
| 1. HTN | ☒ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| 2. HLP | ☐ | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| 3. ⊕ FOBT | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☒ |

**PLAN:**
Medications: Key to GI Colonoecmy EGD
Diagnostics: Continue PCP meds MC enalopril
Labs: GERD repomding to antacids

Monitoring: ☐ BP / Frequency: _____    ☐ Glucose / Frequency: _____    ☐ Peak flow    ☐ Other: _____
( _____ X day / week / month)    ( _____ X day / week / month)

Education provided: ☐ Nutrition  ☒ Exercise  ☒ Smoking  ☐ Test Results  ☐ Medication Management
☐ Other (specify): _____

**Referral:** ☐ Specialist (indicate type): _____    ☐ Other Chronic Care Program

**Interval to next visit:** ☐ 90 Days    ☐ 30 Days    ☒ Other 91 Days    ☐ Discharge from CCP (specify): _____

| PROVIDER SIGNATURE Winfred Kokor MD | DATE 8-29-11 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| INSTITUTION Physician & Surgeon 8-29-11 | EPRD 2041 | Wheeler Eric E82064 |

**CHRONIC CARE
FOLLOW-UP VISIT**

# DENTAL

**HEALTH CARE SERVICES REQUEST FORM**

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

1710088
DEPARTMENT OF CORRECTIONS

### PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.

| REQUEST FOR: | MEDICAL ☐ | MENTAL HEALTH ☐ | DENTAL ☑ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| Wheeler | E82068 | EGYM 137L |

| PATIENT SIGNATURE | DATE |
|---|---|
| Eric Wheeler | 9-21-11 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) I would like to finish having the front front teeth of mine grounded down. I broke my jaw (2) places the left front tooth pushed up. The cdc dentist started grounding then even with the bones of them. SATUrdum they were off - have it finished. Because it is making my tongue bluster on left side and it is to hard to chew/eat/bite down. Thank you.

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM          3 7P 8-23-11

### PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

### PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: | Received by: |
|---|---|
| Date / Time Reviewed by RN: | Reviewed by: |

S:

RECEIVED

AUG 23 2011

CSATF-DENTAL

Pain Scale: 1 2 3 4 5 6 7 8 9 10

| O: | T: | P: | R: | BP: | WEIGHT: |
|---|---|---|---|---|---|

A:

P:     T/F.    occlusal adjustment
☐ See Nursing Encounter Form

9/6/11

LE, L, DDS/SATF

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: 9/6/11 | |
| COMPLETED BY    L. Le, DDS | | NAME OF INSTITUTION    CSATF | |

| PRINT / STAMP NAME    L. Le, DDS | SIGNATURE / TITLE | DATE/TIME COMPLETED    9/6/11 |
|---|---|---|

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

STATE OF CALIFORNIA
**Dental Progress Notes**
CDCR 237-C (REV. 08/10)

# DENTAL  DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

RESTORATIONS AND OTHER TREATMENTS (Completed during incarceration)

SUBSEQUENT DISEASES AND ABNORMALITIES

REMARKS BP _____ P _____ T _____ Wt _____

REMARKS  A  +Hll  RDA  CRATE

Pt rinsed with Peridex® for 30 seconds

Prior to each treatment, the clinician *must* review the inmate-patient's health history, note changes or specify no change. Use S.O.A.P.E. format to document patient care.

| Date (mm/dd/yy) | Tooth # | PROGRESS NOTES (include signature at the end of each data entry) | DPC After Encounter | Prison Acronym |
|---|---|---|---|---|
| 0/ /11 | | | | SATF |
| | | 1. Disability Code:  2. Accommodation:  3. Effective Communication: | | G Yard |
| | | ☐TABE score ≤ 4.0  ☐Additional time  ☑P/I asked questions | | |
| | | ☐DPH ☐DPV☐LD ☐Equipment ☐SLI  ☐P/I summed information | | |
| | | ☐DPS ☐DNH  ☐Louder ☐Slower  Please check one: | | |
| | | ☐DNS ☐DDP  ☒Basic ☐Transcribe  ☐Not reached*☐Reached | | |
| | | ☐Other*  *See chrono/notes | | |
| | T/F | 4.Comments: | | |
| | 22 | | | |
| | 23 | S. pt was scheduled for triage and comp of  CC: My | | |
| | 24 | front teeth need to grind down " No pain today | | |
| | 25 | O. HGR - No change. Med profile reviewed. ID confirmed | | |
| | | by of problem w/o lower front teeth loose | | |
| | | teeth ext extruded after wearing wire | | |
| | | A. Occlusal trauma | | |
| | | P. Triage Occlusal adjustment. Pt felt comfortable. | | |
| | | No info or today, pt just had compor | | |
| | | on 05/24/11 | | |
| | | E. OHI given, stressed good OH, flossing daily | | |
| | | N/V  SBP  LRQ, ULW  L. Le, DDS | | |

**DRUG ALLERGIES?**  ☐NO  ☒YES pen

CDC Number: E 8 2 0 6 4

Inmate Name: WHEELER, ERIC (Last, First, Middle Initial)

Date of Birth: 0 5 (mm/dd/yy) 5 8

EPRD: 1/25/2041

**DENTAL PROGRESS NOTES**
CDCR 237- C

CDCR 237-C DENTAL PROGRESS NOTES

List Chronic Diseases: NO Change

(1) _____ (2) _____

HISTORY: (Attach a progress note form, if needed, to provide a more complete history.)
Current medications (*if no pharmacy profile attached*) and adherence since last visit: _____

_____

_____

**RN SIGNATURE**

**Complaints/Problems:** (Discuss in space provided)

CV / Hypertension: Chest Pain: ☐ Yes ☑ No   SOB: ☐ Yes ☑ No   Diabetes Mellitus: # of hypoglycemic reactions since last visit: _____

Asthma: # attacks since last visit? _____   Seizure Disorder: # seizures since last visit: _____

# short acting beta agonist canisters in last month: _____   Discussion: Saw Dr. Smith - may 2011 for

# visits to ETA for asthma since last visit: _____   Left knee ninny follow-up

# times awakening with asthma symptoms per week: _____   baton attack + flu.

Additional History: _____   MRI done in April 2011

**CCP compliance** (*e.g. diet, exercise, medications*):

**EXAM: HEENT/Neck:**   **Rectal:** NS - ⊕ knee - Pain on ROM

**Heart:**   **Neurological:**

**Lungs:**   **Other (specify):**

**Abdomen:**   Comments on BP or Glucose Monitoring:

**Extremities/Pulses:** ① improving Hernia reduced ½O   BP 120/84 P70 R16 T97.5

G Sat 100% wt 145 lb #6 5'9"

**ASSESSMENT: Diagnoses**

| | Degree of Control | | | | Clinical Status | | | |
|---|---|---|---|---|---|---|---|---|
| | G | F | P | NA | I | S | W | NA |
| 1. HTN | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 2. Hyperlipidemia | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 3. ① knee? Meniscal tear - Flu 2... | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**PLAN:** 4) ① Inguinal Hernia - abd. band use appsn.

**Medications:**

**Diagnostics:** Awaiting Colonoscopy / EUD

PFS done

**Labs:**

**Monitoring:** ☑ BP / Frequency: ( ) X day / week / month   ☐ Glucose / Frequency: ( ) X day / week / month   ☐ Peak flow   ☐ Other:

**Education provided:** ☑ Nutrition   ☑ Exercise   ☐ Smoking   ☑ Test Results   ☐ Medication Management

☐ Other (specify): Dr. Smith

**Referral:** ☑ Specialist (indicate type):   ☐ Other Chronic Care Program

**Interval to next visit:** ☐ 90 Days   ☐ 30 Days   ☐ Other (60) Days   ☐ Discharge from CCP (specify):

PROVIDER SIGNATURE OGBUEHI.C.   PA Sci   **DATE** 10/21/11

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

INSTITUTION CSATF

Wheeler, Enc
E82064
5/14/1958

**CHRONIC CARE
FOLLOW-UP VISIT**

61-116L

CDC 7402 (03/03)
STATE OF CALIFORNIA   DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

## HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES

(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME Wheeler, Eric | | CDC NUMBER E82064 | INSTITUTION CSATF |
|---|---|---|---|
| DATE OF BIRTH 5/14/1958 | EPRD DATE 12/24/2040 | GENDER M | |
| PRINCIPLE DIAGNOSIS Left knee injury | | ICD - 9 CODE | CPT CODE(S) |
| REQUESTED SERVICE(S) Exaimainub | | | # OF DAYS RECOMMENDED |

*Please circle all that apply:* Diagnostic Procedure/(Consultation)  (Outpatient/Inpatient)   Initial/Follow-up

Requested Treatment/Service is:   **EMERGENT**      **URGENT**      (ROUTINE)

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _Dr. Smith_   Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* _____
_____
_____

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____
_____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME  PF | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE |
|---|---|---|
| REQUESTING PHYSICIAN SIGNATURE | DATE 1/21/11 | Utilization management tracking #: |
| DATE OF CONSULTATION | PRINTED NAME OF CONSULTANT | |

FINDINGS: _____
_____
_____

RECOMMENDATIONS: _____
_____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | E82064 |
| PCP SIGNATURE | DATE | Wheeler 5/14/58 |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN    - TO UHR PENDING ORIGINAL
CANARY   - CONSULTANT
PINK     - UM
GOLD     - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)        CDC 7343 (Rev. 11/02)

California Correctional Health Care Services                    SUBSTANCE ABUSE TREATMENT FACILITY

### CHRONIC CARE FOLLOWUP VISIT

| NAME: WHEELER, Eric | CDCR#: E82064 | DATE OF SERVICE: 10/21/2011 |
|---|---|---|
| DATE OF BIRTH: 05/14/1958 | HOUSING: E2 1133L | PAROLE DATE: 12/24/2040 |

TB CODE: 22

CHRONIC MEDICAL PROBLEMS:

Received

1. Hypertension.
2. Hyperlipidemia.

NOV 0 4 2011

Medical Records

SUBJECTIVE: This is a 53-year-old male who was seen in August by Dr. Kokor for chronic pain and positive fecal occult blood test. Referral for Services (RFS) for colonoscopy and EGD was done which is pending approval of the patient's followup for GI; however, the patient presents with a history that he was seen by Dr. Smith sometime in May following a left knee injury, possible ligament tear after he was hit with a baton and was recommended follow up with Dr. Smith. Unfortunately, the patient's chart is unavailable at this visit and some of the information is not on his electronic Unit Health Record (UHR). However, the patient has left knee pain with no swelling and ambulates without any effort; no numbness, no weakness; otherwise, he says the pain severity is about 6 out of 10, occasionally relieved with Naprosyn. The patient denies chest pain, shortness of breath or palpitations, and no headache.

MEDICATIONS:

1. Magnesium hydroxide (Milk of Magnesia).
2. Aspirin 81 mg.
3. Calcium carbonate with vitamin D.
4. Divalproex 250 mg per Mental Health.
5. Divalproex 500 mg per Mental Health.
6. Enalapril 5 mg.
7. Hydrochlorothiazide 25 mg.
8. Naproxen 500 mg b.i.d.
9. Simvastatin 20 mg daily.

### ALLERGIES: PENICILLIN.

OBJECTIVE/OBSERVATION: VITAL SIGNS: Blood pressure 126/84, pulse 70, respirations 16, temperature 97.5. O2 saturation 100%. Weight 145 pounds. Height 5 feet 9 inches. GENERAL: Well nourished, well developed, in no apparent distress. HEENT: Head is atraumatic and normocephalic. Eyes: Equal, round, reactive to light and accommodation. Throat is symmetric. No lymphadenopathy. NECK: Supple. No tracheal deviation. LUNGS: Clear to auscultation bilaterally. HEART: S1, S2. ABDOMEN: Nontender, nondistended, soft. Otherwise, mild, reducible inguinal hernia with no sign of incarceration. MUSCULOSKELETAL: Left knee with pain on range of motion. No crepitus. No swelling. Intact knee reflex. EXTREMITIES: No edema, ecchymosis or cyanosis. Intact pulsations. NEUROLOGICAL: Alert and oriented x3.

LABORATORY DATA/DIAGNOSTIC DATA: Last laboratory was 07/22/2011 with sodium 133, potassium 4.5, chloride 96, urea nitrogen 8, creatinine 0.95, calcium 9.4. Blood toxicity examination including marijuana: None detected. T3 uptake 33, T4 6.3; white blood cell count 7.4, hemoglobin 14.7, hematocrit 44.7, platelets 300,000. Absolute neutrophil 5180; TSH 1.3.

ASSESSMENT/PLAN:

1. Hypertension. Blood pressure is stable and controlled with the enalapril and hydrochlorothiazide. Continue with the medication, and aspirin for preventive measures.

2. History of hyperlipidemia. Continue with the simvastatin.

3. Left knee meniscal tear possible. RFS prepared for followup with Dr. Smith in Orthopedics and continue with the naproxen p.r.n. pain.

4. Right inguinal hernia; reducible. Reassurance and observation. Abdominal band will be offered to the patient since it is not severe, no pain and no sign of incarceration. Surgical evaluation is not necessary at this time; however, the patient is informed that any time there is a problem, any sign of incarceration or obstruction such as severe abdominal pain, he

WHEELER Eric

California Correctional Health Care Services                    SUBSTANCE ABUSE TREATMENT FACILITY

should be referred for surgical evaluation. However, the patient is reassured that his RFS for colonoscopy and EGD is still in the process hopefully and monitoring blood pressure monthly.

EDUCATION: Education provided including nutrition, exercise, smoking, test results, and medication management.

REFERRALS: Dr. Smith orthopedic

FOLLOWUP: Return to clinic in 60 days.

Received

NOV 0 4 2011

Medical Records

X  COO
_____

Clement Ogbuehi, PA
Digitally authenticated on 11/4/2011 7:40 AM

CO/mf D: 10/21/2011 10:35:00 am          T: 10/26/2011 10:55:54 am          Job #: 288780



WHEELER Eric          DOB: 05/14/1958          Page 2 of 2          DOS: 10/21/2011          E82064

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

# HEALTH CARE SERVICES
# PHYSICIAN REQUEST FOR SERVICES

(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME Wheeler, Eric | CDC NUMBER E82064 | INSTITUTION CSATF |
|---|---|---|

| DATE OF BIRTH 5/14/1958 | EPRD DATE 12/24/2040 | GENDER M |
|---|---|---|

| PRINCIPLE DIAGNOSIS Left knee injury | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|

| REQUESTED SERVICE(S) Re-evaluation | | # OF DAYS RECOMMENDED |
|---|---|---|

*Please circle all that apply:* **Diagnostic Procedure** (Consultation)     (Outpatient)/Inpatient     Initial/(Follow-up)

Requested Treatment/Service is:     **EMERGENT**     **URGENT**     (ROUTINE)

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: ___Dr. Smith_____     Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* 52 yo Seen by Dr Smith about L knee injury possible ligament tore s/p trauma with baton in May 2011 recommend F/U

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME C Brown PA | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE 11/03/2011 |
|---|---|---|
| REQUESTING PHYSICIAN SIGNATURE | DATE | Utilization management tracking #: 25660 |

| DATE OF CONSULTATION 1-19-12 | PRINTED NAME OF CONSULTANT Dr Smith |
|---|---|

FINDINGS: _____

_____

_____                                                                  Received

RECOMMENDATIONS: _____                                                  JAN 1 9 2012

                                                                                  Medical Records

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE 1/19/12 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE 1/19/12 | E82064 |
| PCP SIGNATURE | DATE | Wheeler 5/14/58 |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN    - TO UHR PENDING ORIGINAL
CANARY   - CONSULTANT
PINK     - UM
GOLD     - SPECIALTY SCHEDULER

RECEIVED NOV 0 7 2011 RN Specialty Clinic

PHYSICIAN REQUEST FOR SERVICES (RFS)     CDC 7243 (Rev. 11/02)

$E2- 133L$

RE:    WHEELER, Eric
       Date of Examination: January 19, 2012
       CDCR No: E82064
       California Substance Abuse Treatment Facility and
       State Prison at Corcoran (CSATF)

Reason for Consultation: Mr. Wheeler is status post injury to his left knee, he states from a baton injury last year some time.

He did have an MRI scan that showed a lateral femoral condyle fracture but the fracture has now healed.

Objective Findings:   On examination, he still has some diffuse tenderness to palpation about the left thigh musculature.

Assessment/Recommendations:  At this point, I do not feel that there is much else that he needs from an orthopedic standpoint.

Followup:  Therefore, I will see him back on a p.r.n. basis.

David G. Smith, M.D.
Diplomate, American Board of Orthopaedic Surgery
Fellow, American Academy of Orthopaedic Surgeons
Qualified Medical Examiner, State of California

DGS: pmt

Received

FEB 0 2 2012

Medical Records

Page 133

STATE OF CALIFORNIA
**PRIMARY CARE PROVIDER PROGRESS NOTE**
CDCR 7230-M (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

**DATE:** 2-13-12 **TIME:** _____ **AGE:** 53 **UHR Present:** ☐ Yes ☐ No **MAR Present:** ☐ Yes ☐ No

| Temp: | Pulse: | BP: | RR: | Ht: | Wt: | BMI: |
|---|---|---|---|---|---|---|
| 98.8 | 72 | 110/68 | 18 | 68'' | 146 | 98% |

**Chief Complaint:** Allergies: ☐ NKA  PCN    Signature/Title:

**SUBJECTIVE:**

OTMR S/P orthopedic consult

S/P assault Jan 2011 (L) femur #, Bilateral jaw #

currently healed. Per ortho No further follow ups

HTN → Controlled on ACEI, HcTZ

tolerating med as prescribed

No chest pain, EOB.

