# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WHEELER, | ) 1:12cv00861 LJO DLB PC |
| | ) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS<br>) FINDING CERTAIN CLAIMS<br>) COGNIZALBE AND DISMISSING |
| vs. | ) REMAINING CLAIMS |
| | ) |
| KATHLEEN ALISON, et al., | ) THIRTY-DAY DEADLINE |
| | ) |
| Defendants. | ) |

Plaintiff Eric Wheeler ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983. Plaintiff filed this action on May 25, 2012. Plaintiff names California Substance Abuse Treatment Facility ("SATF") Warden Kathleen Alison, Correctional Officers D. Duck, A. Murrieta, R. Lowder and S. Loftis, M. Ross, P.A., B. Mui, M.D., Agnes Wu, Jeffrey Neubarth, M.D., and M. Ancheta, D.D.S., as Defendants.

## I.    LEGAL STANDARD

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§ 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is incarcerated at SATF, where the events at issue occurred.

Plaintiff alleges that on January 19, 2011, while he was returning to his housing unit after breakfast, he was attacked by Inmate Yepiz. He alleges that when he was attacked, there were no officers present. Yepiz struck Plaintiff in the right and left jaw area and ran away. Plaintiff pursued him, past the G-1 office where Defendant Duck and Murrieta were engaged in conversation. An inmate told Plaintiff that he heard Defendant Murrieta tell Defendant Duck to wait to call an alarm until Plaintiff and Yepiz were fighting. He also states that an inmate informed him that Yepiz was a "snitch" for Defendants Murrieta, Loftis and Lowder.

Yepiz ran into the dayroom and Plaintiff unsuccessfully tried to grab the back of his collar from behind. Yepiz then got down onto his stomach. Plaintiff, who has post-traumatic stress disorder, stood frozen with panic. Without provocation, Defendant Duck approached Plaintiff from the left side and struck Plaintiff's left knee with her baton. Defendant Duck struck Plaintiff a second time.

Defendant Murrieta then sprayed pepper-spray into Plaintiff's eyes and face numerous times. Defendant Murrieta also hit other guards, including Defendant Loftis, with the pepper-spray. Defendant Loftis exited immediately and did not return. Defendant Duck struck Plaintiff a third time, hitting Plaintiff's upper left thigh. Defendant Lowder, who was standing to the left of Duck and Plaintiff, sprayed pepper spray on the left side of Plaintiff's head. Plaintiff turned towards Murrieta to avoid Duck's baton, and Murrieta continued to spray pepper spray in Plaintiff's face. Plaintiff dropped his head down and was then hit with a fourth blow from Defendant Duck's baton. The baton struck the left side of Plaintiff's neck and the top of his head. Defendant Duck was then hit with Defendant Murrieta's pepper spray, and she stopped hitting Plaintiff and left the area.

Defendant Murrieta then handcuffed Yepiz and escorted him away.  Plaintiff, with no officers present and in extreme pain, lay down on the dayroom floor.  He was assisted to his feet by Officer Hughes and limped, uncuffed, to the shower.  Plaintiff contends that he did not act aggressively towards Defendants Duck, Lowder, Murrieta or Loftis at any time.

Plaintiff alleges that Defendants Lowder, Duck, Murrieta and Loftis entered into a conspiracy to cover up the use of excessive force by authoring separate incident reports on Plaintiff.  The false reports claimed that Plaintiff assaulted inmate Yepiz and the other officers.  As a result of the false reports, Plaintiff spent time in Administrative Segregation ("Ad-Seg") and served a six month term in the Secured Housing Unit.

On January 19, 2011, Defendant Ross examined Plaintiff.  Plaintiff explained what happened and complained of severe pain in his jaw, left knee, left thigh and neck.  Ross consulted a dentist, who ordered x-rays.  The x-rays revealed jaw fractures and required transport to the hospital.  Plaintiff alleges that Defendant Ross told him that he would not receive treatment for his neck, left knee or left thigh because Plaintiff was assaulted by staff.  Defendant Ross did not refer Plaintiff for treatment of these injuries.

On January 19, 2011, Plaintiff was transported to Mercy Hospital in Bakersfield, California.[1]  He was under the care of Defendant Mui, a doctor at Mercy Hospital, for his left jaw injury.  In the emergency room, Plaintiff told staff that he sustained injuries to his left knee, left thigh and neck, and that he was in severe pain.  A doctor in the emergency room noted these complaints in his reports.  Examination revealed mild swelling of the left knee.  A CT scan of Plaintiff's face showed a mandibular fracture.  An x-ray of Plaintiff's left knee showed a prominent effusion and a non-displaced fracture of the distal femur.

