# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WHEELER,<br><br>        Plaintiff,<br><br>    vs.<br><br>ALISON, et al.,<br><br>        Defendants. | 1:12cv00861 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT MUI'S MOTION TO DISMISS<br>(Document 75)<br><br>TWENTY-ONE DAY DEADLINE |

Plaintiff Eric Wheeler ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on May 25, 2012.

## I.      PROCEDURAL HISTORY

On March 11, 2013, the Court screened Plaintiff's complaint and found the following cognizable claims: (1) excessive force in violation of the Eighth Amendment against Defendants Duck, Murrieta and Lowder; (2) failure to protect in violation of the Eighth Amendment against Defendants Duck, Murrietta, Lowder and Loftis; and (3) deliberate indifference to a serious medical in violation of the Eighth Amendment against Defendants Ross, Mui, Neubarth and

1

Ancheta. On April 8, 2013, the Court adopted the Findings and Recommendations in part, and modified the findings to reflect a cognizable Eighth Amendment claim against Defendant Alison.

Defendants Alison, Duck, Loftis, Lowder, Murrieta, Neubarth, Ross and Ancheta have filed answers in this action. The Court issued a Discovery and Scheduling Order on January 17, 2014, and the action is currently in the discovery phase.

On March 14, 2014, Defendant Mui filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition on April 3, 2014, and Defendant Mui filed a reply on April 10, 2014. The motion is deemed submitted pursuant to Local Rule 230(l).

## II.      **ALLEGATIONS IN COMPLAINT**

The events at issue occurred while Plaintiff was incarcerated at the California Substance Abuse Treatment Facility in Corcoran, California.

Plaintiff alleges that on January 19, 2011, while he was returning to his housing unit after breakfast, he was attacked by Inmate Yepiz. He alleges that when he was attacked, there were no officers present. Yepiz struck Plaintiff in the right and left jaw area and ran away. Plaintiff pursued him, past the G-1 office where Defendant Duck and Murrieta were engaged in conversation. An inmate told Plaintiff that he heard Defendant Murrieta tell Defendant Duck to wait to call an alarm until Plaintiff and Yepiz were fighting. He also states that an inmate informed him that Yepiz was a "snitch" for Defendants Murrieta, Loftis and Lowder.

Yepiz ran into the dayroom and Plaintiff unsuccessfully tried to grab the back of his collar from behind. Yepiz then got down onto his stomach. Plaintiff, who has post-traumatic stress disorder, stood frozen with panic. Without provocation, Defendant Duck approached Plaintiff from the left side and struck Plaintiff's left knee with her baton. Defendant Duck struck Plaintiff a second time.

Defendant Murrieta then sprayed pepper-spray into Plaintiff's eyes and face numerous times. Defendant Murrieta also hit other guards, including Defendant Loftis, with the pepper-

spray. Defendant Loftis exited immediately and did not return. Defendant Duck struck Plaintiff a third time, hitting Plaintiff's upper left thigh. Defendant Lowder, who was standing to the left of Duck and Plaintiff, sprayed pepper spray on the left side of Plaintiff's head. Plaintiff turned towards Murrieta to avoid Duck's baton, and Murrieta continued to spray pepper spray in Plaintiff's face. Plaintiff dropped his head down and was then hit with a fourth blow from Defendant Duck's baton. The baton struck the left side of Plaintiff's neck and the top of his head. Defendant Duck was then hit with Defendant Murrieta's pepper spray, and she stopped hitting Plaintiff and left the area.

Defendant Murrieta then handcuffed Yepiz and escorted him away. Plaintiff, with no officers present and in extreme pain, lay down on the dayroom floor. He was assisted to his feet by Officer Hughes and limped, uncuffed, to the shower. Plaintiff contends that he did not act aggressively towards Defendants Duck, Lowder, Murrieta or Loftis at any time.