Dyslipidemia → Controlled on Zocor. No side effect

+H → Recently difficult to reduce.

| OBJECTIVE: | WNL* | ABN | *Checking "WNL" documents that all exam elements listed in the Primary Care Provider Clinical Decision Support dated June 11, 2009 are within normal limits. | | | WNL* | ABN | STUDY RESULTS: |
|---|---|---|---|---|---|---|---|---|
| 1. General | ☐ | ☐ | | 7. | Musculoskeletal | ☐ | ☑ | |
| 2. HEENT/Neck | ☐ | ☐ | | 8. | Skin/Ext. | ☑ | ☐ | (L) femur |
| 3. Cardio | ☐ | ☐ | | 9. | Neurological | ☑ | ☐ | tender |
| 4. Pulmonary | ☐ | ☐ | ⊛ | 10. | Psychiatric | ☑ | ☐ | mid/ w/ pe |
| 5. Abdomen | ☐ | ☑ | | 11. | Rectal/Prostate | ☐ | ☐ | |
| 6. Genito-Urinary | ☐ | ☐ | | 12. | Breast/Pelvic | ☐ | ☐ | |

Lft medmisible /particle
Spleen ↑

**ASSESSMENT/PLAN:** For all chronic conditions list degree (G, F, P) of control and clinical trend (I, S, W)

① LH partially reducible
   Ref Surgery for herniorchaphs

④ multiple healed #
   S/P assault
   Consult ortho
   Completed
   Stable

② HTN → Clinically Stable    ⓐ goal
   good control

③ Dyslipidemia → Zocor as prescribed    Stable
   Lipid ⓐ goal    No need Rx

**PATIENT EDUCATION:** ☑ Patient able to verbalize understanding of A/P ☐ Meds ☐ Lab/Study Results ☐ Diet ☐ Exercise ☐ Wt. Mgmt. ☐ Smoking

Self Management Goal(s):
Next Visit: 2 or Days
Primary Care Provider (Print Name/Title): Winfred Kokor MD
Physician & Surgeon 2/13/12

Primary Care Provider Signature: EPRD

Received

FEB 18 2012

Medical Records

CDC Number, Name (Last, First, MI), Date of Birth, Institution/Housing

Wheeler Eric
E82064
E2-133   5-14-58

STATE OF CALIFORNIA                                                        DEPARTMENT OF CORRECTIONS

## HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES

(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME Wheeler, Eric | CDC NUMBER E82064 | INSTITUTION SATF |
|---|---|---|

| DATE OF BIRTH 5/14/58 | EPRD DATE 12/04/41 | | GENDER (m) |
|---|---|---|---|

| PRINCIPLE DIAGNOSIS LIH (irreducible) | ICD-9 CODE | CPT CODE(S) |
|---|---|---|

| REQUESTED SERVICE(S) Surgeon | | # OF DAYS RECOMMENDED |
|---|---|---|

*Please circle all that apply:* Diagnostic Procedure/Consultation       Outpatient/Inpatient       Initial/Follow-up

Requested Treatment/Service is:   EMERGENT       URGENT       ROUTINE

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _____   Anticipated Length of Stay: _____

Expected disposition (i.e., outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* ___ LIH irreducible (Not obstructed) request surgical eval

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____ pr hernarrhaph

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME W. Korra | APPROVED / AUTHORIZED DENIED DEFERRED BY | DATE 7/27/12 |
|---|---|---|

| REQUESTING PHYSICIAN SIGNATURE | DATE 7/13/12 | Utilization management tracking # 12-479 24 |
|---|---|---|

DATE OF CONSULTATION 2/21/12        PRINTED NAME OF CONSULTANT _____

FINDINGS: Left inguinal hernea

RECOMMENDATIONS: Phowe surgery

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: RFS for left inguinal herna Repair

| CONSULTANT SIGNATURE | DATE 3/21/12 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE 3/21/12 | WHEELER, ERIC |
| PCP SIGNATURE | DATE | |

Attach Progress Note page for additional information.
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL   - FILE IN UHR
GREEN      - TO UHR PENDING ORIGINAL
CANARY    - CONSULTANT
PINK         - UM
GOLD        - SPECIALTY SCHEDULER

FEB 24 2012

PHYSICIAN REQUEST FOR SERVICES (RFS)        CDC 7243 (Rev. 11/02)

E82064
Received
MAR 21 2012
5/14/58 Medical Records

| INMATE | WHEELER, ERIC | CDC# | E82064 | HOUSING | E2-1133001LP |

This inmate is PERMANENTLY MOBILITY IMPAIRED and uses a CANE to assist with ambulation (DNM). He walks 100 yards without pause with or without assistive devices. HOUSING RESTRICTIONS: LOWER BUNK, NO STAIRS. THIS DISABILITY DOES NOT IMPACT PLACEMENT. LIMITATIONS: No prolonged Standing/Walking 50% of the time in assignment. No REPETATIVE digging, bending, or lifting over 15 pounds. CSR ALERT: Requires relatively level terrain and no obstruction in the path of travel. DO NOT PLACE AT: CCI, CMC-E, CRC, CTF-C, FSP, SCC I OR II, SOL OR SQ.

CC: Health Record
   C-file
   Inmate Assignment
   CCI/CCII
   Housing Officer
   Inmate

4/18/12

Signature: W. Kokor, M.D.

Arrival Date: 6/7/10

| DATE: | 4/3/12 | HEALTH SERVICES CHRONO | SATF CDC-128-C |

# AUTHORIZATION FOR AND CONSENT TO SURGERY OR SPECIAL DIAGNOSTIC OR THERAPEUTIC PROCEDURES

To: _Eric Wheeler_
(Name of Patient)

1. Your attending physician is Dr. _____ and your
   supervising physician or surgeon is Dr. _Zafar Parvez_ .

2. The hospital maintains personnel and facilities to assist your physicians and surgeons in their performance of various surgical operations and other special diagnostic or therapeutic procedures. These operations and procedures may all involve risks of unsuccessful results, complications, injury, or even death, from both known and unforeseen causes, and no warranty or guarantee is made as to result or cure.

   You have the right to be informed of such risks as well as the nature of the operation or procedure; the expected benefits or effects of such operation or procedure; and the available alternative methods of treatment and their risks and benefits. Except in cases of emergency, operations or procedures are not performed until you have had the opportunity to receive this information and have given your consent. You have the right to consent to or to refuse any proposed operation or procedure at any time prior to its performance.

3. Your physicians and surgeons have recommended the following operation or procedure:
   _Open Repair of Left Inguinal Hernia With Possible_
   _Mesh Implant_

   Upon your authorization and consent, this operation or procedure, together with any different or further procedures which in the opinion of the supervising physician or surgeon may be indicated due to any emergency, will be performed on you. The operations or procedures will be performed by the supervising physician or surgeon named above (or in the event that that physician is unable to perform or complete the procedure, a qualified substitute supervising physician or surgeon), together with associates and assistants, including anesthetists, pathologists and radiologists from the medical staff of Corcoran District Hospital to whom the supervising physician or surgeon may assign designated responsibilities. The persons in attendance for the purpose of performing specialized medical services such as anesthesia, radiology or pathology are not agents, servants, or employees of the hospital or your supervising physician or surgeon. They are independent contractors and therefore are your agents, servants, or employees.

4. By your signature below you authorize the pathologist to use his or her discretion in disposing of any member, organ, or other tissue removed from your person during the operation or procedure set forth above.

5. To make sure that you fully understand the operation or procedure, your physician will fully explain the operation or procedure to you before you decide whether or not to give consent. If you have any questions you are encouraged and expected to ask them.

6. Your signature on this form indicates (1) that you have read and understand the information provided in this form, (2) that the operation or procedure set forth above has been adequately explained to you by your physician or surgeon, (3) that you have had a chance to ask questions, (4) that you have received all of the information you desire concerning the operation or procedure and (5) that you authorize and consent to the performance of the operation or procedure.

Date: _5.9.12_                    Signature: _X_____
                                           (Patient/Parent/Conservator/Guardian)

Time: _6.050_                     If signed by other than patient, indicate relationship:

Witness: _Lucki Ynew_            _____

PATIENT IMPRINT

**CORCORAN DISTRICT HOSPITAL**
1310 HANNA AVENUE • P.O. BOX 758
CORCORAN, CALIFORNIA 93212

199129   RM-        065365      P/T-O/P
WHEELER E E82064 ERIC   M   53
PARVEZ Z
                    EXP 05/09/12  B/D 05/14/58

WHITE - MEDICAL RECORD. • CANARY - PATIENT COPY.

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT

## PART A - COVER SHEET

CDCR 837-A (REV. 10/06)    Page 1 of 8

| INSTITUTION | FACILITY | FACILITY LEVEL | INCIDENT SITE | LOCATION | PROGRAM | AD/SEG YARD | USE OF FORCE: |
|---|---|---|---|---|---|---|---|
| | (007 - Facility G | ☐ I ☑ II ☐ RC ☐ III ☐ IV | BUILDING G1 | B SECTION | SNY | N/A | Yes |

| INCIDENT LOG NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|
| SATF-0007-11-01-0021 | 01/19/2011 | 07:17 |

| DATE: | SPECIFIC CRIME / INCIDENT |
|---|---|
| | Battery on an Inmate Resulting in Serious Bodily Injury |

MCR § [ ] PC, [ ] N/A   NUMBER / SUBSECTION
3005 of Force or Violence

| DDA REFERRAL POSSIBLE | CPS/SIS RESPONSE NOTIFIED / ACTIVATED | MUTUAL AID | MEDIA NOTIFIED |
|---|---|---|---|
| ☑ Yes ☐ No | ☐ Yes ☑ No | ☐ Yes ☑ No | ☐ Yes ☑ No |

RELATED INFORMATION (CHECK ALL THAT APPLY OR N/A)

| DEATH AND CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY |
|---|---|---|
| ☑ N/A | ☐ N/A<br>1. INMATE | ☐ N/A<br>1. BATTERY ON INMATE<br><br>Other Desc: |

| SERIOUS INJURY | INMATE WEAPONS | TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|---|
| ☐ N/A<br>1. INMATE | ☑ N/A | ☑ N/A |
| ESCAPES | | |
| ☑ N/A | | |

| CONTROLLED SUBSTANCE | WEIGHT/ In Grams | PROGRAM STATUS | EXCEPTIONAL ACTIVITY |
|---|---|---|---|
| ☑ N/A | | ☑ N/A | ☑ N/A |
| | | | EXTRACTION:<br>☑ N/A |

BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES)

On Wednesday, January 19, 2011, at approximately 0717 hours, Inmate Wheeler E-82064, and Inmate Yepiz K-36836, were observed fighting by Facility G-1 Housing Unit staff. Staff utilized the use of O.C. Pepper Spray and the Monadnock (MEB) to stop the fight. Confidential Information later received revealed this incident was a "Battery on an Inmate Wheeler resulting in Serious Bodily Injury."

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID# | BADGE # |
|---|---|---|---|
| J. RIVERO | CORRECTIONAL LIEUTENANT | | 46559 |

| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE | DATE |
|---|---|---|---|
| | | 7004 | 1/19/2011 |

| NAME OF WARDEN / AOD (PRINT/ SIGN) | TITLE | DATE |
|---|---|---|
| V. RAMIREZ | FACILITY CAPTAIN | |

STATE OF CALIFORNIA      DEPARTMENT OF CORRECTIONS AND REHABILITATION
**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (REV. 07/05)    Page _1_ of _1_

| | | | INCIDENT LOG NUMBER |
|---|---|---|---|
| | | | SATF-0007-11-01-0021 |

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| LOFTIS | S███ | ███ | 1-19-11 | 0717 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 271743 | GI-EOP FL#1 | 17 YR. 5 MO. | 1-19-11 | GI-B-SECTION |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| S/S | 0630/1430 | BATTERY on an Inmate resulting in SBI. FIGHTING RESULTING IN THE USE OF FORCE | 3005(d1) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|
| ☐ PRIMARY | (S) S. LOFTIS        (S) YEPIZ  K36836 |
| ☒ RESPONDER | (S) A. MURRIETA       (S) WHEELER  E82064 |
| ☐ WITNESS | (S) R. LOWDER |
| ☐ VICTIM | |
| ☐ CAMERA | |

| FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | | | CHEMICAL AGENTS USED BY YOU |
|---|---|---|---|---|
| | NO: | NO: | TYPE: | TYPE: |
| ☐ WEAPON | | | | |
| ☐ PHYSICAL | ☐ MINI 14 | ☐ 37m | | ☐ OC |
| ☐ CHEMICAL | ☐ 9 MM | ☐ 40 MM | | ☐ CN |
| ☒ NONE | ☐ .38 CAL | ☐ L8 | | ☐ CS |
| FORCE OBSERVED | ☐ SHOTGUN | ☐ 40 MULTI | | ☐ OTHER: |
| BY YOU | | ☐ HFWRS | | |
| ☐ WEAPON | ☒ N/A | ☐ BATON | | ☒ N/A |

| ☐ PHYSICAL | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ CHEMICAL | ☒ N/A | ☒ N/A | | |
| ☐ NONE | | | ☐ Yes | ☐ Yes |
| EVIDENCE COLLECTED BY YOU | | | ☒ No | ☒ No |

| ☐ Yes | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☒ No | | | ☐ BODILY ☒ N/A | ☐ Yes |
| REPORTING STAFF INJURED | | | ☐ UNKNOWN | ☒ No |
| ☐ Yes | ☒ N/A | ☒ N/A | ☐ OTHER | |
| ☒ No | | | | |

NARRATIVE:

ON JANUARY 19, 2011 AT APPROXIMATELY 0717 HOURS, WHILE I WAS PERFORMING MY DUTIES AS FGBI-EOP FLOOR OFFICER #1 I RESPONDED TO A PERSONAL ALARM IN GI-B-SECTION DAYROOM. INMATE YEPIZ K36836 GI-132L WAS LAYING ON HIS BACK WITH INMATE WHEELER E-82064 GI-2462 STANDING BESIDE HIM. CORRECTIONAL OFFICERS R. LOWDER AND A. MURRIETA WERE STANDING APPROXIMATELY TEN FEET FROM THEM YELLING GET DOWN. WHEELER KICKED YEPIZ ON THE RIGHT SIDE OF HIS BODY WITH HIS RIGHT FOOT. LOWDER SPRAYED WHEELER IN THE CHEST AND FACIAL AREA'S AND ORDERED HIM TO GET DOWN, WHEELER TURNED AND SWUNG HIS RIGHT FIST TOWARD LOWDER AND MISSED. AS I APPROACHED WHEELER FROM BEHIND LOWDER AND MURRIETA BEGAN SPRAYING WHEELER IN THE CHEST AND FACIAL AREA'S WITH O.C. PEPPER SPRAY. I WAS HIT IN THE CHEST AND FACIAL AREA BY THE EXCESS O.C. PEPPER SPRAY IMPARING MY VISION. I EXITED THE SECTION FOR DECONTAMINATION USING COOL RUNNING WATER.

page 139

| ☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1 | | | | |
|---|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # 47530 | | DATE 1-19-11 |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED 1/27/11 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☒ YES ☐ NO | DATE 1/20/11 |

STATE OF CALIFORNIA                                                       DEPARTMENT OF CORRECTIONS AND REHABILITATION
CRIME / INCIDENT REPORT
PART C2- REVIEW NOTICE
CDCR 837-C2 (Rev. 07/05)                                                                          PAGE __1__ OF __1__

| REPORTING EMPLOYEE NAME (PRINT/TYPE) | | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|---|
| LAST:  LOFTIS | FIRST:  S | MI:  R | SATF-0007-11-01-0021 | 01/19/11 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

[X] Prepare a CDCR 837-C1 Supplement report clarifying the issues listed below:

[ ] Prepare a CDCR 837-C1 Supplement report providing additional information regarding the issues listed below:

[ ] Prepare a CDCR 837-A1 Supplement report clarifying the issues listed below:

[ ] Prepare a CDCR 837-A1 Supplement report to ammend the information regarding the issues listed below:

DUE BY: _____01/21/11_____          RETURN TO: __SGT. J. JOHNSON__

1) How far away was Inmate Wheeler E82064 when he turned and swung his right fist toward Officer Lowder and missed.[2]

[ ] CHECK IF CONTINUED ON ADDITIONAL PART C2

| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| J. JOHNSON | SGT. | | 01/20/11 |

Distribution:  Original: Incident Package    Canary: Reporting Employee    Pink: Reviewing Supervisor

CRIME / INCIDENT REPORT
PART C1-REVIEW NOTICE
C DCR 837-C1 (Rev. 07/05)

| | |
|---|---|
| Page _2_ of _2_ | INCIDENT LOG NUMBER |
| | SATF-0007-11-01-0021 |

NAME: LAST
LOFTIS

FIRST

MI

TYPE OF INFORMATION

☐ CONTINUATION OF REPORT   ☒ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

1) INMATE WHEELER E82064 WAS APPROXIMATELY TWO FEET FROM
CORRECTIONAL R. LOWDER WHEN HE SWUNG HIS RIGHT FIST TOWARD
LOWDER.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| | 4/0 | 47530 | | 1-20-11 |

| NAME AND TITLE OF REVIEWER (PRINT, SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| J. Johnson | 1/20/11 | ☒ Yes ☐ No | ☒ Yes ☐ No | 1/20/11 |

Distribution:   Original: Incident Package   Canary: Reporting Employee   Pink: Reviewing Supervisor

page 141

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDCR 837-C (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE _1_ OF _2_

INCIDENT LOG NUMBER
SATF-CCII-11-01-0021

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| Muerista | M | | 1-19-11 | 0717 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 271704 | G1 Floor 2 | 16 YR. 4 MO. | 1-19-11 | G-1 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | N/A |
|---|---|---|---|---|
| F/S | 0630-1430 | Battery on an Inmate Resulting in Use of Force | 3005 (d) | |

**YOUR ROLE** — WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) — INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)

- [x] PRIMARY — Londer (S) — Wheeler (S)
- [ ] RESPONDER — Duck (S) — Yepiz (S)
- [ ] WITNESS
- [ ] VICTIM
- [ ] CAMERA

**FORCE USED BY YOU**
- [ ] WEAPON
- [ ] PHYSICAL
- [x] CHEMICAL
- [ ] NONE

**WEAPONS AND SHOTS FIRED BY YOU**
- [ ] MINI-14  NO:___
- [ ] 9 MM ___
- [ ] 38 CAL ___
- [ ] SHOTGUN ___
- [ ] 37MM  NO:___
- [ ] 40 MM ___
- [ ] L8 ___
- [ ] 40 MULTI ___
- [ ] HFWRS
- [ ] BATON

**CHEMICAL AGENTS USE BY YOU** TYPE:
- [x] OC
- [ ] CN
- [ ] CS
- [ ] OTHER: ___
- [ ] N/A

**FORCE OBSERVED BY YOU**
- [x] WEAPON
- [ ] PHYSICAL
- [x] CHEMICAL
- [ ] NONE
- [x] N/A

**EVIDENCE COLLECTED BY YOU**
- [ ] YES
- [x] NO
- [x] N/A

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|
| [x] N/A | [x] N/A | [ ] YES [x] NO | [ ] YES [x] NO |

**REPORTING STAFF INJURED**
- [ ] YES
- [x] NO
- [x] N/A

| DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|
| | [x] N/A | [ ] BODILY [x] N/A [ ] UNKNOWN [ ] OTHER: | [ ] YES [x] NO |

**NARRATIVE:**

On January 20, 2011 at approximately 0717 while performing my duties as G-1 Floor officer #2 I saw inmate Wheeler E82664 G1-246L strike inmate Yepiz K36896 G-1 132L in his back with his right fist as Yepiz was walking into "B" section. I activated my personal alarm and ordered them to get down in a prone position. Yepiz proned out near the television. Wheeler continued to strike by kicking Yepiz in the right side of his body as he was getting down. I ordered Wheeler several times to get down but to no avail. Correctional Officer B. Londer used his O.C. pepper spray striking Wheeler in this side of the face then approximately six feet away with negative results. I cannot remember what side of the face. I sprayed Wheeler in the facial area with my O.C. pepper spray with negative results.

- [ ] CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | DATE |
|---|---|---|---|
| | C/O | 48986 | 1-19-11 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| J. Johnson / G Johnson 565 | 1/20/11 | [x] YES [ ] NO | [ ] YES [ ] NO | 1/20/11 |

Distribution   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
CRIME / INCIDENT REPORT
PART C1-REVIEW NOTICE
CDCR 837-C1 (Rev. 07/05)

| | INCIDENT LOG NUMBER |
|---|---|
| Page __2__ of __2__ | SATF-0C07-11-01-0021 |

| NAME: LAST | FIRST | MI |
|---|---|---|
| Murrietta | A | N/A |

TYPE OF INFORMATION

[✓] CONTINUATION OF REPORT     [ ] CLARIFICATION OF REPORT          [ ] ADDITIONAL INFORMATION

WHEELER CONTINUED TO DESCEND MY C/OFFICER TO
GET DOWN. WHEELER THEN USED TOWARDS LOCATED WITH
HIS RIGHT FIST, RESULTED CORRECTIONAL OFFICER
T2. DUCK RESPONDED TO THE AREA AND ORDERED WHEELER
TO GET DOWN. WITH HER ME B IN THE EXPANDED
PISTON, DUCK STRUCK WHEELER IN THE RIGHT UPPER
THIGH AREA WITH A REVERSE STRIKE, LOWDER STRUCK
WHEELER IN THE RIGHT THIGH AREA TWICE WITH HIS
M.E.B. BUT I DON'T REMEMBER IF IT WAS A FOWARD
AND REVERSE STRIKES OR TWO FRWARD STRIKES,
WHEELER COMPLIED WITH STAFFS ORDERS TO GET DOWN
IN A PRONE POSITION, I HANDCUFF YEP.2 AND
ESCORTED HIM TO THE OFFICERS STATION. WHEELER
WAS PLACED IN "B" SECTION RIGHT LOWER SHOWER
FOR DECCONTAMINATION. WHEELER WAS ESCORTED TO
FACILITY "A" PROGRAM OFFICE.

[ ] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | | DATE |
|---|---|---|---|---|---|
| | C/O | 48456 | | | 1-19-11 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED---- | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | 1/29/11 | [✓]Yes [ ]No | [✓]Yes [ ]No | 1/29/11 |

Distribution: Original Incident Package   Canary: Reporting Employee   Pink: Reviewing Supervisor

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C2- REVIEW NOTICE**
CDCR 837-C2 (Rev. 07/05)

PAGE __1__ OF __1__

| REPORTING EMPLOYEE NAME (PRINT/TYPE) | | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|---|
| LAST: MURRIETA | FIRST: A | MI. N/A | SATF-0007-11-01-0021 | 01/19/11 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

[X] Prepare a CDCR 837-C1 Supplement report clarifying the issues listed below.

[ ] Prepare a CDCR 837-C1 Supplement report providing additional information regarding the issues listed below:

[ ] Prepare a CDCR 837-A1 Supplement report clarifying the issues listed below:

[ ] Prepare a CDCR 837-A1 Supplement report to ammend the information regarding the issues listed below:

DUE BY: _____01/23/11_____          RETURN TO: __SGT. J. JOHNSON__

1) Before Inmate Wheeler hit Inmate Yepiz in the back, did you hear them arguing to each other?

2) When Wheeler turned towards Lowder with a right fist clenched, did Wheeler say anything, did he make a bladed stance towards Lowder, and what was the distance between Wheeler and Lowder?

3) Did Lowder order Wheeler to prone out before and between strikes?

[ ] CHECK IF CONTINUED ON ADDITIONAL PART C2

| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| J. JOHNSON | SGT. | | 01/23/11 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

CRIME / INCIDENT REPORT
PART C1- SUPPLEMENT
CDCR 837-C1 (Rev. 07/05)

PAGE _1_ OF _1_

INCIDENT LOG NUMBER
DATE/LOG# - 11 - 01 - 0013 1

NAME: LAST        FIRST        MI

_Munoz, TA_        _E_

TYPE OF INFORMATION:

[ ] CONTINUATION OF REPORT        [X] CLARIFICATION OF REPORT        [ ] ADDITIONAL INFORMATION

NARRATIVE:

1) YES

2) NO, I CANNOT HEAR WHETHER SAY ANYTHING, I DON'T
REMEMBER IF HE MADE A BLADED STANCE TOWARDS LOCKER
BECAUSE I WAS FOCUS ON YOUR DISTANCE BETWEEN LOCKER
AND WHEELER WAS 5 FEET.

3) YES AND SO DID I

[ ] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | | DATE |
|---|---|---|---|---|---|
| | C/O | 48986 | | | 1-24-11 |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | | DATE |
| Johnson Sgt | 1/24/11 | [X] YES [ ] NO | [ ] YES [X] NO | | 1/24/11 |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

PAGE 145

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C – STAFF REPORT
CDCR 837-C (REV. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page ___ of _2_

INCIDENT LOG NUMBER: SATF-(-007-11-01-0021

| NAME - LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| Patrick | | | 01/19/11 | 0717 hrs |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 271770 | C/O Floater | 2 C YR  2  MO | 1/20/11 | Fac C bldg 3 C-B Dayrm |

| RDO'S | DAYS / HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | NA |
|---|---|---|---|---|
| S/S/M | 1400-1400bd | BATTERY on Inmate w/ Force Resulting in SBI | 3005 (d)(1) | |

YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES)

| ☐ PRIMARY | Murrieta (s) | Wheeler (v) |
| ☐ RESPONDER | Lowder (s) | |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | CHEMICAL AGENTS USED BY YOU |
|---|---|---|

| | NO: | | NO: | TYPE: | | TYPE: |
|---|---|---|---|---|---|---|
| ☒ WEAPON | | | | | | |
| ☐ PHYSICAL | ☐ MINI 14 | ☐ 37m | | | ☐ OC | |
| ☐ CHEMICAL | ☐ 9 MM | ☐ 40 MM | | | ☐ CN | |
| ☐ NONE | ☐ 38 CAL | ☐ L8 | | | ☐ CS | |
| FORCE OBSERVED BY YOU | ☐ SHOTGUN | ☐ 40 MULTI | | | ☐ OTHER: | |
| | | ☐ HFWRS | | | | |
| ☐ WEAPON | ☒ N/A | ☐ BATON | | | ☒ N/A | |
| ☐ PHYSICAL | EVIDENCE DESCRIPTION | | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
| ☒ CHEMICAL | ☒ N/A | | ☒ N/A | | ☐ Yes | ☐ Yes |
| ☐ NONE | | | | | ☒ No | ☐ No |

| EVIDENCE COLLECTED BY YOU | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ Yes | | | ☐ BODILY   ☒ N/A | ☐ Yes |
| ☒ No | | | ☐ UNKNOWN | |
| REPORTING STAFF INJURED | | | ☐ OTHER | ☒ No |
| ☐ Yes | ☒ N/A | ☒ N/A | | |
| ☒ No | | | | |

NARRATIVE:

On Wednesday, January 19, 2011 at approximately 0717 hrs, while observing "C" bld "C" Section inmates return from morning med., I heard "C" bld alarm sound. I heard officers yell, "get down." I ordered "C" Section inmates to "get down," and responded to the incident. As I proceeded to the rotunda, I heard staff yelling, "get down" in "B" Section, I proceeded to "B" Section. In "B" Section, I observed C/o Murrieta and C/o Lowder ordering I/M Wheeler E82064 to "Get Down." (I also observed that I/M Wheeler was bleeding from the mouth.) C/o Murrieta and C/o Lowder pointed their O.C. Pepper Spray Towards I/M Wheeler face and sprayed. The O.C. Pepper Spray Hit I/M Wheeler in the face area, and myself in the glasses, right eye and face, as I responded to the incident with I/M Wheeler back to me. I/M Wheeler was not affected by the O.C. Pepper Spray. I ordered I/M Wheeler to "get

page 146

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | DATE |
|---|---|---|---|
| | C/o | 44752 | 20/19/11 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| J. J. Johnson  Sgt | 1/21/11 | ☐ YES ☒ NO | ☒ YES ☐ NO | 1/21/11 |

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C1-REVIEW NOTICE
C DCR 837-C1 (Rev. 07/05)

ARTMENT OF CORRECTIONS AND REHABILITATION

| Page 2 of 2 | INCIDENT LOG NUMBER SATF - 0007 - 11 - 01 - 0021 |

| NAME: LAST DUCK | FIRST D███ | MI ███ |

TYPE OF INFORMATION

[X] CONTINUATION OF REPORT     [ ] CLARIFICATION OF REPORT     [ ] ADDITIONAL INFORMATION

down." I used a power draw to extend my MEB. I/M Wheeler refused to get down mouthing something to C/o Murrieta and C/o Lowder and stepping back with his right leg into an aggressive stance. I used a reverse power strike to the back of I/M Wheeler right upper thigh, striking him one time with the extended portion of the MEB, my target area was the back of the right upper thigh. I/M Wheeler got down. Sgt. Staub and other staff responded to the incident. C/o Hughes relieved me from the incident so that I could decontaminate my right eye which was sprayed closed, and my face area. I decontaminate and reported to my supervisors, Sgt. Staub and Lt. Rivera the force I used and what I observed

[ ] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

page 147

| SIGNATURE OF REPORTING STAFF | TITLE C/o | BADGE # 44752 | ID# ███ | DATE 01/19/11 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) J. Johnson / ████ SGt | DATE RECEIVED 1/21/11 | APPROVED [ ] Yes [X] No | CLARIFICATION NEEDED [X] Yes [ ] No | DATE 1/21/11 |

Distribution:   Original Incident Package   Canary Reporting Employee   Pink Reviewing Supervisor

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C2- REVIEW NOTICE
CDCR 837-C2 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE __1__ OF __1__

| REPORTING EMPLOYEE NAME (PRINT/TYPE) | | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|---|
| LAST: DUCK . | FIRST: | MI: | SATF-0007-11-01-0021 | 01/19/11 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

[X] Prepare a CDCR 837-C1 Supplement report clarifying the issues listed below.

[ ] Prepare a CDCR 837-C1 Supplement report providing additional information regarding the issues listed below.

[ ] Prepare a CDCR 837-A1 Supplement report clarifying the issues listed below.

[ ] Prepare a CDCR 837-A1 Supplement report to ammend the information regarding the issues listed below.

DUE BY: __01/21/11__          RETURN TO: _SGT. J. JOHNSON_

1) You utilized acronyms for the following: C/O, SGT., LT., I/M, O.C., and M.E.B.  Please clarify the proper meaning of these acronyms.

2) You stated officers Murrieta and Lowder sprayed O.C. Pepper Spray in the face of Inmate Wheeler, and you were sprayed in the facial area.  Where were you standing in relation with the officers and Inmate Wheeler?

3) Did you use a reverse power strike or a reverse strike to the back on Inmate Wheeler's right upper thigh?

4) Did you use a power draw to extend your M.E.B., use a draw to the extended position pointed to the floor, or a draw to the extended position to the shoulder?

5) Did you see Inmate Wheeler Swing his right arm with a fist at Officer R. Lowder?

6) What do you mean when Inmate Wheeler mouthed something to Officers Murrieta and Lowder?

page 148

[ ] CHECK IF CONTINUED ON ADDITIONAL PART C2

| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| J. JOHNSON | SGT. | | 01/20/11 |

Distribution:   Original: Incident Package      Canary: Reporting Employee      Pink: Reviewing Supervisor

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION
CRIME / INCIDENT REPORT
PART C1-REVIEW NOTICE
CDCR 837-C1 (Rev. 07/05)

Page ___1___ of ___1___

INCIDENT LOG NUMBER
SATF-C007-11-01-002

NAME: LAST  Duck
FIRST ▮▮▮▮
MI ▮▮

TYPE OF INFORMATION

☐ CONTINUATION OF REPORT   ☒ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

1. C/o-Correctional Officer, Sgt.-Sergeant, Lt.-Lieutenant, I/M-Inmate, O.C.-Oleoresin Capsicum, and MEB-Monadnock

2. I was standing (responded) behind (the Inmate Wheeler back) Inmate Wheeler's right side. Correctional officer Murrieta and Correctional officer Lowder were facing me in front of Inmate Wheeler.

3. I used a reverse strike to the back of Inmate Wheeler's right upper thigh.

4. I used an open to the ground draw to extend my monadnock.

5. I did not see Inmate Wheeler swing his right arm with a fist at Officer R. Lowder

6. Inmate Wheeler moved his mouth, said some words, but I could not hear the words that came from his mouth.—

page 149

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

SIGNATURE OF REPORTING STAFF

TITLE  C/o

BADGE #  44752

ID # ▮▮▮▮▮

DATE  02/02/11

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)  J. Johnson

DATE RECEIVED  2/3/11

APPROVED  ☐ Yes ☐ No

CLARIFICATION NEEDED  ☐ Yes ☒ No

DATE  2/3/11

Distribution:   Original: Incident Package   Canary: Reporting Employee   Pink: Reviewing Supervisor

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C- STAFF REPORT
CDCR 837-C (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE __1__ OF __1__

INCIDENT LOG NUMBER
SATF - COO7-11-01- 0021

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| Estes | R | | 1 19 11 | 0717 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 272702 | G SoF | 7 YR. 3 MO. | 1 19 11 | G Yard Bldg #1 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | ☐ N/A |
|---|---|---|---|---|
| S/S | 0630/1430 | Battery on Inmate Resulting in use of Force, Fighting Resulting in the use of Force | 3005(c) 3005(d)(1) | |

YOUR ROLE

☐ PRIMARY
☒ RESPONDER
☐ WITNESS
☐ VICTIM
☐ CAMERA

WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)
S/o T. Hill
c/o A. Murrieta
c/o F. Herrera
%o R. Lowder

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)
Yepiz K-36836 (S)
Wheelen E-82064 (S)

FORCE USED BY YOU
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

FORCE OBSERVED BY YOU
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

WEAPONS AND SHOTS FIRED BY YOU

| | NO: | | NO: | TYPE: |
|---|---|---|---|---|
| ☐ MINI-14 | | ☐ 37MM | | |
| ☐ 9 MM | | ☐ 40 MM | | |
| ☐ 38 CAL | | ☐ L8 | | |
| ☐ SHOTGUN | | ☐ 40 MULTI | | |
| | | ☐ HFWRS | | |
| ☒ N/A | | ☐ BATON | | |

CHEMICAL AGENTS USE BY YOU

TYPE:
☐ OC
☐ CN
☐ CS
☐ OTHER: _____
☒ N/A

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES | | | ☐ YES | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☒ NO | ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES | | | ☐ BODILY    ☒ N/A | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☐ UNKNOWN | ☒ NO |
| | | | ☐ OTHER: ___ | |

NARRATIVE:

On January 19, 2011 at Approximately 0717 hours while performing my duties as facility G SoF as I was conducting the morning meal release an Alarm was activated in housing Unit G1. I responded to Housing Unit G1 B section. I observed Officer R. Lowder standing in the dayroom in B section in which appeared to be obviously contaminated with O.C pepper spray. I relieved Officer Lowder so he could decontaminated. I was relieved by responding staff. I went to the rotunda Area were Officer A. Murrieta was with Inmate Yepiz (K36836 G1-132L). I took over the escort and escorted Yepiz to facility G Medical Clinic to be Medical evaluated. At completion of Officer T. Hill search of the Holding Cell, I Placed Yepiz in Holding cell #1. I conducted a unclothed body search on Yepiz. At Approximately 0935 I was called to escort Inmate Wheeler (E-82064 G1-246) to TTA for further Medical evaluation. Myself and Officer F. Herrera escorted Wheeler to TTA from facility G. Wheeler was sent out to an Outside Hospital (Mercy Hospital) via Transportation Team.

page 156

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | DATE |
|---|---|---|---|
| c/o | c/o | 47692 | 1 19 11 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED. | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| J. Johnson / J. Johnson | 1/20/11 | ☐ YES  ☒ NO | ☒ YES  ☐ NO | 1/20/11 |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C2- REVIEW NOTICE
CDCR 837-C2 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE __1__ OF __1__

| REPORTING EMPLOYEE NAME (PRINT/TYPE) | | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|---|
| LAST: ESTES | FIRST: K | MI: | SATF-0007-11-01-0021 | 01/19/11 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

[X] Prepare a CDCR 837-C1 Supplement report clarifying the issues listed below:

[ ] Prepare a CDCR 837-C1 Supplement report providing additional information regarding the issues listed below:

[ ] Prepare a CDCR 837-A1 Supplement report clarifying the issues listed below:

[ ] Prepare a CDCR 837-A1 Supplement report to ammend the information regarding the issues listed below:

DUE BY: _____ 01/24/11 _____          RETURN TO: __SGT. J. JOHNSON__

1) When you entered building G1, B section, you stated it was obviously contaminated with O.C. Pepper Spray. What was contaminated with O.C. Pepper Spray?

2) What did Officer Lowder decontaminate?

3) What was the results of Officer T. Hill's search of the holding cell?

4) What was your results of the unclothed body search of Inmate Yepiz?

5) Did you or anybody else decontaminate Inmate Yepiz?

page 151

[ ] CHECK IF CONTINUED ON ADDITIONAL PART C2

| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| J. JOHNSON | SGT. | | 01/24/11 |

Distribution:   Original: Incident Package    Canary: Reporting Employee    Pink: Reviewing Supervisor

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

PAGE _1_ OF _1_

INCIDENT LOG NUMBER
SATF ·0007 -11- 01- 2021

| NAME: LAST | FIRST | M1 |
|---|---|---|
| Estes | K. | |

TYPE OF INFORMATION:

☐ CONTINUATION OF REPORT   ☒ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

NARRATIVE:

Question #1   Correctional Officer R. Lowder

Question #2   Himself Correctional Officer R. Lowder

Question #3   Negetive

Question #4   Negetive

Question #5   No. He claimed he only got CDCR3020-1 on his Jacket and refused documentation.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

page 152

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| C/... | C/O | 47692 | | 1/24/11 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| V. Johnson | 1/24/11 | ☒ YES ☐ NO ☐ YES | ☒ NO | 1/24/11 |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

STATE OF CALIFORNIA
DEPARTMENT — CORRECTIONS AND REHABILITATION

CRIME / INCIDENT REPORT
PART C – STAFF REPORT
CDCR 837-C (REV. 07/05)

Page 1 of 1

INCIDENT LOG NUMBER
SATF-OOO7-11-01-0021

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| HUGHES | A | | 1/19/11 | 0717 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 271153 | EOP Escort #2 | 5 Yr | 1/19/11 | BLDG G B Section |

| RDO'S | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION/RULE | N/A |
|---|---|---|---|---|
| Sun | 0630-1030 | BATTERY on inmate Resulting in SBI | First Responder per use of Force per JJ | 3005 (a) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☐ PRIMARY | Murrieta (S) | Yepiz K3/8836 (S) |
| ☒ RESPONDER | Lowder (S) | Wheeler E82064 (S) |
| ☐ WITNESS | Duck (O) | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | CHEMICAL AGENTS USED BY YOU

| | NO: | | NO: | TYPE: | | | TYPE: |
|---|---|---|---|---|---|---|---|
| ☐ WEAPON | | | | | | | |
| ☐ PHYSICAL | ☐ MINI 14 | ☐ 37m | | | ☐ OC | | |
| ☐ CHEMICAL | ☐ 9 MM | ☐ 40 MM | | | ☐ CN | | |
| ☒ NONE | ☐ .38 CAL | ☐ L8 | | | ☐ CS | | |
| | ☐ SHOTGUN | ☐ 40 MULTI | | | ☐ OTHER: | | |
| FORCE OBSERVED BY YOU | | ☐ HFWRS | | | | | |
| ☐ WEAPON | ☒ N/A | ☐ BATON | | | ☒ N/A | | |

| FORCE OBSERVED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ PHYSICAL | | | | |
| ☐ CHEMICAL | ☒ N/A | ☒ N/A | | |
| ☒ NONE | | | ☐ Yes | ☐ Yes |
| EVIDENCE COLLECTED BY YOU | | | ☒ No | ☒ No |

| | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ Yes | | | ☐ BODILY ☒ N/A | ☐ Yes |
| ☒ No | | | ☐ UNKNOWN | |
| REPORTING STAFF INJURED | | | ☐ OTHER | ☒ No |
| ☐ Yes | ☒ N/A | ☒ N/A | | |
| ☒ No | | | | |

NARRATIVE:

On 1/19/2011 at approximately 0717, while assigned to facility G as EOP Escort #2, I responded from G Lining to building G1 B-Section to a personal alarm. Upon arriving into B-Section, I observed several inmates in the prone position. I was informed by C/O A. Murrieta that inmates Yepiz K36836 G1-132L and Wheeler E82064, G1-246L were involved in a physical altercation. I was instructed to escort inmate Wheeler to the shower for decontamination of O.C. pepper spray. An unclothed body search was performed, inmate Wheeler was then placed in cuffs and escorted to facility G program office and placed in Cage #1 for a medical evaluation.

page 153

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # 552-71 | DATE 1/19/2011 |
|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) J. Johnson | DATE RECEIVED 1/21/11 | APPROVED ☒ YES ☐ NO    CLARIFICATION NEEDED ☒ YES ☐ NO | DATE 1/21/11 |

STATE OF CALIFORNIA                          DEPARTMENT OF CORRECTIONS AND REHABILITATION
CRIME / INCIDENT REPORT
PART C – STAFF REPORT
CDCR 837-C (REV. 07/05)          Page  1  of  1

| NAME: LAST | FIRST | MI | INCIDENT LOG NUMBER |
|---|---|---|---|
| HERRERA | F | | SATF-0007-11-01-0021 |

| | | | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| | | | 1-19-11 | 0717 |

| POST # | POSITION | YEARS OF SERVICE | | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|---|
| 272704 | G-YARD 1 | 25 YR. | 4 MO. | 1-19-11 | G-YARD BLDG #1 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | ☐ N/A |
|---|---|---|---|---|
| 5/5 | 0630-1430 | BATTERY on Inmate Resulting in S.B.I. fighting resulting in the use of force JJ | 3005(d) | |

YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)

| YOUR ROLE | | |
|---|---|---|
| ☐ PRIMARY | S) HUGHES (R.) | S) WHEELER E-82064 |
| ☒ RESPONDER | S) ESTES (R.) | |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | | | | CHEMICAL AGENTS USED BY YOU |
|---|---|---|---|---|---|
| | | NO: | NO: | TYPE: | TYPE: |
| ☐ WEAPON | | | | | |
| ☐ PHYSICAL | ☐ MINI 14 | ☐ 37m | | ☐ OC | |
| ☐ CHEMICAL | ☐ 9 MM | ☐ 40 MM | | ☐ CN | |
| ☒ NONE | ☐ .38 CAL | ☐ LB | | ☐ CS | |
| FORCE OBSERVED BY YOU | ☐ SHOTGUN | ☐ 40 MULTI | | ☐ OTHER: | |
| | | ☐ HFWRS | | | |
| ☐ WEAPON | ☒ N/A | ☐ BATON | | ☒ N/A | |
| ☐ PHYSICAL | EVIDENCE DESCRIPTION | | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
| ☐ CHEMICAL | ☒ N/A | | ☒ N/A | | |
| ☒ NONE | | | | ☐ Yes | ☐ Yes |
| EVIDENCE COLLECTED BY YOU | | | | ☒ No | ☒ No |

| | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|---|
| ☐ Yes | | | ☐ BODILY | ☒ N/A | ☐ Yes |
| ☒ No | | | ☐ UNKNOWN | | |
| REPORTING STAFF INJURED | | | ☐ OTHER | | ☒ No |
| ☐ Yes | ☒ N/A | ☒ N/A | | | |
| ☒ No | | | | | |

NARRATIVE:

ON JANUARY 19, 2011, AT APPROXIMATELY 0717 HRS., I RESPONDED
TO AN ALARM ACTIVATION IN G-1, AND ASSISTED S/ HUGHES IN
ESCORTING I/M WHEELER E-82064 TO THE G- PROGRAM OFFICE, I SEARCHED
HOLDING CELL #1, AND PERFORMED A CLOTHED BODY SEARCH ON
I/M WHEELER PRIOR TO PLACING HIM IN THE HOLDING CELL, WHILE IN
THE HOLDING CELL I THEN DID AN UNCLOTHED BODY SEARCH ON HIM.
AT 0935 HRS S/ ESTES AND I, ESCORTED I/M WHEELER TO CTC/TTA
FOR FURTHER MEDICAL EVALUATION, I/M WHEELER WAS THEN
SENT OUT TO MEDICAL TO MERCY HOSPITAL FOR A JAW BONE FRACTURE
AT APPROXIMATELY 1230 HRS.

page 154

| ☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1 | | | | |
|---|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | | DATE |
| S. Herrera | C | 31175 / 2114919 | | 1-19-11 |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
| J. Johnson / Johnson CW | 1/20/11 | ☐ YES ☒ NO | ☒ YES ☐ NO | 1/20/11 |

STATE OF CALIFORNIA                                                                          DEPARTMEN. CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C – STAFF REPORT
CDCR 837-C (REV. 07/05)

| | | Page 1 of 1 | INCIDENT LOG NUMBER SATF-0007-11-01-0021 |
|---|---|---|---|

| NAME: LAST GARCIA | FIRST | MI | DATE OF INCIDENT 1/19/2011 | TIME OF INCIDENT 0717 |
|---|---|---|---|---|
| | | N/A | | |

| POST # N/A | POSITION CTC-CNA | YEARS OF SERVICE 0 YR. 6 MO. | DATE OF REPORT 1/24/2011 | LOCATION OF INCIDENT G1-B-Section Dayroom |
|---|---|---|---|---|

| RDO's | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| Th/F | | Battery on Inmate Resulting in SBI with UOF | 3005 (D) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☐ PRIMARY | S-Rivero | S-Wheeler |
| ☐ RESPONDER | | |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☒ CAMERA | | |

| FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | | | | CHEMICAL AGENTS USED BY YOU | |
|---|---|---|---|---|---|---|
| | | NO: | NO: | TYPE: | | TYPE: |
| ☐ WEAPON | | | | | | |
| ☐ PHYSICAL | ☐ MINI 14 | ☐ 37m | | | ☐ DC | |
| ☐ CHEMICAL | ☐ 9 MM | ☐ 40 MM | | | ☐ CN | |
| ☒ NONE | ☐ .38 CAL | ☐ L8 | | | ☐ CS | |
| FORCE OBSERVED BY YOU | ☐ SHOTGUN | ☐ 40 MULTI | | | ☐ OTHER: | |
| | | ☐ HFWRS | | | | |
| ☐ WEAPON | ☒ N/A | ☐ BATON | | | ☐ N/A | |

| FORCE OBSERVED BY YOU | | | |
|---|---|---|---|
| ☐ PHYSICAL | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD / PPE |
| ☐ CHEMICAL | ☐ N/A | ☐ N/A | |
| ☒ NONE | | | ☐ Yes ☐ Yes |
| EVIDENCE COLLECTED BY YOU | 1 Sony DVD Camera | Placed in sub-evidence locker #2 | ☒ No ☒ No |

| ☐ Yes | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☒ No | | | ☐ BODILY ☒ N/A | ☐ Yes |
| REPORTING STAFF INJURED | | | ☐ UNKNOWN | |
| | | | ☐ OTHER | ☒ No |
| ☐ Yes ☒ No | ☒ N/A | ☒ N/A | | |

NARRATIVE:

On January, 24, 2011, at approximately 1200 hours, I assisted in a video interview on Inmate Wheeler E82064, due to him making allegations of staff using excessive force during an incident that happened on January 19, 2011, on Facility 'G'. Inmate Wheeler alleges he was struck in the head with a baton by officers during the incident. After the interview, I relinquished control of the Sony DVD Camera to Lieutenant J. Rivero. Rivero placed the camera in Investigative Services Unit (I.S.U.) sub-evidence locker #2. This concludes my report.

This report was solely written and prepared by author.

*page 155*

| ☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1 | | | | |
|---|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | TITLE SRN II | BADGE # N/A | | DATE 2/08/11 |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) Sgt. J. Johnson | DATE RECEIVED 1/25/11 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 1/25/11 |

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (REV. 07/05)

Page 1 of 1

| INCIDENT LOG NUMBER |
|---|
| SATF-0007-11-01-0021 |

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| RIVERO | J_____ | N/A | 1-19-2011 | 0717 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 270212 | Fac G Prog Lt. | 17 YR. 11 MO. | 1/24/2011 | G1-B-Section Dayroom |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| F/S | 0630-1430 | Battery on Inmate Resulting in SBI with Use of Force | 3005 (d) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|
| ☐ PRIMARY | S-Garcia ... S-Wheeler |
| ☐ RESPONDER | |
| ☐ WITNESS | |
| ☐ VICTIM | |
| ☒ CAMERA | |

| FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | | | | CHEMICAL AGENTS USED BY YOU | |
|---|---|---|---|---|---|---|
| | NO: | | NO: | TYPE: | | TYPE: |
| ☐ WEAPON | | | | | | |
| ☐ PHYSICAL | ☐ MINI 14 | ☐ 37m | | | ☐ OC | |
| ☐ CHEMICAL | ☐ 9 MM | ☐ 40 MM | | | ☐ CN | |
| ☒ NONE | ☐ .38 CAL | ☐ L8 | | | ☐ CS | |
| FORCE OBSERVED BY YOU | ☐ SHOTGUN | ☐ 40 MULTI | | | ☐ OTHER: | |
| | | ☐ HFWRS | | | | |
| ☐ WEAPON | ☒ N/A | ☐ BATON | | | ☒ N/A | |

| ☐ PHYSICAL | EVIDENCE DESCRIPTION | | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
|---|---|---|---|---|---|---|
| ☐ CHEMICAL | ☐ N/A | | ☐ N/A | | | |
| ☒ NONE | | | | | ☐ Yes | ☐ Yes |
| EVIDENCE COLLECTED BY YOU | 1 Sony DVD Camera | | Sub-evidence locker #2 | | ☒ No | ☒ No |

| ☒ Yes | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ No | | | ☐ BODILY ☒ N/A | ☐ Yes |
| REPORTING STAFF INJURED | | | ☐ UNKNOWN | |
| | | | ☐ OTHER _____ | ☒ No |
| ☒ Yes | ☒ N/A | ☒ N/A | | |
| ☐ No | | | | |

NARRATIVE:

On January 24, 2011, at approximately 1200 hours, I conducted a video interview on Inmate Wheeler, E-82064, due to him making allegations of staff using excessive force during an incident that happened on 1-19-2011, on Facility G. Inmate Wheeler alleges he was struck in the head with a baton by officers during the incident. After the video interview was completed, I retrieved the Sony DVD Camera from Certified Nurses Assistance (C.N.A) T. Garcia, and I placed the camera in Investigative Services Unit (I.S.U.) sub-evidence locker #2. This concludes my report.

This report was solely written and prepared by author.

*page 156*

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | DATE |
|---|---|---|---|
| | Lt. | 46559 | 1/27/11 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☑ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE |
|---|---|---|---|---|
| | 2/1/11 | | | |

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date: 02/16/11

To: V. RAMIREZ
Facility Captain
Facility G

Subject: **INCIDENT REPORT #SATF-0007-11-01-0021**

After reviewing Incident Report **#SATF-0007-11-01-0021, ASSAULT ON A PEACE OFFICER**, it was determined this case will not be referred to the Kings County District Attorney's Office. Based on the Memorandum of Understanding, Referral Agreement between California Department of Corrections and Rehabilitation and Kings County, this incident does not meet the requirements specified as the report does not contain documentation indicating one or more of the following elements: *(1) there is significant observable injury, or (2) by nature of the assault the potential for serious injury is clear.*

The inmate(s) identified as suspect(s) was/ were:

| NAME | CDC # |
|---|---|
| **WHEELER** | **E82064** |

Please handle this case administratively.

R. TOLSON
Custody Captain
California Substance Abuse Treatment Facility and State Prison at Corcoran

Original: C-File
cc: Investigative Services Unit
Facility Captain
Facility Lieutenant
Facility CCII

page 157

R.V.R. typed by: (JW on 01/19/2011)
804 SENT TO RECORDS BY:_____ ON:_____
Case 1:12-cv-00861-DAD-GSA Document 1-1 Filed 05/25/12 Page 93 of 121

STATE OF CALIFORNIA
RULES VIOLATION REPORT

DEPARTMENT OF CORRECTIONS & REHABILITATION

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| E-82064 | WHEELER | | 11/23/2040 | CSATF/SP | G1-246L | 5-11-01-074 |
| VIOLATED RULE NO(S). | SPECIFIC ACTS | | | LOCATION | DATE | TIME |
| 3005(d)(1) | ASSAULT ON A PEACE OFFICER | | | 'G1' | 01/19/2011 | 0717 |

CIRCUMSTANCES

On Wednesday, January 19, 2011, at approximately 0717 hours, while performing my duties as Facility 'G', building 1, E.O.P. Officer, I was standing at the building 'G1' officers podium monitoring inmates returning from the morning meal release. During that period I observed inmates WHEELER, E-82064, G1-246L, and YEPIZ, K-36836, G1-132L, enter the building and walk towards their dorms in 'B' section. As they entered 'B' section, both inmates stopped just inside the 'B' section slider, turned to face each other and started arguing loudly. I left my position and walked towards 'B' section to break up the argument. As I entered 'B' section both inmates WHEELER and YEPIZ began to fight, striking each other with clenched fists. I yelled for both inmates to 'Get down!' (assumed to prone position) but both inmates ignored my order and continued to fight. Correctional Officer A. Murrieta joined came to my location, activated his personal alarm and also ordered both inmates to 'Get down!'. Inmates WHEELER and YEPIZ continued to ignore orders to prone out and continued to fight as they moved towards the center of the 'B' section dayroom. I reached down with my right hand and withdrew my MK-9 O.C. spray from my belt holster while continuing to give loud verbal commands for both inmates to 'Stop fighting and get down!' Both inmates WHEELER and YEPIZ continued to ignore all orders to stop and 'get down!'. I administered a short one (1) second burst of O.C. to both inmates WHEELER and YEPIZ' facial areas. Inmate YEPIZ immediately went down on the floor on his back with his arms above his head.

CONTINUED ON R.V.R. PARTY 'C'

Bizarre, unusual, or uncharacteristic behavior: No    M.H.S.D.S. Level: E.O.P.    T.A.B.E. Score (Reading): 9.9

| REPORTING EMPLOYEE (Typed NAME and Signature) | | DATE | | ASSIGNMENT | RDO'S |
|---|---|---|---|---|---|
| ► R. A. Lowder, Correctional Officer | | 1--20 --11 | | E.O.P. Floor Off. #2 | Sa/ Su |
| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | | |
| ► R. Staub, Program Sergeant | 1-21-11 | DATE: N/A | LOC.: N/A | | |
| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed name and Signature) | HEARING REFERRED TO | |
| ☐ ADMINISTRATIVE ☒ SERIOUS | Conduct/Serious | 2/19/11 | ► P. D. Vera, Facility 'G' Captain | ☐ HO  ☒ SHO ☐ SC ☐ FC | |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
| ☒ CDC 115 | ► B. Phillips | 2-2-11 | 1330 | ☒ SUMMARY OF DISCIPLINARY PROCEDURES /INMATE RIGHTS (115/115A BACK PAGE) | | |
| ☒ INCIDENT REPORT LOG NUMBER: | BY: (STAFF SIGNATURE) | DATE | TIME | BY: (STAFF SIGNATURE) | DATE | TIME |
| SATF-0007-11-01-0021 | ► B. Phillips | 2-2-11 | | USX MH | | |
| | | | | ► B. Phillips MSX | 2-2-11 | 1330 |
| HEARING | | | Form A | B. Phillips | RE ISSUE DUE TO GRUFI.SSIFICATION | 2-22-11 | 1330 |

Effective Communication Concerns

☒ REVIEWED THE DISABILITY EFFECTIVE COMMUNICATION (DEC) SYSTEM AND/OR CENTRAL FILE.
☐ No disabilities or issues requiring equally effective communication.(If checked, no further completion of EC forms is necessary)

☐ Hearing
☐ Vision
☐ Speech
☐ Learning Disability
☐ Developmental Disability (ensure confidentiality)

☐ TABE 4.0 or lower, "S" TABE is 9.9
☐ C.C.C.M.S. (Check only if true and referred for MH evaluation)
☐ M.H.C.B.
☒ E.O.P.
☐ Foreign Language Speaking

Primary method of communication: (Refer to DEC/Central File and query inmate)_____
Alternate method of communication: (Refer to DEC/Central File and query inmate)_____
NOTE: The primary method of communication shall normally be used to ensure effective communication in due process proceeding.
If unable to use primary means of communication, staff shall explain the circumstances necessitating this.

(HEARING CONTINUED ON PART C)

REFERRED TO ☐ CLASSIFICATION  ☐ BPT/NAEA

| ACTION BY: (Typed name) | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| E. Soto | | ► | 3-14-11 | 19:20 |
| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE | |
| ► P. D. Vera, Facility 'G' Captain | 3/2/11 | ► J. Reynoso, Associate Warden | 3/22/11 | |
| | BY: (STAFF'S SIGNATURE) | | DATE | TIME |
| ☒ COPY OF CDC GIVEN INMATE AFTER HEARING | ► | | 3-28-11 | 0830 |

CDC 115 (7/88)

page 158

| STATE OF CALIFORNIA | | | | DEPARTMENT OF CORRECTIONS | |
|---|---|---|---|---|---|
| **RULES VIOLATION REPORT – PART C** | | | | | PG 1 OF 1 |
| CDC NUMBER **E-82064** | INMATE'S NAME **WHEELER** | LOG NUMBER $G$ 11·01·01 ~SATF-0007-11-01-0021~ | | INSTITUTION **CSATF/SP** | TODAY'S DATE **01/19/2011** |
| ☒ SUPPLEMENTAL | CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER |

On 01/19/11 while performing my duties as G-1 Floor Officer #2, I saw Inmate WHEELER, E-82064, G1-246L, hit Inmate YEPIZ, K-36836, G1-132L, in his back with a fist as Inmate YEPIZ was walking into 'B' Section. I activated my personal alarm and said, "Get Down." Inmate YEPIZ proned out near the TV. Inmate WHEELER continued to hit Inmate YEPIZ, punching him and when Inmate YEPIZ was getting down into the prone position, Inmate WHEELER kicked him in the side of his body. I told Inmate WHEELER several times to "get down". Correctional Officer Lowder, using his Oleoresin Capsicum Pepper Spray, sprayed Inmate WHEELER hitting him on the side of the face with negative results. I sprayed Inmate WHEELER's face with my Oleoresin Capsicum Pepper Spray with negative results. Inmate WHEELER continued not to listen to my orders to "get down". Inmate WHEELER turned towards officer Lowder with his right fist clenched. Correctional Officer Duck responded to the area and ordered Inmate WHEELER to "get down" and hit him with her M.E.B. Expandable Baton to his thigh with negative results. Officer Lowder, using his M.E.B. Expandable Baton, hit Inmate WHEELER twice in the thigh at which time Inmate WHEELER got down into the prone position. I handcuffed Inmate YEPIZ and escorted him to the Officer's Station. Correctional Officer Estes took over the escort and took Inmate YEPIZ to the Program Office. Inmate WHEELER was escorted to the shower in 'B' Section and taken to 'G' Program by Correctional Officer Hughes. Inmate WHEELER is aware of this report.

page 159

| SIGNATURE OF WRITER A. Murrieta, Correctional Officer | | DATE SIGNED |
|---|---|---|
| GIVEN BY: (staff signature) B. PHILLIPS | DATE SIGNED 2·2·11 | TIME SIGNED 1332 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5.95)

| CDC NUMBER | INMATE'S NAME | | | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|---|---|
| E-82064 | WHEELER | | | G-11-01-014 | CSATF/SP | 03/04/2011 |
| ☐ SUPPLEMENTAL | ☑ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | | ☑ HEARING | ☐ I.E. REPORT | ☐ OTHER |

(JW)

Inmates Plea: **NOT GUILTY**                    SHO's Findings: **GUILTY**

**HEARING PREPARATION:** This hearing was convened on Friday, March 4, 2011, at approximately 1230 hours in the 'E1' Ad/Seg Lieutenants' Office for adjudication of R.V.R. # **G-11-01-014**, when Lieutenant E. Popper introduced himself to Inmate WHEELER, E-82064. A review of the Disability Effective Communication (D.E.C.) system and/or central file, as well as querying Inmate WHEELER, reflected that Inmate WHEELER had the following effective communication issues: **E.O.P.** As a result the following assistance was provided to ensure effective communication: Reading documents to Inmate WHEELER; Simple English spoken slowly and clearly; Correctional Officer B. Phillips assigned and present as Staff Assistant (S.A.). The following method(s) were used to determine communication was effective: Inmate WHEELER reiterated in his own words what was explained; provided appropriate, substantive responses to questions asked; asked appropriate questions regarding the information provided. Inmate WHEELER stated that he was in good health. Inmate WHEELER then requested postponement of the hearing as Correctional Officer Phillips is a close co-worker of the officers who were involved in the incident and further believed that Officer Phillips influenced the Captain to change the classification of his 115 from a division 'D' to a division 'B'. The SHO **denied** Inmate WHEELER's request as Officer Phillips has nothing to do with the classification actions of a R.V.R. The disciplinary charge of **'ASSAULT ON A PEACE OFFICER'** was reviewed with Inmate WHEELER and he stated that he understood the charge. As Inmate WHEELER is in the Mental Health Services Delivery System at the **E.O.P.** level of care as noted in the R.V.R., a mental health assessment request was completed and submitted to his assigned clinician and returned for review and consideration by the SHO.