Dr. Mui admitted Plaintiff for his mandibular fracture.  Plaintiff was placed on the fifth floor prison ward, where his left leg was handcuffed to the foot of the bed.  Plaintiff told prison

---

[1] Plaintiff alleges that Mercy Hospital contracts with CDCR to provide medical treatment to inmates.

4

guards and nurses that his left leg was in severe pain, but it remained cuffed to the bed for 44 hours.

On January 20, 2011, Dr. Suesberry told Plaintiff that he would need to undergo a closed reduction of the jaw, with fixation. Dr. Mui told Plaintiff that a CT of his head showed a left condylar neck fracture. Dr. Mui did not mention knee x-rays and Plaintiff told him again that his left knee and thigh were in severe pain. Dr. Mui said he was not treating the left knee and told Plaintiff that he was admitted only for the mandibular fracture. Plaintiff told him that an emergency room doctor had documented his knee pain and that x-rays were taken, but Dr. Mui would not listen. Plaintiff alleges that A. Wu, Medical Director of Mercy Hospital, was responsible for medical staff and treatment of patients.

On January 21, 2011, Plaintiff was discharged from Mercy Hospital and admitted to the prison infirmary. He had undergone surgery and his jaw would be wired shut for 5 to 6 weeks. Plaintiff was placed under the care of Defendant Neubarth. Plaintiff informed him that he could not put weight on his left leg and Neubarth was aware of the x-ray done at Mercy Hospital. Despite this, Defendant Neubarth kept ordering Plaintiff to walk and exercise his left leg. He did not refer Plaintiff for an MRI, or order any treatment.

On February 22, 2011, Plaintiff was transported to see Dr. Suesberry. He cut the bands holding Plaintiff's jaw closed and told Plaintiff that he would remove the wires, bars and arches on March 8, 2011. Dr. Neubarth was responsible for requesting the follow-up on March 8, 2011, and knew of Dr. Suesberry's February 22, 2011, orders. Dr. Neubarth failed to request further treatment and Plaintiff went 55 days past March 8, 2011, with the wires, bars and arches intact. Plaintiff did not return to Dr. Suesberry.

On February 24, 2011, Plaintiff was discharged from the prison infirmary and placed in Ad-Seg.

5

On March 9, 2011, Plaintiff saw Defendant Ancheta, a dentist.  Plaintiff told him that he was supposed to see Dr. Suesberry on March 8, 2011, for removal of the hardware.  Dr. Ancheta told Plaintiff that she would take care of everything.  Dr. Ancheta failed to request further treatment, however.

On March 11, 2011, Plaintiff was examined by P.A. Byers after submitting a health care request.  Byers said that something was wrong with Plaintiff's left knee and ordered an MRI, which was performed on May 3, 2011.  On May 5, 2011, Plaintiff was referred to specialist Dr. Smith.  During his examination on July 6, 2011, Dr. Smith noted that Plaintiff was still in severe pain and had reduced range of motion and weakness in the left knee.

On April 3, 2012, Plaintiff was medically declared permanently mobility impaired.  As of March 22, 2012, he was awaiting surgery for a left hernia due to his left knee and thigh injuries.

Based on these allegations, Plaintiff asserts the following causes of action:

1. Violation of the Eighth and Fourteenth Amendments based on Defendant Alison's failure to staff enough officers to protect Plaintiff's safety, despite knowing of the shortage of prison staff in Facility G;

2. Violation of the Eighth and Fourteenth Amendments based on the use of excessive force by Defendant Duck, Murrieta, and Lowder;

3. Violation of the Eighth and Fourteenth Amendments based on failure to protect by Defendants Murrieta, Duck, Lowder and Loftis;

4. Violation of the Eighth and Fourteenth Amendments based on deliberate indifference to a serious medical need by Defendants Ross, Mui, Wu, Neubarth and Ancheta; and

5. Violation of the Eighth and Fourteenth Amendments based on an alleged conspiracy between Defendants Loftis, Lowder and Murrieta to cover up the use of excessive force.

## III. ANALYSIS

### A. Eighth Amendment- Excessive Force

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 559 U.S. 34, ___, 130 S.Ct. 1175, 1178 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8 (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins, 559 U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 7) (quotation marks omitted).

Plaintiff has stated a claim for excessive force in violation of the Eighth Amendment against Defendants Duck, Murrieta and Lowder. Plaintiff will be instructed on service in a separate order.

### B. Eighth Amendment- Failure to Protect

The failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene but failed to do so. Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995); see also Motley v. Parks, 383 F.3d 1058, 1071 (9th Cir. 2004) (neither officers who participated in the harassing search nor officers who failed to intervene and stop the harassing search were entitled to qualified immunity).

Plaintiff has stated a claim for failure to protect in violation of the Eighth Amendment against Defendants Duck, Murrietta, Lowder and Loftis. Plaintiff will be instructed on service in a separate order.