On January 19, 2011, Defendant Ross examined Plaintiff. Plaintiff explained what happened and complained of severe pain in his jaw, left knee, left thigh and neck. Ross consulted a dentist, who ordered x-rays. The x-rays revealed jaw fractures and required transport to the hospital. Plaintiff alleges that Defendant Ross told him that he would not receive treatment for his neck, left knee or left thigh because Plaintiff was assaulted by staff. Defendant Ross did not refer Plaintiff for treatment of these injuries.

On January 19, 2011, Plaintiff was transported to Mercy Hospital in Bakersfield, California.[1] He was under the care of Defendant Mui, a doctor at Mercy Hospital, for his left jaw injury. In the emergency room, Plaintiff told staff that he sustained injuries to his left knee, left thigh and neck, and that he was in severe pain. A doctor in the emergency room noted these complaints in his reports. Examination revealed mild swelling of the left knee. A CT scan of

---

[1] Plaintiff alleges that Mercy Hospital contracts with CDCR to provide medical treatment to inmates.

3

Plaintiff's face showed a mandibular fracture. An x-ray of Plaintiff's left knee showed a prominent effusion and a non-displaced fracture of the distal femur.

Dr. Mui admitted Plaintiff for his mandibular fracture. Plaintiff was placed on the fifth floor prison ward, where his left leg was handcuffed to the foot of the bed. Plaintiff told prison guards and nurses that his left leg was in severe pain, but it remained cuffed to the bed for 44 hours.

On January 20, 2011, Dr. Suesberry told Plaintiff that he would need to undergo a closed reduction of the jaw, with fixation. Dr. Mui told Plaintiff that a CT of his head showed a left condylar neck fracture. Dr. Mui did not mention knee x-rays and Plaintiff told him again that his left knee and thigh were in severe pain. Dr. Mui said he was not treating the left knee and told Plaintiff that he was admitted only for the mandibular fracture. Plaintiff told him that an emergency room doctor had documented his knee pain and that x-rays were taken, but Dr. Mui would not listen.

On January 21, 2011, Plaintiff was discharged from Mercy Hospital and admitted to the prison infirmary. He had undergone surgery and his jaw would be wired shut for 5 to 6 weeks. Plaintiff was placed under the care of Defendant Neubarth. Plaintiff informed him that he could not put weight on his left leg and Neubarth was aware of the x-ray done at Mercy Hospital. Despite this, Defendant Neubarth kept ordering Plaintiff to walk and exercise his left leg. He did not refer Plaintiff for an MRI, or order any treatment.

On February 22, 2011, Plaintiff was transported to see Dr. Suesberry. He cut the bands holding Plaintiff's jaw closed and told Plaintiff that he would remove the wires, bars and arches on March 8, 2011. Dr. Neubarth was responsible for requesting the follow-up on March 8, 2011, and knew of Dr. Suesberry's February 22, 2011, orders. Dr. Neubarth failed to request further treatment and Plaintiff went 55 days past March 8, 2011, with the wires, bars and arches intact. Plaintiff did not return to Dr. Suesberry.

On February 24, 2011, Plaintiff was discharged from the prison infirmary and placed in Ad-Seg.

On March 9, 2011, Plaintiff saw Defendant Ancheta, a dentist. Plaintiff told him that he was supposed to see Dr. Suesberry on March 8, 2011, for removal of the hardware. Dr. Ancheta told Plaintiff that she would take care of everything. Dr. Ancheta failed to request further treatment, however.

On March 11, 2011, Plaintiff was examined by P.A. Byers after submitting a health care request. Byers said that something was wrong with Plaintiff's left knee and ordered an MRI, which was performed on May 3, 2011. On May 5, 2011, Plaintiff was referred to specialist Dr. Smith. During his examination on July 6, 2011, Dr. Smith noted that Plaintiff was still in severe pain and had reduced range of motion and weakness in the left knee.

On April 3, 2012, Plaintiff was medically declared permanently mobility impaired. As of March 22, 2012, he was awaiting surgery for a left hernia due to his left knee and thigh injuries.