**DUE PROCESS:** Inmate WHEELER received all non-confidential reports considered as evidence at least 24 hours prior to this hearing. The disciplinary was served on the defendant within 15 days of discovery. On 02/02/2011 Inmate WHEELER requested the **hearing** be **postponed** pending outcome of the District Attorney (D.A.) referral. On 02/16/2011 notice was received from Custody Captain R. Tolson that the incident had **not** been referred based on the memorandum of understanding with the King's County District Attorney's office. The hearing was held within 30 days of receipt of notification. There are **no** due process issues. As Inmate WHEELER is effective communications inhibited as noted in the **HEARING PREPARATION** section above, the following assistance was provided at time of issue of the initial copy of the R.V.R. and again at time Inmate WHEELER received his copy of non-confidential reports: Reading documents to Inmate WHEELER; Simple English spoken slowly and clearly; Staff Assistant present and utilized. The following method(s) were used to determine communication was effective: Inmate WHEELER reiterated in his own words what was explained; provided appropriate, substantive responses to questions asked; asked appropriate questions regarding the information provided.

**DISTRICT ATTORNEY REFERRAL (D.A.):** This case was **not** referred to the D.A. for criminal prosecution.

**CONFIDENTIAL INFORMATION:** There is **no** confidential information used in the adjudication of the Rule Violation Report.

**PHOTOGRAPH / VIDEOTAPE EVIDENCE:** There is **no** video or photographic evidence available concerning this R.V.R.

**INMATE REQUESTED EVIDENCE:** Inmate WHEELER did **not** request any evidence be available at the hearing.

page 160

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | E. Popper, Correctional/Lieutenant (SHO) | | 3-11-11 |
| ☒ COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED | TIME SIGNED |
| | | 3-28-11 | 0830 |

| CDC NUMBER | INMATE'S NAME | | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|---|
| E-82064 | WHEELER | | G-11-01-014 | CSATF/SP | 03/04/2011 |
| ☐ SUPPLEMENTAL | ☑ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☑ HEARING | ☐ I.E. REPORT | ☐ OTHER |

**STAFF ASSISTANT (S.A.):** Inmate WHEELER **was** referred for a mental health evaluation. A CDC-115MH, Mental Health Assessment was completed and this was reviewed by the Chief Disciplinary Officer (C.D.O.) or designee. There are **no** mental health factors that would cause the inmate to have trouble in understanding the disciplinary process, representing his interest in the hearing, or indicate the need for a S.A. Assignment of a S.A. was considered **necessary** by the C.D.O. or designee, as Inmate WHEELER is **E.O.P.** The accused has a T.A.B.E. score **above 4.0**. Correctional Officer Phillips was assigned and met with Inmate WHEELER more than 24 hours before the hearing. Officer Phillips advised the subject of his due process rights and the hearing procedures. Inmate WHEELER informed this SHO that he changed his mind and no longer would except C/O Phillips as his Staff Assistant at this hearing stating, "I don't want Phillips because he is bias towards me because he influenced the Captain to change this 115 from a division D to a B. I/M Wheeler further stated, "I am requesting postponement because C/O Phillips is a close co-worker of the officers who were involved in the incident. **C/O Phillips** was present at the hearing and reiterated Inmate WHEELER's due process rights and the hearing procedures to him. Inmate WHEELER acknowledged understanding his due process rights and the hearing procedures and stated he was ready to proceed with the hearing. As Inmate WHEELER is effective communications inhibited as noted in the HEARING PREPARATION section above, the following assistance was provided at time of interview and during the hearing: Reading documents to Inmate WHEELER; Simple English spoken slowly and clearly; Staff Assistant present and utilized. The following method(s) were used to determine communication was effective: Inmate WHEELER reiterated in his own words what was explained; provided appropriate, substantive responses to questions asked; asked appropriate questions regarding the information provided.

**INVESTIGATIVE EMPLOYEE (I.E.):** Inmate WHEELER **did** meet the requirement for assignment of an I.E. Correctional Officer R. Fernandez was assigned as I.E. and completed the I.E. investigation. (Officer Phillips was present as S.A. during the issuing of the CDC-115A and during the completion of the I.E. investigation.) The SHO has reviewed the I.E. report in its entirety. As Inmate WHEELER is effective communications inhibited as noted in the HEARING PREPARATION section above, the following assistance was provided at time of interview and during the hearing: Reading documents to Inmate WHEELER; Simple English spoken slowly and clearly; Staff Assistant present and utilized. The following method(s) were used to determine communication was effective: Inmate WHEELER reiterated in his own words what was explained; provided appropriate, substantive responses to questions asked; asked appropriate questions regarding the information provided.

**INMATE'S PLEA AND STATEMENT:** Inmate WHEELER is charged with **'ASSAULT ON A PEACE OFFICER'**, which is in violation of CCR **3005(d)(1)**. The circumstance of the violation was read to Inmate WHEELER. He acknowledged understanding the charge filed against him. Inmate WHEELER then pled **'NOT GUILTY'** to the charge and elected to submit the following hand written statement: "I do not believe my due process is being met. I requested numerous witnesses, evidence and documents at the CDC-115 hearing that are not listed on the I.E. report to rebut this fiction based 115." Inmate WHEELER, E-82064, further states as follows: "On 1/19/11, I/M YEPIZ, K-36836, ran up from right back of my right side, hitting me in the right side jaw, upon turning to face I/M YEPIZ, I/M YEPIZ hit my left bottom jaw and ran away, (I received two jaw fractures), when I was returning to G yard bldg 1 at 705 am after breakfast. This was outside 30 – 35 ft. from front entrance of bldg 1. No officers present. I was talking, walking with I/M SIEBERT, V-61109, I/M MITCHELL, P-19158, I/M ESQUER, F-34001, 30 – 40 other inmates in area. I/M YEPIZ ran towards building 1 and into building 1. I chased I/M YEPIZ in and to B cluster dayroom. As I passed the G1-control, I observed L.P.T. (Licensed Psych. Tech.) Evins, C/O D. Duck and C/O A. Murrieta, at back part, talking, there was no other officer at control. While I was running after I/M YEPIZ, at the doorway / past, of B cluster dayroom, I reached out with my right hand trying to grab I/M YEPIZ' jacket collar, without success. Inside B cluster dayroom, I/M YEPIZ stopped at wooden officer's desk (no officers present), turned right from desk and ran under TV next to stairs, dorm 6, stopped, got down on his belly facing me. (I had my back to B cluster door, so I could not see behind me. All I/M YEPIZ and I were doing in B cluster was running!) At that time, I

| | | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|---|
| | | E. Popper, Correctional Lieutenant (SHO) | | 3-11-11 |
| ☒ COPY OF CDC-115-C GIVEN TO INMATE | | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED | TIME SIGNED |
| | | | 3-28-11 | 0830 |

CDC 115-C (5/95)

page 161

| CDC NUMBER | INMATE'S NAME | | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|---|
| E-82064 | WHEELER | | G-11-01-014 | CSATF/SP | 03/04/2011 |
| ☐ SUPPLEMENTAL | ☑ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☑ HEARING | ☐ I.E. REPORT | ☐ OTHER |

felt another presence to my left back-side, I was already in a fearful panic attack (PTSD), keeping my eye on I/M YEPIZ, who I felt was a danger to my life; believing it was another attacker, I turned my head to my left to see a black hand with a piece of metal, strike me at a downward angle in the middle of my left outside, tip missing my knee cap by a half inch. C/O Duck shouted Get Down, while striking me a second time on my left thigh, inches above first strike (downward angle). I turned right as C/O Duck was at my left-back side – inches away. I became aware of yet another presence, C/O A. Murrieta, he shot pepper spray into my face, also from somewhere to my far left, I was hit with pepper spray – left side of head, just as C/O Duck, black female officer, struck me a third time (baton) on my left thigh upper – downward. I turned more right towards C/O A. Murrieta, who had been about 2 -4 o'clock position 6 feet – 7 feet away from C/O Duck and myself the whole time. I was sprayed again by C/O Murrieta, blind, unable to breath, I dropped my head, just as I felt C/O Duck strike me a forth time, baton tip hitting me on the top back of my head. C/O Duck was hit with pepper spray as I dropped my head on leg right side face. I was now facing towards dorm 32 – stairs. I laid down on the floor. I/M YEPIZ was escorted out / all officers had left. I was helped up by C/O Hughes, who lead me to the handicapped shower – where I washed my face and then C/O Hughes handcuffed me. I/M PIERSON, AA-7997, G1-237L, was laying proned out 20 feet from this incident the whole time. Plus some 20 other inmates in B cluster. Clinician Trevino was at control. C/O Murrieta sprayed every officer in the incident because C/O Duck and I was facing towards him. I was facing towards dorm 6, stairs, looking at back of B cluster. All officers would have to come from behind C/O Duck and myself as we were near the TV wall of B cluster. WHEELER, E-82064, further states: I was not fighting with I/M YEPIZ, K-36836, in B cluster dayroom, I/M YEPIZ was running from me. I/M YEPIZ had no injuries, marks, redden bruises or visible signs of any injuries at all. I/M YEPIZ was never sprayed with pepper spray. I never hit I/M YEPIZ with my fist. I was 6 – 8 feet away from I/M YEPIZ when YEPIZ laid down on his belly facing me by TV. I did not kick I /M YEPIZ with my foot at any time. YEPIZ' medical exam proves this. I never saw R. Lowder, C/O during this incident. I do not even know what he looks like. C/O R. Lowder never strike me with a baton. I did not say one word to a C/O Lowder at all. My jaw was fractured twice, my mouth was full of heavy blood, having a panic attack, I could not talk. I never raised my arms and I never took a step towards any officer. I did not at no time attempt to strike R. A. Lowder, C/O. It's a fact that I am a left - handed person. It was C/O A. Murrieta that was standing between C/O Duck, myself and I/M YEPIZ who was 8 feet from myself and C/O Duck. C/O Duck states she never seen me raise my right arm or swing at C/O R. Lowder. C/O Murrieta did not see me swing or take a stance and they never heard me say one word."

As Inmate WHEELER is effective communications inhibited as noted in the HEARING PREPARATION section above, the following assistance was provided at time of the hearing: Reading documents to Inmate WHEELER; Simple English spoken slowly and clearly; Staff Assistant present and utilized. The following method(s) were used to determine communication was effective: Inmate WHEELER reiterated in his own words what was explained; provided appropriate, substantive responses to questions asked; asked appropriate questions regarding the information provided.

WITNESSES: Inmate WHEELER was given an opportunity to request witnesses being present at the hearing when he was issued his copy of the CDC-115A. At that time Inmate WHEELER declined requesting any witnesses as noted on the CDC-115A. However, at the time of the I.E. interview Inmate WHEELER requested the following witnesses be interviewed as indicated in the I.E. report: Inmate SIEBERT, V-61109; Inmate MITCHELL, P-19158; Inmate ESQUER, F-34001; Inmate PERKINS, K-54420; Inmate PIERSON, AA-7997; Inmate SULLIVAN, F-28331. The interviews were completed as noted:

During the I.E. interview Inmate SIEBERT was asked the following question:
Q.    "Did you see YEPIZ hit WHEELER?"
A.    "Yes, outside the building."

| | | | | |
|---|---|---|---|---|
| | SIGNATURE OF WRITER E. Popper, Correctional Lieutenant (SHO) | | | DATE SIGNED |
| ☒ COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | | DATE SIGNED 3-28-11 | TIME SIGNED 0830 |

page 16

| CDC NUMBER | INMATE'S NAME | | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|---|
| E-82064 | WHEELER | | G-11-01-014 | CSATF/SP | 03/04/2011 |
| ☐ SUPPLEMENTAL | ☑ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☑ HEARING | ☐ I.E. REPORT | ☐ OTHER |

During the I.E. interview Inmate MITCHELL was asked the following question:

Q.   "Did you see YEPIZ hit WHEELER?"
A.   "Yes."

During the I.E. interview Inmate ESQUER was asked the following question:
Q.   "Did you see YEPIZ hit WHEELER?"
A.   "Yes."

During the I.E. interview Inmate PERKINS was asked the following question:
Q.   "Did you see WHEELER hit YEPIZ?"
A.   "I wasn't there."

During the I.E. interview Inmate PIERSON was asked the following question:
Q.   "Did you see WHEELER hit YEPIZ?"
A.   "I saw them running around the dayroom."

During the I.E. interview Inmate SULLIVAN was asked the following question:
Q.   "Did you see WHEELER hit YEPIZ?"
A.   "I didn't see anything."

At the time of the hearing Inmate WHEELER elected to request in a hand written note the following inmate witnesses to the hearing: Inmate SIEBERT, V-61109; Inmate MITCHELL, P-19158; Inmate ESQUER, F-34001; Inmate PERKINS, K-54420; Inmate PIERSON, AA-7997; Inmate SULLIVAN, F-28331.   The SHO elected to deny Inmate SIEBERT, Inmate MITCHELL, Inmate ESQUER, Inmate PERKINS, Inmate PIERSON, and Inmate SULLIVAN as witnesses to the hearing.   The requested witness was denied per section 3315(e)(1) as the witness would have no relevant or additional information not already submitted during the I.E. investigation as noted above.

In addition, at the time of the hearing Inmate WHEELER elected to present a hand written note requesting the following staff witnesses to be present at the hearing: CTC medical J. Del Rosario; Clinician Trevino; A mental health expert in PTSD; Officer D. Duck. I/M Wheeler failed to provide any additional questions to Officer Duck in order to have the officer present as indicated by the IE report. All the inmate witnesses were questioned, none of them had anything pertinent to provide, as well as not being present during the incident.

No witnesses were called to the hearing.

The SHO elected to deny Wheeler's request for witnesses per section 3315(e)(1) as the witness would have no relevant or additional information not already submitted during the I.E. investigation as noted above.

**FINDINGS:** A CDC-115MH Mental Health Assessment **has** been completed.  The assessment provided by clinician indicates there are **no** mental health issues the SHO should consider in the FINDING phase of this hearing.  The SHO finds Inmate WHEELER **GUILTY** of the division 'B(2)' offense of **'ASSAULT ON A PEACE OFFICER'**.  The finding is based on the following evidence:

1.  The contents of the Rule Violation Report in which the Reporting Employee, Correctional Officer R. A. Lowder, stated that on Wednesday, January 19, 2011, at approximately 0717 hours, he observed Inmate YEPIZ, K-36836, and Inmate WHEELER, E-82064, arguing just inside the 'B' section slider.  As he approached them to break up the argument they began striking each other with clenched fists.  Officer Lowder yelled for them to 'Get down' but both inmates ignored the order.  Correctional Officer Murrieta

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | E. Popper, Correctional Lieutenant (SHO) | 3·1(·1) |
| ☑ COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED | TIME SIGNED |
| | | 3·28-11 | 0830 |

**SHU TERM ASSESSMENT WORKSHEET**

CDC 629-A (Rev 3/96)

| CDC NUMBER | NAME (LAST, FIRST, MI) | INSTITUTION | UNIT |
|---|---|---|---|
| ᵗ ᵈᵒᵍᵃ¹ | ᵂᵒᵗᵗ ᵃᵗ ᵖ ᵗˢᵃᵥₑ | ᶜⁿᵗᶠ | ᶰᵒᵛ (ᶜⁱ) |

**1.  RULE VIOLATION RESULTING IN SHU TERM ASSESSMENT**
(If more than one SHU assessable offense and no SHU term has been established, use most serious as base term and less serious as aggravation.)

Rule No. ___/(a)(1)_ Date Issued ___  Title _f  ss  as  Violence_

b.  Specific Act _Assault on a non-inmate  as an act of  it  as  it  concern in _ injury.
(Must be an offense on SHU Term Assessment Chart.)

c.  List range of months for the offense using
SHU Time Computation Table.....................................  ___ ___ ___
                                                             LOW  EXP  HIGH

d.  Enter "expected" (mid-range) years, months, days of confinement...........................  ___ 6, ___
                                                                                              YR  MO  DAYS

**2.  FACTORS IN MITIGATION AND AGGRAVATION**
(Enter "NONE" for item 2c or indicate amount of time.  Describe factors and document sources.  Use only factors listed in the DOM 62050 or concurrent offenses.)

a.  Mitigating Factors.  Time subtracted for mitigations.................-___ ___ ___
    1).                                                                YR  MO  DAYS
    2)
    3)

b.  Aggravating Factors.  Time added for aggravations..................+___ ___ ___
    1) ___                                                            YR  MO  DAYS
    2)ᵗ⁻
    3)

c.  Total time added or subtracted................................................................=___ ___ ___
                                                                                              YR  MO  DAYS

**3.  TOTAL SHU CONFINEMENT TIME ASSESSED.........................................................**  ___ 6 ___
(Subtract or add time for mitigation or aggravation to expected, item 1d plus or minus 2c)  YR  MO  DAYS

**4.  DATE OF ADMINISTRATIVE SEGREGATION CONFINEMENT/VIOLATION.....**  11  1  19
                                                                      YR  MO  DAY

**5.  MAXIMUM DATE OF RELEASE FROM SHU....................................................**  11  7  17
(Add total time assessed to date of confinement, item 3 plus 4)                          YR  MO  DAY

**6.  MINIMUM SHU CONFINEMENT TIME TO SERVE.........................................**  4  15
(Enter 75% of the total SHU time (item 3) using the SHU Time Computation Table)         YR  MO  DAYS
a.  Date of confinement/violation (item 4)......................................................  11  1  19
                                                                                              YR  MO  DAY

**7.  MINIMUM ELIGIBLE RELEASE DATE (MERD)............................................**  11  6  4
(Add the minimum SHU time to the date of confinement, item 6 plus 6a)                     YR  MO  DAY

**8.  FORFEITURE OF GOOD CONDUCT CREDITS FOR SUBSEQUENT MISCONDUCT**
(Enter "NONE" for item 8a or indicate the amount of time lost and describe and document the misconduct for which credit is being forfeited).  SHU inmates may forfeit up to 45 days of clean conduct credits for each disciplinary infraction that is not serious enough to warrant the assessment of a subsequent or concurrent SHU term.  Such forfeiture may be assessed against credits already earned or future credits.

a.  Time forfeited for CDC 115 - Dated:___ ___  ................................................  ___ ___ ___
    1)                                                                                      YR  MO  DAYS
    2)
b.  ADJUSTED MERD Cannot Exceed MAXIMUM............................................ page '164
(Add the amount of time forfeited to the prior MERD, item 7 plus 8a)              YR  MO  DAY

| NAME AND TITLE OF STAFF COMPUTING TERM | DATE SIGNED | DATE ICC ESTABLISHED TERM |
|---|---|---|
| ___ | ___ | ___ |

DISTRIBUTION:  ORIGINAL - CENTRAL FILE;    YELLOW - INMATE;    PINK - AUDITOR

**TITLE 15**                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    **§ 3268**

**3264. Employee Guests.**

Employees requesting to bring visitors into a facility shall first obtain authorization from the institution head.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. Amendment of section filed 12-19-91 as an emergency; operative 12-19-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-17-92 or emergency language will be repealed by operation of law on the following day.