C.	Eighth Amendment- Medical Treatment

For Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

Plaintiff has stated an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Ross, Mui, Neubarth and Ancheta. Plaintiff will be instructed on service in a separate order.

D.	Specific Defendants

1.	*Defendant Wu*

Defendant Wu is the Medical Director at Mercy Hospital. Although Plaintiff alleges that Defendant Wu is responsible for medical staff and treatment of patients at Mercy Hospital, these allegations are insufficient to state a claim against Defendant Wu.

Under section 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77, 129 S.Ct.

1937, 1948-49 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1948-49; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

While Defendant Wu may have been the Medical Director at Mercy Hospital, there is no indication that she was personally involved in the deprivation of Plaintiff's rights. Plaintiff does not allege that Defendant Wu treated Plaintiff in any way, was aware of Plaintiff's medical condition, or knew of Plaintiff's complaints during his hospitalization. He has therefore failed to state a claim against Defendant Wu and the Court recommends that she be dismissed.

        2.    *Defendant Alison*

Defendant Alison is also a supervisory defendant, and as such, can only be held liable if she "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Moreover, while the creation or enforcement of, or acquiescence in, an unconstitutional policy may support a claim, the policy must have been the moving force behind the violation. Starr,

652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

Plaintiff alleges that Defendant Alison was responsible for hiring correctional officers and providing enough staff to ensure the safety of inmates. He contends that she failed to put enough staff in place to protect Plaintiff from assault by another inmate. Plaintiff alleges that Defendant Alison was fully aware of the shortage of prison staff in SATF Facility G.

Despite Plaintiff's allegations, there are no facts demonstrating that Defendant Alison acted with deliberate indifference to a known or obvious danger that the alleged staffing decisions may subject Plaintiff to harm. L.W. v. Grubbs, 92 F.3d 894, 900 (9th Cir.1996). Moreover, defendants generally cannot be held personally liable under section 1983 for "incorrect or ill-advised [ ] decisions" that failed to "guarantee [state] employees a workplace that is free of unreasonable risks of harm." Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992) (internal quotation marks omitted).

Accordingly, Plaintiff has failed to state a claim against Defendant Alison and the Court recommends that she be dismissed.

E.      Fourteenth Amendment

Plaintiff cites both the Eighth Amendment and the Fourteenth Amendment in his causes of action. However, he provides no arguments relating to specific, separate due process violations.

"[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), overruling on other grounds recognized by Nitco Holding Corp. v.

Boujikian, 491 F.3d 1086, 1089-90 (9th Cir. 1997).

Here, the Eighth Amendment provides the source for Plaintiff's constitutional claims. The Fourteenth Amendment does not provide any additional relief with respect to Plaintiff's excessive force claim, failure to protect claim and deliberate indifference claim.

Plaintiff therefore fails to state any claims under the Fourteenth Amendment.

F.   False Reports Claim Against Defendants Loftis, Lowder and Murrieta

Plaintiff alleges that Defendants Loftis, Lowder and Murrieta conspired to cover up the use of excessive force by authoring false reports, in violation of the Eighth and Fourteenth Amendments.

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Here, Plaintiff has failed to allege any facts to demonstrate a specific agreement between Defendants Loftis, Lowder and Murrieta. Instead, his claim is based on speculation and conclusory allegations. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir.1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient ...."). It is not enough to state the existence of a conspiracy, without alleging facts. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Therefore, Plaintiff fails to state a claim for conspiracy and this claim must be dismissed.

## IV.     CONCLUSION AND RECOMMENDATION

The Court finds that Plaintiff's complaint states the following claims: (1) a claim for excessive force in violation of the Eighth Amendment against Defendants Duck, Murrieta and Lowder; (2) a claim for failure to protect in violation of the Eighth Amendment against Defendants Duck, Murrietta, Lowder and Loftis; and (3) a claim for deliberate indifference to a serious medical in violation of the Eighth Amendment against Defendants Ross, Mui, Neubarth and Ancheta. It does not, however, state any claims against Defendants Alison or Wu, any claim under the Eighth or Fourteenth Amendment against Defendants Loftis, Lowder or Murrieta based on an alleged conspiracy, or any other Fourteenth Amendment claim. It does not appear that these deficiencies can be cured. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). As explained above, Plaintiff will be instructed on service in a separate order.

Accordingly, it is HEREBY RECOMMENDED that this action proceed on the claims identified above and that Defendants Alison and Wu, as well as the Eighth and Fourteenth Amendment claim against Defendants Loftis, Lowder or Murrieta based on an alleged conspiracy, be DISMISSED WITHOUT LEAVE TO AMEND for failure to state a claim under section 1983.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file

///

///

///

///

written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 11, 2013**                             /s/ *Dennis L. Beck*
                                                                        UNITED STATES MAGISTRATE JUDGE