## III. RULE 12(B)(6)

### A. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)) (quotation marks omitted); Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 996-97 (9th Cir. 2006); Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000). Further, although the pleading standard is now higher, the Ninth Circuit has continued to

emphasize that prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. May 25, 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

     B.     Prior Screening Order

On March 11, 2013, the Court issued Findings and Recommendations indicating that it had screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found that it stated numerous causes of action.  The Court's conclusion was based upon the same legal standards as this 12(b)(6) motion, and the screening order may not be ignored or disregarded.  Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Ingle v. Circuit City, 408 F.3d 592, 594 (9th Cir. 2005).

To the contrary, the existence of a screening order which utilized the same legal standard upon which a subsequent motion to dismiss relies necessarily implicates the law of the case doctrine, and as a result, Defendant is expected, reasonably so, to articulate the grounds for his 12(b)(6) motion in light of a screening order finding the complaint stated a claim.  Ingle, 408 F.3d at 594; Thomas v. Hickman, No. CV F 06-0215 AWI SMS, 2008 WL 2233566, at *2-3 (E.D. Cal. May 28, 2008).

If the defendant, in a case which has been screened, believes there is a good faith basis for revisiting a prior determination made in a screening order, they must identify the basis for their motion, be it error, an intervening change in the law, or some other recognized exception to the law of the case doctrine.  Ingle, 408 F.3d at 594 ("A district court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result.").

The duty of good faith and candor requires as much, and frivolous motions which serve only to unnecessarily multiply the proceedings may subject the moving parties to sanctions. Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1119 (9th Cir. 2000). Parties are not entitled to a gratuitous second bite at the apple at the expense of judicial resources and in disregard of court orders.  Ingle, 408 F.3d at 594 (The law of the case "doctrine has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.") (internal quotation marks and citation omitted); Thomas, 2008 WL 2233566, at *3 (for important policy reasons, the law of the case doctrine disallows parties from a second bite at the apple).

Therefore, Rule 12(b)(6) motions which fail to acknowledge the prior procedural history and screening orders, and which fail to articulate the reasons for the motion in light of the prior relevant orders, implicate the law of the case doctrine, unnecessarily multiply the proceedings, and fall well below the level of practice which is expected in federal court.

With this standard in mind, the Court will now address Defendant's arguments.

C.    Analysis

    1.    *Legal Standard*

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

      2.    *Discussion*

Plaintiff's complaint was screened and the Court determined that it stated an Eighth Amendment medical claim against Defendant Mui.  Defendant Mui presents no arguments which persuade the Court it committed clear error in determining that Plaintiff's Eighth Amendment claim was cognizable, or that any other grounds justifying relief from the screening order exist.

Defendant Mui's argument is based on his contention that he was contacted simply to secure an ENT consult, which he did.  He also contends that he cannot be held liable based on a single contact.

While there may be situations where a single contact will not support a claim for relief, this case does not present such facts.  Plaintiff recognizes that he was admitted for a jaw fracture, but he also alleges that he told emergency room staff about severe pain in his left leg, and that an x-ray revealed a non-displaced fracture.  He further alleges that he told Defendant Mui about his severe left leg pain and the related x-ray, but Defendant Mui refused to treat Plaintiff's left leg and told him that he was admitted only for the jaw fracture.

Under these facts, Plaintiff shows (1) the existence of a serious medical need; and (2) a purposeful failure to provide treatment.  Defendant Mui's reliance on the limited scope of Plaintiff's admittance and/or his single interaction with Plaintiff does not, *at the pleading stage*, negate Plaintiff's factual allegations.  Plaintiff may have seen Defendant Mui only once, but Plaintiff was not free to see other medical providers as he wished.  In other words, Plaintiff requested treatment from the doctor who was in charge of his care at Mercy Hospital, and that

doctor refused to provide treatment.  That Plaintiff was seen by other medical providers at the prison and/or hospital is of no consequence to Defendant Mui's alleged refusal to treat Plaintiff for a serious medical need.

## IV.     CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Defendant Mui's motion to dismiss be DENIED; and

2.     Defendant Mui file a responsive pleading within thirty (30) days of the date of service of the order adopting these Findings and Recommendations.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty one (21) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **May 19, 2014**                         /s/ Dennis L. Beck
                                                    UNITED STATES MAGISTRATE JUDGE