2. Certificate of Compliance as to 12-19-91 order transmitted to OAL 4-17-92 and filed 6-1-92 (Register 92, No. 24).

**3265. Arts and Crafts Exhibits.**

(a) The public may be permitted to attend displays of inmate-made articles provided:

(1) Facility security shall not be jeopardized.

(2) Adequate facilities and staff are available to control against unauthorized visiting and introduction of contraband.

(3) The activity does not interfere with the normal facility operation.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. Order of Repeal of subsection (b) filed 6-3-85 by OAL pursuant to Government Code section 11349.7, effective thirtieth day thereof (Register 85, No. 26).

2. Amendment of section filed 12-19-91 as an emergency; operative 12-19-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-17-92 or emergency language will be repealed by operation of law on the following day.

3. Certificate of Compliance as to 12-19-91 order transmitted to OAL 4-17-92 and filed 6-1-92 (Register 92, No. 24).

**3266. Inmate Contacts with the Public.**

Inmates shall not initiate any personal contact with the public except as specifically authorized. This does not preclude an inmate's courteous and appropriate response when contact is initiated by a member of the public.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 4570 and 5054, Penal Code.

HISTORY:

1. Renumbering of former section 3072 to new section 3266, including amendment of section heading and text, and new Note filed 10-27-93; operative 11-26-93 (Register 93, No. 44).

**3267. Access of Public Officials to Facilities.**

(a) A public official, except as provided in (b) below, of another governmental department or agency who needs to interview staff or inmates or to conduct an inspection shall request permission of the institution head at least 24 hours before the date and time of their desired arrival, stating the purpose of the proposed visit. Upon their arrival, the official's access shall be subject to the following requirements:

(1) The official shall be required to produce their picture identification and consent to a search.

(2) The official shall be escorted by staff at all times within the facility's security area.

(3) Any equipment required by the official shall be searched and under the control of staff while it is within the facility's security area.

(b) An elected state official's access may be denied only during an emergency with the approval of the Secretary of the California Department of Corrections and Rehabilitation. Access by the

guests or staff of such officials may be denied when they have not been previously approved by the institution head.

(c) In cases of immediate need, and upon notification by the Secretary in writing, any prohibitions regarding access to inmates by public officials, their guests or staff may be suspended to assist in the interest of public understanding of departmental operations and responsibilities.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. New section filed 11-5-92; operative 12-7-92 (Register 92, No. 45).

2. Amendment of subsection (b) and new subsection (c) filed 8-29-2008; operative 9-28-2008 (Register 2008, No. 35).

Article 1.5.  Use of Force and Restraining Devices

**3268. Use of Force.**

The purpose of this Section is to set forth Department of Corrections and Rehabilitation (CDCR) policy governing the use of force. The policy has its foundation in California Penal Code statutes and relevant case decisions.

(a). Definitions.

(1) Reasonable Force:

The force that an objective, trained and competent correctional employee, faced with similar facts and circumstances, would consider necessary, and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order.

(2) Unnecessary Force:

The use of force when none is required or appropriate.

(3) Excessive Force:

The use of more force than is objectively reasonable to accomplish a lawful purpose.

(4) Immediate Use of Force:

The force used to respond without delay to a situation or circumstance that constitutes an imminent threat to security or the safety of persons.

(5) Controlled Use of Force:

The force used in an institution/facility setting, when an inmate's presence or conduct poses a threat to safety or security and the inmate is located in an area that can be controlled or isolated.

(6) Non-Conventional Force:

Force that utilizes techniques or instruments that are not specifically authorized in policy, procedures, or training. Depending on the circumstances, non-conventional force can be necessary and reasonable; it can also be unnecessary or excessive.

(7) Non-Deadly Force:

Any use of force that is not likely to result in death.

(8) Deadly Force:

Any use of force that is likely to result in death. Any discharge of a firearm other than the lawful discharge during weapons qualifications, firearms training, or other legal recreational use of a firearm, is deadly force.

(9) Response Supervisor:

The Response Supervisor is the first line supervisor in an institution/facility responsible for the area where an incident occurs.

(10) Responding Supervisor:

The Responding Supervisor is the first line supervisor responsible for the employee involved in an incident.

(11) Incident Commander:

The Incident Commander is the second line supervisor in an institution/facility responsible for the area where an incident occurs or an allegation of excessive or unnecessary force is received.

(12) First Level Manager:

(2) The Deadly Force Review board (DFRB) is responsible for conducting a full and complete review of all incidents involving a use of deadly force and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

(3) Every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force will be investigated by the DFIT and reviewed by the DFRB.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 196, 835a, 2651, 2652 and 5054 Penal Code; and Section 50, Civil Code.

HISTORY:

1. New section filed 8-19-2010; operative 8-19-2010 pursuant to Government Code section 11343.4 (Register 2010, No. 34).

## Article 1.6.   Inmate Housing

### 3269.   Inmate Housing Assignments.

Inmates shall accept Inmate Housing Assignments (IHAs) as directed by staff. It is the expectation that all inmates double cell, whether being housed in a Reception Center, General Population (GP), an Administrative Segregation Unit (ASU), a Security Housing Unit (SHU), or specialty housing unit. If staff determines an inmate is suitable for double celling, based on the criteria as set forth in this section, the inmate shall accept the housing assignment or be subject to disciplinary action for refusing. IHAs shall be made on the basis of available documentation and individual case factors. Inmates are not entitled to single cell assignment, housing location of choice, or to a cellmate of their choice.

(a) Upon arrival at an institution, facility, or program reception center, a designated custody supervisor shall screen an inmate for an appropriate housing assignment. The screening authority involved in the review and approval of an inmate's housing assignment must evaluate all factors to be considered, including but not limited to:

• Length of sentence.

• Enemies and victimization history.

• Criminal influence demonstrated over other inmates.

• Reason(s) for prior segregation.

• History of "S" suffix determination pursuant to CCR subsection 3371.1(c).

• History of in-cell assaults and/or violence.

• Prison gang or disruptive group affiliation and/or association.

• Nature of commitment offense.

• Documented reports from prior cellmate(s) that the inmate intimidated, threatened, forced, and/or harassed him or her for sex.

• Documentation that the cellmate(s) refused to return to a cell occupied by the inmate because of fear, threats, or abuse perpetrated by the inmate.

• Documentation that the inmate has been the victim of a sexual assault.

• Adjudicated Department Rules Violations Reports (RVR) where the inmate was found guilty as a perpetrator in an act of physical abuse, sexual abuse, sodomy, or other act of force against a cellmate.

(b) The screening authority shall complete a CDCR Form 1882 (rev. 2/07). Initial Housing Review, stating if the inmate is suitable for dorm/cell housing with or without special restrictions. Restrictions are any case factors which may limit the inmate's housing placement options such as, but not limited to:

• Security issues including ASU and SHU placement.

• Request for Protective Custody.

• Medical or mental health issues.

• Integrated Housing Code. Staff shall ensure that the housing policies regarding special category inmates covered under specific litigation remain in place during the housing assignment.

(c) Upon placement in an ASU or SHU, inmates shall be screened for an appropriate cell assignment using the same criteria as inmates being screened for housing in the general population. The reason for ASU or SHU placement shall also be taken into consideration.

Based on available information and the inmate interview, the screening authority shall determine if the inmate is suitable for single or double celled housing, and shall complete a CDC Form 114-A1 (rev. 10/98). Inmate Segregation Profile. Unless approved for single cell assignment, an inmate in ASU or SHU is expected to share a cell with another inmate.

(d) Single cell status shall be considered for those inmates who demonstrate a history of in-cell abuse, significant in-cell violence towards a cell partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate. Staff shall consider the inmate's pattern of behavior, not just an isolated incident. An act of mutual combat in itself does not warrant single cell status. The following factors must be considered when evaluating single-cell status, noting these factors are not exclusive of other considerations:

(1) Predatory behavior is characterized by aggressive, repeated attempts to physically or sexually abuse another inmate.

(2) Documented and verified instances of being a victim of in-cell physical or sexual abuse by another inmate.

(e) Should the screening authority determine that single cell designation is appropriate, the inmate's case factors shall be reviewed by a classification committee for determination of appropriate housing and designation for an "S" suffix. A classification committee may consider whether an inmate with single cell designation has since proven capable of being double-celled.

(f) In cases where single cell status is recommended by clinical staff due to mental health or medical concerns, a classification committee shall make the final determination of an inmate's cell assignment. The classification committee shall consider the clinical recommendations made by the evaluating clinician with assistance from the clinician who participates in the committee and review the inmate's case factors when determining the housing assignment. Single cell status based upon clinical recommendation is usually a temporary short-term measure and must be periodically reviewed, minimally at an inmate's annual review or more frequently at the inmate's/clinician's request.

(g) If an inmate refuses to be housed as determined to be appropriate to this section, the inmate shall be subject to the disciplinary process, with the potential to be housed in alternative and more restrictive housing. Refusal to participate will result in the issuance of a Rules Violation Report (RVR) for Conduct, subsection 3005(c), Refusing to Accept Assigned Housing, for the Specific Act of Willfully Resisting, Delaying, or Obstructing any Peace Officer in the performance of Duty (CCR subsection 3323(f)(6)). Subsequent acts of the above listed offense will result in the issuance of additional disciplinary reports and consideration for placement in more restrictive housing such as an ASU or a SHU.

NOTE: Authority cited: Section 5058, Penal Code. Reference: 5054, Penal Code.

HISTORY:

1. New section filed 3-18-2008 as an emergency; operative 3-18-2008 (Register 2008, No. 12). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-25-2008 or emergency language will be repealed by operation of law on the following day.

(OC), chloroacetophenone (CN), and orthochlorobenzalmalononitrile (CS).

(*l*) Decontamination from Chemical Agents. Any person exposed to a chemical agent shall be afforded an opportunity to decontaminate as soon as practical. If the person refuses to decontaminate, no other action is necessary. If an inmate was exposed in a cell and not removed from the cell where the exposure occurred, in-cell decontamination shall be afforded to the inmate, to include but not be limited to:

(A) Health care staff advising the inmate how to self decontaminate in the cell.

(B) Health care staff monitoring the in-cell inmate at least every 15 minutes for a period not less than 45 minutes.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 196, 835a, 2651, 2652 and 5054, Penal Code; Section 50, Civil Code; *Whitley v. Albers* (1985) 475 U.S. 312, 106 S.Ct. 1078; and *Madrid v. Cate* (U.S.D.C. N.D. Cal. C90-3094 TEH).

HISTORY:

1. New article 1.5 (sections 3268-3268.2) and section filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

2. Editorial correction of History 1 (Register 99, No. 24).

3. Certificate of Compliance as to 4-1-99 order, including amendment of first paragraph, transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

4. Amendment of section and Note filed 8-19-2010; operative 8-19-2010 pursuant to Government Code section 11343.4 (Register 2010, No. 34).

### 3268.1. Reporting and Investigating the Use of Force for Institution/Facility Staff.

(a) Use of Force—Reporting Requirements. Every staff use of force is an incident that shall be reported.

(1) Any employee who uses force or observes a staff use of force shall report it to a supervisor as soon as practical and submit the appropriate documentation; prior to being relieved from duty. In an institution/facility setting the documentation shall be on a CDCR Form 837-A (Rev. 7/05), Crime/Incident Report Part A-Cover Sheet, CDCR Form 837-A1 (Rev. 7/05), Crime/Incident Report Part A1-Supplement, CDCR Form 837-B1 (Rev. 7/05), Crime/Incident Report Part B1-Inmate, CDCR Form 837-B2 (Rev. 7/05), Crime/Incident Report Part B2-Staff, CDCR Form 837-B3 (Rev. 7/05), Crime/Incident Report Part B3-Visitor/Other, CDCR Form 837-C (Rev. 7/05), Crime/Incident Report Part C-Staff Report, CDCR Form 837-C1 (Rev. 7/05), Crime/Incident Report Part C1-Supplement, CDCR Form 837-C2 (Rev. 7/05), Crime/Incident Report Part C2-Review Notice, which are hereby incorporated by reference.

(2) The supervisor shall document his or her review on a CDCR Form 3010 (Rev.6/09), Incident Commander's Review/Critique Use of Force Incidents, which is hereby incorporated by reference, and forward it with the employee's document through the designated chain of command, to the institution head for approval or follow-up action.

(b) Additional Reporting Requirements for Use of Deadly Force.

(1) An employee who intentionally or accidentally uses deadly force, whether on or off duty, shall ensure that a supervisory employee is notified of the incident without delay. This reporting is not required for the lawful discharge of a firearm during weapons qualifications, firearms training, or other legal recreational use of a firearm.

(2) The response supervisor shall ensure that the chain of command is notified and all necessary health and safety, medical and security measures are initiated.

(A) If the incident is in an institution/facility, the response supervisor shall obtain a public safety statement(s) (oral statement) from the staff employing deadly force and shall document the essence of the oral statement in writing and submit it to the incident commander. Providing a public safety statement does not relieve the staff of the responsibility to submit a written report in accordance with 3268.1(a), or within 24 hours after the incident.

(B) For incidents occurring in a community setting, the on-duty supervisor shall ensure local law enforcement is contacted.

(3) The incident commander shall notify the Office of Internal Affairs (OIA) and the Bureau of Independent Review (BIR) as soon as possible, but no later than one hour from the time the incident is discovered, of any use of deadly force and every death or GBI that could have been caused by a staff use of force.

(c) Any employee who observes a use of force that is unnecessary or excessive shall attempt to stop the violation. Any employee who becomes aware of an allegation of unnecessary or excessive use of force, whether it occurs during a reportable incident or not, shall verbally report the allegation to a custody supervisor as soon as possible, followed by the submission of the appropriate documentation.

(d) Video Recording Requirements.

(1) A video recording is required for all Controlled Uses of Force occurrences. A video recording of the inmate is also required following a use of force occurrence resulting in SBI or GBI to the inmate.

(2) A video recording of the inmate shall be made when the inmate has made an allegation of an unnecessary or excessive use of force and shall be documented on a CDCR Form 3013 (Rev. 02/10), Inmate Interview Guidelines and a CDCR Form 3014 (Rev. 6/09). Report of Findings—Inmate Interview, which are hereby incorporated by reference.

(e) Reviewing Use of Force Requirements.

(1) For reported incidents, a good faith effort must be made at all levels of review in order to reach a judgment whether the staff's actions prior to, during, and subsequent to the force used was in compliance with regulations, procedure and applicable law and determine if follow-up action is necessary.

(2) Use of Force levels of review include the following:

(A) Incident Commander Review, CDCR Form 3010 (Rev. 6/09), Incident Commander's Review/Critique Use of Force Incidents.

(B) First Level Manager Review, CDCR Form 3011 (Rev. 6/09), Manager's Review—First Level Use of Force Incidents, which is hereby incorporated by reference.

(C) Second Level Manager Review, CDCR Form 3012 (Rev. 6/09), Manager's Review—Second Level Use of Force Incidents, which is hereby incorporated by reference.

(D) Use of Force Coordinator Review. The Use of Force Coordinator shall normally schedule all logged use of force cases for review within 30 days of their logged occurrence. The Use of Force Coordinator shall document their review on a CDCR Form 3034 (6/09), IERC Allegation Review, and a CDCR Form 3036 (6/09), IERC Critique and Qualitative Evaluation, which are hereby incorporated by reference.

(E) Institutional Executive review Committee (IERC). Normally, the IERC is comprised of the following staff:

1. Institution Head or Chief Deputy Warden, as chairperson and final decision maker,

2. At least one other manager assigned on a rotational basis,

3. In-Service Training Manager,

4. One health care practitioner or clinician, and

5. A Use of Force Coordinator.




6. Other designated supervisors and rank and file staff may also attend, as determined by the Institution Head. A representative of the BIR may also attend and monitor IERC meetings.

7. The IERC shall meet to review its cases on at least a monthly basis, or on a schedule to ensure all cases are reviewed within 30 days. The IERC shall document their review on a CDCR Form 3035 (6/09), IERC Use of Force Review & Further Action Recommendation, which are hereby incorporated by reference.

(F) Department Executive Review Committee (DERC):

(f) Investigating Deadly Force and Any Use of Force that could have caused Death or Great Bodily Injury.

(1) Every use of deadly force (except those meeting the criteria set forth in 3268(a)(20)) and every death or great bodily injury that could have been caused by a staff use of force will be investigated by the Deadly Force Investigation Team (DFIT) and reviewed by the Deadly Force Review Board (DFRB).

(2) DFIT shall conduct criminal and administrative investigations of every death or great bodily injury that could have been caused by a staff use of force and every use of deadly force, except those meeting the criteria set forth in 3268(a)(20), the lawful discharge of a firearm during weapons qualifications or firearms training, or other legal recreational uses of a firearm.

(3) DFRB shall conduct a full and complete review of all incidents involving a use of deadly force (except those meeting the criteria set forth in 3268(a)(20)) and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

(g) Use of Force Joint Use Committee (JUC): The Use of Force JUC shall review and evaluate recommended revisions to the CD-CR's Use of Force Regulations and Procedures. The JUC shall be comprised of the following field staff:

(1) At least one Institution Head, as chairperson,

(2) At least one staff member from each DAI mission based region, at the level of Lieutenant or Captain,

(3) At least one Use of Force Coordinator,

(4) At least three representatives from the California Correctional Peace Officer Association (CCPOA), as designated by the CCPOA.

(5) The Chief of BIR, or designee, and

(6) Others as needed and assigned by the Deputy Director, DAI. The JUC shall meet quarterly as necessary, but not less than annually, to review recommended revisions.

NOTE: Authority cited: Section 5058; Penal Code. Reference: Sections 196, 835a, 2651, 2652 and 5054, Penal Code; Section 50, Civil Code; and *Madrid v. Cate* (U.S.D.C. N.D. Cal. C90-3094 TEH).

HISTORY:

1. New section filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

2. Editorial correction of History 1 (Register 99, No. 24).

3. Certificate of Compliance as to 4-1-99 order, including amendment of subsections (a)(1) and (b)(2), transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

4. Amendment of section heading, section and Note filed 8-19-2010; operative 8-19-2010 pursuant to Government Code section 11343.4 (Register 2010, No. 34).

### 3268.2.   Use of Restraints.

(a) Only state issued restraint gear and equipment that has been authorized by the CDCR for use at the discretion of staff shall be issued/assigned to an employee or carried/used by an employee while on duty. Any use of unauthorized restraint gear or equipment

or use of approved restraint gear or equipment in a manner other than specified in (b) shall require a pre-approval in writing by the Hiring Authority of the institution/facility/unit that is making the request.

(h) Mechanical means of physical restraint may be used only under the following circumstances:

(1) When transporting a person between locations.

(2) When a person's history, present behavior, apparent emotional state, or other conditions present a reasonable likelihood that he or she may become violent or attempt to escape.

(3) When directed by licensed health care clinicians, to prevent a person from attempting suicide or inflicting injury to himself or herself.

(c) Mechanical restraints shall not be:

(1) Used as punishment.

(2) Placed around a person's neck.

(3) Applied in a way likely to cause undue physical discomfort or restrict blood flow or breathing, e.g., hog-tying.

(4) Used to secure a person to a fixed object except, as a temporary emergency measure. However, a person who is being transported shall not be locked in any manner to any part of the transporting vehicle.

(5) Placed on an inmate during labor, including during transport to a hospital, during delivery, and while in recovery after giving birth, unless circumstances exist that require the immediate application of mechanical restraints to avoid the imminent threat of death, escape, or great bodily injury, and only for the period during which such threat exists.

(d) When mechanical restraint is required, handcuffs, alone or attached to a waist chain, will be the means of restraint normally used. However, additional mechanical restraint, including leg irons, additional chains, straight jackets, leather cuffs, or other specialized restraint equipment may be used when the circumstances indicate the need for the level of control that such devices will provide. The unresisted application of authorized restraint equipment is not a use of force.

(e) Use of mechanical restraints on persons confirmed, or suspected by health care staff to be pregnant shall be subject to the following requirements:

(1) No leg restraints or waist chains shall be applied.

(2) If handcuffs are applied, the person's arms shall be brought to the front of her body for application.

(3) When transporting a pregnant inmate off institutional grounds, the application of restraint gear shall be restricted to handcuffs to the front of the inmate only. If the pregnant inmate is in labor, the rules provided in subsection 3268.2(c)(5) shall also be followed.

(f) Use of restraint equipment by direction of licensed health care clinicians shall be fully documented in the medical file of the restrained inmate or parolee.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 196, 835a, 2650, 2651, 2652, 2652.5, 3423, 5007.7 and 5054, Penal Code; and *Madrid v. Cate* (U.S.D.C. N.D. Cal. C90-3094 TEH).

HISTORY:

1. Renumbering of former section 3280 to new section 3268.2, including amendment of section heading, section and Note, filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

2. Editorial correction of History 1 (Register 99, No. 24).

3. Certificate of Compliance as to 4-1-99 order transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

4. New subsections (b)(5) and (d)(1)–(3), subsection relettering and amendment of Note filed 3-6-2008; operative 4-5-2008 (Register 2008, No. 10).

5. Amendment of section and Note filed 8-19-2010; operative 8-19-2010 pursuant to Government Code section 11343.4 (Register 2010, No. 34).

**3268.3. Reporting and Investigating the Use of Force for Field Staff.**

(a) Use of Force-Reporting Requirements. Every staff use of force is an incident that shall be reported.

(1) Any employee who uses force or observes CDCR staff use of force in a community or field setting shall report it to a supervisor as soon as practical and submit the appropriate documentation, prior to being relieved from duty. The documentation shall be on a CDCR Form 1662-A (Rev. 9/09), Field Incident Report Part A-Cover Sheet, CDCR Form 1662-B (Rev. 9/09), Field Incident Report Part B-Summary Information, CDCR Form 1662-C (Rev. 9/09), Field Incident Report Part C-Employee Report, CDCR Form 1662-C1 (Rev. 9/09), Field Incident Report Part C1-Supplement Page, which are hereby incorporated by reference.

(2) Any employee not assigned to an institution/facility who uses force or observes CDCR staff use of force in an institution/facility environment, shall report it to a supervisor as soon as practical and follow up with appropriate documentation as required in section 3268.1(a)(1). A copy of the report shall be provided to the employee's supervisor and the original shall be retained by the institution/facility Incident Commander.

(3) The supervisor shall document his or her review on a CDCR Form 3010-A (Rev. 9/09), Field: Use of Force Incident—Supervisor Review/Critique, which is hereby incorporated by reference, and forward it with the employee's document through the designated chain of command, to the regional parole administrator for approval or follow-up action.

(b) Additional Reporting Requirements for Use of Deadly Force.

(1) An employee who intentionally or accidentally uses deadly force, whether on or off-duty, shall ensure that a supervisory employee is notified of the incident without delay. This reporting is not required for the lawful discharge of a firearm during weapons qualifications, firearms training, or other legal recreational use of a firearm.

(2) A supervisor shall ensure that the chain of command is notified and all necessary health and safety, medical and security measures are initiated.

(A) The responding supervisor shall obtain a public safety statement(s) (oral statement) from the staff employing deadly force and shall document the essence of the oral statement in writing and submit it to the incident commander. Providing a public safety statement does not relieve the staff of the responsibility to submit a written report in accordance with 3268.3(a), or within 24 hours after the incident.

(B) The responding supervisor shall ensure local law enforcement is contacted.

(3) The incident commander or responding supervisor shall notify the Office of Internal Affairs (OIA) and the Bureau of Independent Review (BIR) as soon as possible, but no later than one hour from the time the incident is discovered, of any use of deadly force and every death or GBI that could have been caused by a staff use of force.

(c) Any employee who observes a use of force that is unnecessary or excessive shall attempt to stop the violation. Any employee who becomes aware of an allegation of unnecessary or excessive use of force, shall report the allegation verbally to a supervisor as soon as possible, followed by the submission of the appropriate documentation.

(d) Video Recording Requirements:

(1) A video recording is required for Uses of Force which result in serious bodily injury or great bodily injury, except when video recording is prohibited in a local jail or custody location.

(2) A video recording of a person shall be made when the person has made an allegation of an unnecessary or excessive use of force, except when video recording is prohibited in a local jail or custody location. All allegations shall be documented on a CDCR Form 3013-A (Rev. 02/10), Field: Supervisory Use of Force Interview Guide and a CDCR Form 3014-A (Rev. 9/09), Field: Supervisory Use of Force Interview Findings Report, which are hereby incorporated by reference.

(e) Reviewing Use of Force Requirements.

(1) For reported incidents, a good faith effort must be made at all levels of review in order to reach a judgment whether the staff's actions prior to, during, and subsequent to the force used was in compliance with regulations, procedure and applicable law and determine if follow-up action is necessary.

(2) Use of Force levels of review include the following:

(A) Incident Commander Review, CDCR Form 3010-A (Rev. 9/09), Field: Use of Force Incident—Supervisor Review/Critique.

(B) First Line Manager Review, CDCR Form 3011-A (Rev. 9/09), Field: Use of Force Incident—Manager Review/Critique, which is hereby incorporated by reference.

(C) Second Line Manager Review, CDCR Form 3012-A (Rev. 9/09), Field: Executive Review of Use of Force Critique and Qualitative Evaluation/Analysis, which is hereby incorporated by reference.

(D) Regional Use of Force Coordinator Review. The Use of Force Coordinator shall normally schedule all logged use of force cases for review within 30 days of their logged occurrence. The Regional Use of Force Coordinator shall document their review on a CDCR Form 3034-A (9/09), Field: Executive Review Committee—Use of Force/Misconduct Allegation, and a CDCR Form 3036-A (9/09), Field: Executive Review Committee Critique and Qualitative Evaluation/Analysis, which are hereby incorporated by reference.

(E) Field Executive Review Committee (FERC). Normally, the FERC is comprised of the following staff:

1. Regional Parole Administrator, Chief, or Assistant Secretary as chairperson and final decision maker.

2. At least one other manager,

3. Supervising Regional Training Coordinator,

4. A Use of Force Coordinator.

5. Other designated supervisors and rank and file staff may also attend, as determined by the Regional Parole Administrator. A representative of the BIR may also attend and monitor FERC meetings.

6. The FERC shall meet to review its cases on at least a monthly basis, or on a schedule to ensure all cases are reviewed within 30 days. The FERC shall document their review on a CDCR Form 3035-A (9/09), Field: Executive Review Committee/Further Action Recommendation-Use of Force/Misconduct Allegation, which is hereby incorporated by reference.

(F) Department Executive Review Committee (DERC).

(f) Investigating Deadly Force and Any Use of Force that could have caused Death or Great Bodily Injury

(1) Deadly Force Investigation Team (DFIT). The following instances shall be referred to the DFIT for investigation:

(A) Every use of deadly force; except the lawful discharge of a firearm during weapons qualifications or firearms training, or other legal recreational uses of a firearm.

(B) Every use of force incident that resulted in death.

(C) Every incident resulting in great bodily injury that could have been caused by a staff use of force.

(over)   page 16



§ 3269 DEPARTMENT OF CORRECTIONS AND REHABILITATION TITLE 15

(2) The Deadly Force Review board (DFRB) is responsible for conducting a full and complete review of all incidents involving a use of deadly force and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

(3) Every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force will be investigated by the DFIT and reviewed by the DFRB.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 196, 835a, 2651, 2652 and 5054 Penal Code; and Section 50, Civil Code.

HISTORY:
1. New section filed 8-19-2010; operative 8-19-2010 pursuant to Government Code section 11343.4 (Register 2010, No. 34).

Article 16. Inmate Housing

3269. Inmate Housing Assignments.

Inmates shall accept Inmate Housing Assignments (IHAs) as directed by staff. It is the expectation that all inmates double-cell, whether being housed in a Reception Center, General Population (GP), an Administrative Segregation Unit (ASU), a Security Housing Unit (SHU), or specialty housing unit. If staff determines an inmate is suitable for double-celling, based on the criteria as set forth in this section, the inmate shall accept the housing assignment or be subject to disciplinary action for refusing. IHAs shall be made on the basis of available documentation and individual case factors. Inmates are not entitled to single cell assignment, housing location of choice, or to a cellmate of their choice.

(a) Upon arrival at an institution, facility, or program reception center, a designated custody supervisor shall screen an inmate for an appropriate housing assignment. The screening authority involved in the review and approval of an inmate's housing assignment must evaluate all factors to be considered, including but not limited to:
• Length of sentence.
• Enemies and victimization history.
• Criminal influence demonstrated over other inmates.
• Reason(s) for prior segregation.
• History of "S" suffix determination pursuant to CCR subsection 3371.1(c).
• History of in-cell assaults and/or violence.
• Prison gang or disruptive group affiliation and/or association.
• Nature of commitment offense.
• Documented reports from prior cellmate(s) that the inmate intimidated, threatened, forced, and/or harassed him or her for sex.
• Documentation that the cellmate(s) refused to return to a cell occupied by the inmate because of fear, threats, or abuse perpetrated by the inmate.
• Documentation that the inmate has been the victim of a sexual assault.
• Adjudicated Department Rules Violations Reports (RVR) where the inmate was found guilty as a perpetrator in an act of physical abuse, sexual abuse, sodomy, or other act of force against a cellmate.

(b) The screening authority shall complete a CDCR Form 1882 (rev. 2/07); Initial Housing Review, stating if the inmate is suitable for dorm/cell housing with or without special restrictions. Restrictions are any case factors which may limit the inmate's housing placement options such as, but not limited to:
• Security issues including ASU and SHU placement.
• Request for Protective Custody.
• Medical or mental health issues.

• Integrated Housing Code. Staff shall ensure that the housing policies regarding special category inmates covered under specific litigation remain in place during the housing assignment.

(c) Upon placement in an ASU or SHU, inmates shall be screened for an appropriate cell assignment using the same criteria as inmates being screened for housing in the general population. The reason for ASU or SHU placement shall also be taken into consideration.

Based on available information and the inmate interview, the screening authority shall determine if the inmate is suitable for single or double celled housing; and shall complete a CDC Form 114-A1 (rev. 10/98). Inmate Segregation Profile. Unless approved for single cell assignment, an inmate in ASU or SHU is expected to share a cell with another inmate.

(d) Single cell status shall be considered for those inmates who demonstrate a history of in-cell abuse, significant in-cell violence towards a cell partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate. Staff shall consider the inmate's pattern of behavior, not just an isolated incident. An act of mutual combat in itself does not warrant single cell status. The following factors must be considered when evaluating single cell status, noting these factors are not exclusive of other considerations:
(1) Predatory behavior is characterized by aggressive, repeated attempts to physically or sexually abuse another inmate.
(2) Documented and verified instances of being a victim of in-cell physical or sexual abuse by another inmate.

(e) Should the screening authority determine that single cell designation is appropriate, the inmate's case factors shall be reviewed by a classification committee for determination of appropriate housing and designation for an "S" suffix. A classification committee may consider whether an inmate with single cell designation has since proven capable of being double-celled.

(f) In cases where single cell status is recommended by clinical staff due to mental health or medical concerns, a classification committee shall make the final determination of an inmate's cell assignment. The classification committee shall consider the clinical recommendations made by the evaluating clinician with assistance from the clinician who participates in the committee and review the inmate's case factors when determining the housing assignment. Single cell status based upon clinical recommendation is usually a temporary short-term measure and must be periodically reviewed, minimally at an inmate's annual review or more frequently at the inmate's/clinician's request.

(g) If an inmate refuses to be housed as determined to be appropriate to this section, the inmate shall be subject to the disciplinary process, with the potential to be housed in alternative and more restrictive housing. Refusal to participate will result in the issuance of a Rules Violation Report (RVR) for Conduct, subsection 3005(c), Refusing to Accept Assigned Housing, for the Specific Act of Willfully Resisting, Delaying, or Obstructing any Peace Officer in the performance of Duty, (CCR subsection 3323(f)(6)). Subsequent acts of the above listed offense will result in the issuance of additional disciplinary reports and consideration for placement in more restrictive housing such as an ASU or a SHU.

NOTE: Authority cited: Section 5058, Penal Code. Reference: 5054, Penal Code.

HISTORY:
1. New section filed 3-18-2008 as an emergency; operative 3-18-2008 (Register 2008, No. 12). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-25-2008 or emergency language will be repealed by operation of law on the following day.

ERIC Wheeler
_____ Plaintiff or Petitioner

v.                                          Case Number:

Kathleen Aliceson, WARDEN, SATF
_____ Defendant or Respondent

                                    PROOF OF SERVICE
_____/

I hereby certify that on  April  3  ,  2011  , I served a copy of the
A letter and A
attached  602 Citizen's complaints against 4 Ppu officers — dated -2-n-11.

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said

envelope in the United States Mail at SATF-GI-CORCORAN CA 93212

(List Name and Address of Each
Defendant or Attorney Served)

Kathleen Aliceson              matthew Cates             Kamella Harris
WARDEN                         Cscr Director              Attorney General
P.O. Box 7100                  1515 S Street              P.O. Box 944255
Corcoran CA                    Sacramento, CA             Sacramento, CA
93212-7100                     95814                      94244

I declare under penalty of perjury that the foregoing is true and correct.

Eric Wheeler
(Name of Person Completing Service)

Page 168

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:  MAR 1 8 2011

Group Appeal

In re:   Eric Wheeler, E82064
California Substance Abuse Treatment Facility and
    State Prison at Corcoran
P.O. Box 7100
Corcoran, CA 93212-7100

IAB Case No.: 1012264          Local Log No.: SATF-10-03492

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner D. Artis, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that the California Substance Abuse Treatment Facility (SATF) is cutting staff positions and endangering/violating the safety and security of the institution. The appellant requests that the policy of reducing Facility "G-1" staff on weekends and holidays be reconsidered, and that his housing unit be provided with more staff in order for the Enhanced Outpatient Program (EOP) program to be improved.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant and other listed inmates on this group appeal are being provided with staff coverage and supervision in accordance with departmental policy. The appellant was interviewed on October 4, 2010, regarding this appeal issue. A review of the appellant's appeal concerns revealed that he was told because of the current fiscal crisis, the institution implemented a three percent redirection plan which mandates that custody staff assigned to selected positions through-out the institution are redirected on a rotational basis. The Facility "G" is affected two days each week on Thursdays and Sundays during second watch and one day each week on Tuesdays at third watch. Medical, education, religious services and self help programs continue to operate as normal under this policy. The appellant was told that he will be released to recreation yard every Thursday from 0900 to 1100 hours; however, this is subject to change based upon amendments to the redirection plan, inclement weather and/or institution emergencies. Dialysis staff are being redirected to the appellant's housing unit on weekends and holidays which results in the appellant being afforded his allotted dayroom time. The appellant was informed that Captain P. Vera stated that two additional custody positions will be added to the Facility "G-1" during the next institutional bid process. As such, the appellant's appeal was partially granted at the Second Level of Review (SLR).

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.  FINDINGS:** A thorough examination of the appellant's appeal issues was conducted in conjunction with an examination of the supporting documents provided. The appellant remains dissatisfied with the SLR response arguing that there are no mental health staff assigned to the Facility "G" on weekends and holidays. On February 2, 2011, the examiner contacted the SATF regarding this group appeal issue and Captain P. Vera, reported that the Facility "G-1" is an EOP program that has been affected by the mandated redirect policy. Captain Vera also reported that the EOP program must be isolated from other Facility "G" programs during yard for safety and security purposes which also affects yard scheduling. Captain Vera noted that even though the Facility "G-1" has been affected by the aforementioned issues, inmates on the Facility "G-1" are currently receiving dayroom and yard privileges in compliance with current policy. Captain Vera stated that the Facility "G" Regular Days Off (RDO) schedule will be changing within the next week thus allowing more yard and dayroom access for Facility "G-1" inmates. The examiner also contacted R. Coffin, SATF Chief of Mental Health on February 2, 2011, who reported that inmates assigned to the Facility "G-1" do not receive mental health therapeutic groups/sessions on holidays and weekends. However, emergency personnel such as, Psychologists, Licensed Psychiatric staff, and Psychologist technicians are available to all inmates 24 hours a day, seven days week, as well

*page 16 of*

as a Mental Health Crisis Bed Unit. Based upon the information provided by Captain Vera and Chief of Mental Health Services, R. Coffin, the Director's Level of Review (DLR) finds that the appellant and other listed inmates are being provided adequate recreation privileges and appropriate mental health services. The appellant is advised that the current economic situation has affected the Department and as a result substantial budget cuts have occurred affecting his normal program activity. The SATF has been forced to make necessary adjustments to inmate programs. The Daily Activity Schedule (DAS) was implemented by the warden in order to maintain the safety and security of the institution and it was determined that the current program schedule for the Facility "G-1" is appropriate. The appellant is also reminded that staff are required to remain on modified program status in the event of a disturbance and/or threat to the institution. Staff are responsible for investigating and questioning the inmate population to ascertain the current safety of other inmates and staff in the institution. This is supported by the California Code of Regulations, Title 15, Section (CCR) 3270 that states in part, "The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department." The appellant is advised that the CCR 3380(a) states, "The warden or superintendent of an institution of the department is the chief executive officer of that institution, and is responsible for the custody, treatment, training and discipline of all inmates under his or her charge." As such, the DLR finds no cause to intervene.

**B. BASIS FOR THE DECISION:**
CCR: 3001, 3084.1, 3270, 3303, 3380

**C. ORDER:** No changes or modifications are required by the Institution.

The appellant shall, pursuant to CCR section 3084.2(f)(2), share this response with the other inmates who signed this appeal.

This decision exhausts the administrative remedy available to the appellant within CDCR.

D. ARTIS, Appeals Examiner
Inmate Appeals Branch

D. FOSTON, Chief
Inmate Appeals Branch

cc:    Warden, SATF
       Appeals Coordinator, SATF

page 170

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



December 7, 2010

Inmate Wheeler, E82064
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212

Second Level Response
Log # SATF-G-10-03492                    **GROUP APPEAL**

### ISSUE:

You contend that the policy of reducing or cutting custody staff positions at the California Substance Abuse Treatment Facility (CSATF) is endangering/violating the safety and security of the institution. You request that the policy of reducing or cutting Building G1 Staff on weekends and holidays be reconsidered. You also request that your housing unit be provided with more staff in order for the Enhanced Out Patient (EOP) Program to be improved.

### INTERVIEWED BY:

J. Johnson, Correctional Sergeant on October 4, 2010.

### REGULATIONS:

The rules governing this issue are taken from the Institution Operational Procedure (OP).

**OP 453. Program Modification During Custody Staff shortages and Redirections.**

### SUMMARY:

R. Hall, Appeals Coordinator, investigated your appeal at the Second Level of Review (SLR). The investigation initially revealed that because of the current fiscal crisis, the institution implemented a three percent redirection plan. Custody staff assigned to selected positions throughout the institution are being redirected on a rotational basis. Facility-G is affected two days per week on Thursdays and Sundays (Second Watch) and one day per week on Tuesdays (Third Watch). Medical, education, religious services and self help programs shall continue to operate under this policy. However, in the interest of providing you with your mandated program, you will be released for recreation yard every Thursday from 0900-1100 hours. This is subject to change

based on the redirection plan, inclement weather and/or institution emergencies. In addition, Dialysis Officers are being redirected to your housing unit on weekends and holidays to ensure that you receive your allotted dayroom. Facility-G Captain P. Vera related on this date that at the culmination of the custody staff bid process, two additional custody positions will be added to Building G1. You have failed to provide any additional information/evidence at the SLR to modify the First Level Decision.

## DECISION:

Your appeal is **partially granted** in that additional custody staff are being provided for Building G1. Your appeal is denied in that the three percent redirection plan will not be modified based on the contents of this appeal. You are advised that this issue may be submitted for a Director's Level of Review if desired.

Pursuant to the CCR Section 3084.2 (f) (2), you are responsible for sharing this written response with the inmates who signed your group appeal attachment.

KATHLEEN ALLISON
Warden (A)

CSATF APPEALS

DEC 0 8 2010

$page 172$

DIVISION OF ADULT INSTITUTIONS
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



October 4, 2010

Wheeler, E82064
California Substance Abuse Treatment Facility and State Prison at Corcoran
P.O. Box 7100
Corcoran, Ca. 93212

### APPEAL LOG # SATF-G-10-03492
### FIRST LEVEL RESPONSE

**GROUP APPEAL ISSUE:** You contend on Saturdays', Sunday's, and holidays' are dangerous for you, other inmates, and staff alike due to a lack of staff. This endangers the safety and security of the institution because of the volatile actions of the Enhanced Out-Patient Program (EOP) Inmates.

You request to have the same staffing package on the weekends and holidays as the week days, for the EOP Inmates, staff, and safety and security of the institution.

**INTERVIEW:** On October 4, 2010, you were interviewed by Sgt. J. Johnson regarding your appeal. You were afforded the opportunity to further explain your issue and to provide any supporting evidence or documents.

You reiterated what was on the CDC 602 Appeal form. You did not feel safe with the lack of staff, which includes custody and mental health, with all the E.O.P. inmates in the building. These E.O.P. inmates can become dangerous and violent at any moment and assault other inmates, custody, and mental health staff.

**SUMMARY:** Your appeal, the attachments, and the California Code of Regulations (CCR) Title 15 have been reviewed.

Effective communication was achieved by utilizing simple and plain English. You responded to the questions with the appropriate answers.

The institution is unable to staff enough clinicians for your mental health needs, but once the clinicians can be hired, the additional officers will be hired as well. Transportation and Dialysis will send over an officer for Saturdays and Sundays. This will give building G1 an additional officer on the weekends and holidays, thus allowing dayroom activities. The officers during the weekends and holidays are sufficient enough for the safety and security of the institution.

page 173

Wheeler, E82064
SATF-G-10-03492
Page 2

**DECISION**: Based on the above information, your appeal is **Partially Granted** at the First Level of review. Your appeal is denied in that you will not have the same staffing package on the weekends and Holidays as you do during the week. Your appeal is granted in that Transportation and Dialysis will send over an officer for Saturdays, and Sundays. This will give building G1 an additional officer on the weekends and holidays.

If you are dissatisfied with this decision, you may appeal to the Second Level by following the instructions on your appeal form.

J. JOHNSON
Correctional Sergeant
CSATF/SP

J. REYNOSO        AW (A)
Associate Warden
CSATF/SP
CSATF APPEALS

OCT 2 9 2010

page 174

*whee Ice   F82064*                                        *Exhibit  Log No. 10-03492*
                                                            *SATFG*

State of California                          Department of Corrections and Rehabilitation

# Memorandum

Date   :   October 6, 2010

To     :   Jason Collins
           Captain, Health Care Services
           CSATF/SP

Subject :  **REQUEST FOR ADDITIONAL CUSTODY STAFF FOR SATURDAY, SUNDAY AND
           HOLIDAYS TO PROVIDE SECURITY COVERAGE WITHIN HOUSING UNIT G1
           ENHANCED OUT PATIENT (EOP) PROGRAM SECOND AND THIRD WATCH**

I am requesting for you to re-direct any available Health Care Access Custody Staff to
the Facility G Housing Unit G1 EOP Program for security coverage during Saturday and
Sunday and Holidays. The Facility G Housing Unit G1 EOP unit does not have any EOP
Floor Officers assigned during second and third watch. Currently there are three
(3) custody staff assigned on second watch and two (2) assigned on third watch. Two of
the second watch officers are designated as Floor Officer #1 and Floor Officer #2 and
the third officer is the EOP Rover. It should be noted that one officer must stay at the
Podium to control the respective section and yard access doors. The other Floor officer
is often tasked to assist the EOP Rover with EOP escorts to the Facility G Medical
Clinic, Correctional Treatment Center (CTC), facility G Visiting and/or Receiving and
Release (R & R).

The EOP inmates are often secured within their assigned dorms on Saturday and
Sunday second and third watch, which is a contributing factor for EOP inmates to
mentally decompensate. There has been two (2) actual Attempted Suicides within the
EOP Unit and I am requesting for the additional custody staff to assist with providing
security observation. This will allow the Facility G Supervisors to authorize dayroom
activities and minimize the effects of isolation during the activation of OP 453. Any
assistance regarding this matter is welcomed and appreciated. If you have any
questions or concerns regarding this memorandum please, contact me @ extension
7125.

*P.D. V___*

P. D. Vera
Facility G Captain
CSATF/SP

*Meeting 10-14-10 with Warden & Health
Care Captain. Was authorized 1 Health
Care access staff on 2nd Watch Saturday
and 1 health care access staff on 3rd
Watch.*                    page 175
*Two (2) were authorized on Sunday 2nd
Watch & 2 on 3rd Watch Sunday.
My expectations for 2nd & 3rd Watch Superv
are to run Dayroom Activity in Housing Unit (
_____ staff is re-directed to G1*

# Memorandum

Date      :   September 17, 2010

To        :   Facility G Custody Supervisors
              CSATF/SP

Subject :  **ENHANCED OUT PATIENT (EOP) AUTHORIZED RECREATIONAL YARD DURING
           THE FACILITY G 3% CUSTODY REDIRECTION PLAN**

During the recent Coleman audit of the Facility G EOP Housing Unit G1 program, it was discovered that the EOP inmates were not receiving the minimum amount of Recreational Yard activities. Based upon the aforementioned information, every Thursday morning the Facility G EOP inmates are scheduled to be released for recreation yard activities between the hours of 0900 through 1100 hours. It is my expectations that every effort is being made to accommodate the recreational yard activities scheduled for the EOP inmates. Therefore, on every Thursday morning all EOP inmates shall be instructed to attend the scheduled recreational yard activity. Three (3) of the five (5) EOP assigned Officer's shall report to the recreation yard to provide security coverage of the EOP inmates. The two (2) remaining EOP Officers shall conduct routine random security checks of the EOP Unit for any EOP inmates remaining within the unit. The aforementioned EOP recreational yard procedure is subject to change based upon activation of Operational Procedure 453, inclement weather and/or institutional emergencies.

In addition to the above information, my expectations regarding the G1 EOP inmates is for the custody supervisors to authorize dayroom program every Sunday morning on a rotational basis. I am aware that there is only one EOP Officer assigned on weekends in housing unit G1 on second watch along with two (2) Floor Officers, who can assist with the security coverage of the EOP inmates. It is my expectation that the custody supervisors authorize dayroom activities within the EOP Unit on a rotational basis. Your cooperation regarding this memorandum is expected and appreciated. If you have any questions and/or concerns please contact Captain P. D. Vera @ extension 7125.

P.D. Vera

P. D. Vera
Facility G Captain
CSATF/SP

page 176

# Memorandum

**Date** : October 15, 2010

**To** : Watch Office
California Substance Abuse Treatment Facility and State Prison at Corcoran

### Subject: REDIRECTION OF 2/W AND 3/W DIALYSIS OFFICERS ON SUNDAY

Effective **October 17, 2010**, several officers assigned to the 19 Chair Dialysis Unit and 6 Chair Dialysis Unit on 2/W and 3/W will no longer be utilized to cover any other vacant position within the institution as they will be utilized on Facility F Building 3 and Facility G Building 1 on Sundays. The hours of assignment for second watch will be from 0630 hours to 1430 hours. The hours of assignment for third watch will be from 1430 hours to 2230 hours.

The position numbers and officers currently assigned to the 19 Chair Dialysis Unit and 6 Chair Dialysis Unit on 2/W that will be utilized on Facility F and Facility G are as follows:

- 285214 Dialysis Floor #2 (19 Chair), **Officer R. Fernandez** will be redirected to Facility F Building 3, Post #271743 EOP Floor Officer #1.
- 285205 Dialysis S&E #1 (6 Chair), **Officer D. Martin** will be redirected to Facility G Building 1, Post #271746 EOP Escort Officer #1 .

The position numbers and officers currently assigned to the 19 Chair Dialysis Unit and 6 Chair Dialysis Unit on 3/W that will be utilized on Facility F and Facility G are as follows:

- 385206 Dialysis S&E #1 (6 Chair), **Officer J. Burinas** will be redirected to Facility G Building 1, Post #371744 EOP Floor Officer #1.
- 385209 Dialysis Floor #2 (19 Chair), **Officer A. Larios** will be redirected to Facility F Building 3, Post #371750 EOP Floor #1.

This memorandum will remain in effect until further notice.

J. PEREZ
Correctional Lieutenant
Health Care Access
California Substance Abuse Treatment Facility and State Prison at Corcoran

J. COLLINS
Correctional Captain
Health Care Operations
California Substance Abuse Treatment Facility and State Prison at Corcoran

S. SHERMAN
Associate Warden
Health Care Operations
California Substance Abuse Treatment Facility and State Prison at Corcoran

State of California

Department of Corrections and Rehabilitation

**Memorandum**

Log. No. 10-03492
SATF-G

Date : November 15, 2010

To : All Concerned

Subject : **CANCELLATION OF THE IN CELL HOBBY PROGRAM**

Effective January 1, 2011, the in cell hobby program will be terminated. Due to staffing shortages, caused by the hiring freeze due to the State budget deficit and due to deactivations of dayrooms and gyms which caused a decrease in budgeted positions the supervision and work that goes into this program cannot be maintained within security guidelines.

All hobby items and materials must be sent home prior to the termination date.

Should you have any questions, please contact Tim Lemos, Procurement Services Officer II.

KATHLEEN ALLISON
Warden (A)
California Substance Abuse Treatment Facility and State Prison at Corcoran

page 178

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## THIRD LEVEL APPEAL DECISION

Date: **SEP 29 2011**

In re:   Eric Wheeler, E82064
         California Substance Abuse Treatment Facility and
         State Prison at Corcoran
         P.O. Box 7100
         Corcoran, CA 93212-7100

TLR Case No.: 1022697          Local Log No.: SATF-11-00704

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner D. Artis, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered:

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that Correctional Officer s(COs) D. Duck and R. Lowder, A. Murrieta, and S. Loftis utilized excessive force against him and authored false reports regarding the incident that took place on January 19 2011. The appellant alleges that Correctional Officer (CO) Duck utilized force against him even though he was not fighting another inmate. The appellant maintains that CO Murreta submitted a false CDC Form 115, Rules Violation Report (RVR) stating that he (CO Murreta) never saw the appellant kick Inmate Yepiz (D-36836). The appellant argues that CO Loftis corroborated with CO Lowders report but was not present at the time of the incident. The appellant insists that CO Lowders also submitted a false report, as he the (appellant) is left handed and CO Lowders reported that the appellant swung at him with his right hand. The appellant alleges that he did not get down to the ground as ordered by staff because he was having a panic attack. The appellant requests that this appeal issue be thoroughly investigated, that he not be subjected to harassment or retaliation, that the aforementioned staff be removed from the California Substance Abuse Treatment Facility (SATF), that all documentation harmful to him be removed from his central file, that all time credits lost related due to this incident be restored, that he receive appropriate medical care for injuries suffered during this incident, that the First Level of Review be by-passed, that all witnesses related to this appeal issue be interviewed, and that he receives monetary compensation for damages suffered.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the inquiry is complete and staff did not violate CDCR policy regarding this issue. The appellant was interviewed on March 22, 2011, by Acting Captain E. Smith, regarding this appeal issue. It was determined that the allegation of staff misconduct presented by the appellant was processed as a staff complaint. The following witnesses were questioned: Social Worker V. Trevino, Inmates Schriver (D-55998), Mitchell (P-19128), Pierson (AA-7997), and Seibert (V-61109). The following information was reviewed as a result of the appellant's allegations of staff misconduct: The appellant's submitted appeal log #SATF-Z-11-00704. The appellant's appeal was granted in part at the Second Level of Review (SLR) in that an appeal inquiry was conducted.

**III   THIRD LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by the administrative staff and an appeal inquiry has been completed by the SLR. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and are not privy to inquires of other staff, the general public or the inmate population, and would not be released to the appellant. However, upon completion of final review, or culmination of an appeal inquiry, the appellant is to be notified by the respective staff that an inquiry has been completed. The examiner reviewed the contents of this inquiry on August 15, 2011, and verified that developed information supports the reviewer's conclusion that the aforementioned staff did not violate policy regarding this appeal issue. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file

is beyond the scope of the appeals process. The appellant's request for monetary compensation is denied as such a request is beyond the appeals process. Given the aforementioned, relief at the Third Level of Review is not warranted.

**B. BASIS FOR THE DECISION:**

California Code of Regulations, Title 15, Section: 3005, 3084.1, 3268, 3270, 3315, 3380, 3391

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

D. ARTIS, Appeals Examiner
Office of Appeals.

D. FOSTON, Chief
Office of Appeals

cc:   Warden, SATF
      Appeals Coordinator, SATF

page 180

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



May 13, 2011

Inmate Wheeler, E82064                                    Attachment E-3
California Substance Abuse Treatment                       (rev. 12-13-07)
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212

Second Level Appeal Response
Log # SATF-Z-11-00704

**APPEAL ISSUE:**
You contend that on January 19, 2011, Correctional Officers D. Duck,
A. Murrieta, R. A. Lowder and S. Loftis used excessive force on you and falsified
their reports.

**DETERMINATION OF ISSUE:** A review of the allegations of staff misconduct
presented in the written complaint has been completed. Based upon this review
your appeal has been handled as follows:

☒ PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY.
☐ REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (OIA).

**SUMMARY FOR APPEAL INQUIRY:**
You were interviewed on March 22, 2011, by E. Smith, Correctional Captain (A).

**CHOOSE ONE:**

☒ A Confidential Inquiry (was / will be) conducted. The following witness(es)
(were) / will be) questioned: V. Trevino, Masters of Social Work, inmates
Schriver, D55998; Mitchell, P19128; Pierson, AA7997; and Seibert, V61109. The
following information (was / will be) reviewed as a result of your allegations of staff
misconduct: Staff Complaint Appeal Log # Z-11-00704.

☐ This matter has been referred to the Office of Internal Affairs for follow-up and
a possible investigation. If investigated, upon completion of that investigation you
will be notified as to whether the allegations were SUSTAINED, NOT
SUSTAINED, UNFOUNDED, EXONERATED or that NO FINDING was possible.
In the event that the matter is not investigated, but returned by OIA to the
institution or region to conduct a Confidential Inquiry, you will be notified upon the
completion of that inquiry as to whether it was determined that staff violated, or
did not violate policy.

**FINDINGS FOR AN APPEAL INQUIRY:**
Your appeal is PARTIALLY GRANTED at the ☐ First level ☒ Second level:  page 81

☒ An inquiry into your allegation (has been / is being) conducted.

Wheeler, E82064
Log # SATF-Z-11-00704
Page 2

☐ An investigation is being conducted by the Office of Internal Affairs

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, the details of any inquiry will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. However, you have the right to be notified if after a review of your allegations, it is determined that staff violated CDCR policy. In this case:

☐ The (inquiry / investigation) is not yet complete.

☒ The (inquiry / investigation) is complete. Staff (did-/ did not) violate CDCR policy.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted. On March 24, 2011, R. Diaz, Chief Deputy Warden, reviewed and approved the Staff Complaint Appeal Inquiry.

Please print and sign below:

KATHLEEN ALLISON / 5/17/11
Warden (A)                    Date

CSATF APPEALS

MAY 1 9 2011

page 182

ATTACHMENT O

## CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY AND STATE PRISON
### Inmate Appeals Office

### EFFECTIVE COMMUNICATION ASSIGNMENT

Date: _5.13.11_

To: _Cept. E. Smith (A)_

RE: I/M: _Wheeler_    CDCR#: _E82064_
Housing: _8 G1-116L_
Log # SATF- _2-11.00704_

The above named inmate requires Effective Communication. Please ensure Effective Communication is achieved in communicating the response of the attached Inmate/Parolee Appeal Form (CDCR 602) or the Reasonable      Accommodation      or      Accommodation      Request      (CDCR      1824).

I read the ☐ First ☐ Second ☐ Third level appeal response to inmate _WHEELER_ , CDCR# _E.82064_ .

**Please indicate the specific type of Effective Communication used by checking the applicable box. Check only the items that apply.**

☐ I used a loud clear voice. ☑ I spoke slowly to the inmate. ☐ I used a Sign Language Interpreter.
☐ Other:_____

I am sure the inmate completely understood because:

☑ The inmate was able to read the document without my assistance and was able to explain it to me.

☑ The inmate was able to talk with me about the appeal response to a degree that convinced me he completely understood it.

☐ The inmate asked questions appropriate to each section I read.

☑ The inmate personally interacted with me by his mannerisms.
(Gestures, body language, facial expressions, attitude, etc.)

☐ The inmate actively participated with me during the reading by asking questions along the way and expressing his understanding by the way he interacted with me.

☑ I gave the inmate the appeal and its attachments after ensuring he completely understood it.

CERTIFIED AS COMPLETED BY: _S. Beasley SGT._

page 18.3

_____
STAFF SIGNATURE

_S. Beasley_          _Sergeant_          _G. 1_          _5/21/11_
STAFF NAME (PRINTED)    Title             Location          Date