UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WHEELER,<br><br>        Plaintiff,<br><br>    v.<br><br>BYRON MUI,<br><br>        Defendant. | No. 1:12-cv-00861-DAD-GSA<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 331) |

Plaintiff Eric Wheeler proceeds in this civil rights action against defendant Dr. Byron Mui for deliberate indifference to a serious medical need, in violation of the Eighth Amendment of the United States Constitution. Plaintiff's claim arises out of medical treatment he received from defendant Mui in late January 2011, at Mercy Hospital in Bakersfield, California. At the time of the medical treatment in question plaintiff was in the custody of the California Department of Corrections and Rehabilitation (CDCR) and remains so today.

This matter came before the court on February 7, 2017, for hearing on defendant Mui's motion for summary judgment. Attorneys Mordecai Boone and Daniel Solomon appeared on behalf of plaintiff. Attorney Thomas Feher appeared on behalf of defendant. Having considered the parties' written submissions and oral argument and for the reasons set forth below, the court will deny defendant's motion for summary judgment.

/////

**BACKGROUND**

**A.      Procedural Background**

On August 18, 2016, after determining that the parties planned to dispute whether defendant Mui acted under color of state law pursuant to 42 U.S.C. § 1983, the court reopened discovery in this action on that limited issue for a brief period of time.  (Doc. No. 314.)  The parties later agreed to, and the court granted, a stipulation that upon close of discovery, defendant would be afforded another opportunity to file a motion for summary judgment.  (*See* Doc. No. 330.)  Accordingly, on January 10, 2017, defendant Mui filed the instant motion, arguing that he did not act under color of law when he treated plaintiff in late January 2011.  (Doc. No. 331.)  On January 24, 2017, plaintiff filed his opposition.  (Doc. No. 333.)  On January 31, 2017, defendant filed his reply.  (Doc. No. 334.)

**B.      Relevant Factual Background on Summary Judgment**

The facts relevant to this motion are largely undisputed.[1]  For many years, the California Department of Corrections and Rehabilitation ("CDCR") contracted with various companies for the provision of medical services.  In 2000, Centennial Medical Group, Inc. ("Centennial"), a medical services corporation, entered into a professional services agreement with CDCR to provide services to state prisoners.  (UF Nos. 10–13, 15.)  That same year, defendant Mui's professional corporation—Byron S. K. Mui, M.D., F.A.C.P., a Medical Corporation—entered into a professional services agreement with Centennial to provide medical services on Centennial's behalf.  (UF Nos. 8, 14.)  In 2001 or 2002, Colonial Medical Group, Inc. ("Colonial"), a separate medical services corporation, entered into a contract with CDCR to provide outside medical services to state prisoners.  (UF No. 16.)  Sometime thereafter, Colonial began providing CDCR with outside medical services and made payments to defendant Mui for

/////

---

[1] The facts described herein are derived primarily from the parties' submissions on summary judgment, including defendant's statement of undisputed facts (Doc. No. 331-2), plaintiff's response (Doc. No. 333-1), and defendant's reply (Doc. No. 334-1) (collectively "UF"); undisputed facts presented in defendants' prior motion for summary judgment (*see* Doc. No. 207); and the undisputed facts enumerated in the operative pretrial order in this case (*see* Doc. No. 301).

1 services he rendered. (UF No. 17.)[2]

2 By January 2011, certain Colonial owners also served as on-call physicians for the company. (UF No. 21.) At the time, Colonial contracted with other non-owner physicians to provide services when the owner-physicians were unavailable. (UF No. 22.) Defendant Mui was one such non-owner physician. (*See* UF No. 18.) Typically at the California Substance Abuse Treatment Facility ("SATF"), a CDCR facility, when a prisoner required a level of treatment higher than that which could be provided at that facility, a member of the SATF medical staff would contact Centennial or Colonial. (UF No. 32.) Depending on the urgency of the call, a system existed to route the call to an available physician. (UF No. 33.) When defendant Mui was on call, he would typically advise prison officials to transport patients in need of care to the Mercy Hospital emergency room. (UF No. 34.) He made decisions to admit and treat such patients, without involvement from SATF or CDCR. (*Id.*)

At all times relevant to this case, plaintiff Wheeler was a state prisoner at SATF. (UF No. 4.) On January 19, 2011, plaintiff sustained a fractured jaw while at SATF. (UF No. 3.) That day, Michael Ross, a physician's assistant at SATF, assessed plaintiff and determined he should be referred to an outside hospital. (UF Nos. 39–40.) Ross contacted Centennial or Colonial by calling a phone number provided to him and was connected to defendant Dr. Mui. (UF Nos. 41–43.) Later the same day, plaintiff was transported to Mercy Hospital emergency room and treated there until he was discharged back to SATF on January 21, 2011. (UF Nos. 44–45.) Mr. Ross was aware at the time that plaintiff had a fractured jaw, and additionally that he sustained an injury to his leg. He understood that plaintiff would receive a complete physical examination once he arrived at Mercy Hospital, and that any necessary treatment for plaintiff's leg injury

---

[2] The parties do not dispute that defendant Dr. Mui was working with Colonial, but they do dispute whether his relationship with Colonial constituted an employment relationship or an independent contractor relationship. Additionally, defendant asserts that after Colonial began providing services, it made payments to defendant under the professional services agreement between Centennial and defendant Mui. (*See* UF No. 17.) Plaintiff disagrees and argues that there is no evidence of any written assignment of the professional services agreement to Colonial, and that payments by Colonial were made payable to defendant Mui individually, rather than to his professional corporation. (*See* UF Nos. 6, 17.)

1  would also be provided there. (Doc. No. 207-3, Ex. G.)

2  After plaintiff arrived at Mercy Hospital, his left leg was examined and x-rayed, and physicians diagnosed a non-displaced fracture of plaintiff's left femur. (UF No. 46.) On January 20, 2011, a physician performed a closed reduction surgery to repair plaintiff's fractured jaw. (Doc. No. 301 at 3 ¶ 14.) On January 21, 2011, defendant Mui determined that plaintiff was doing well after the surgery and that his discharge was appropriate. (*Id.* at 3 ¶ 15.) Plaintiff was discharged from Mercy Hospital on January 21, 2011, and was transported back to the medical facility at SATF. (*Id.* at 3 ¶ 16.) Defendant Dr. Mui did not render further medical care after plaintiff's discharge from the hospital. (*Id.* at 3 ¶ 17.) On April 3, 2012, plaintiff was medically declared permanently mobility-impaired in his left hip and leg as a result of the injury. (*Id.* at 4 ¶ 18.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact

actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must demonstrate that specific facts in contention are material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**DISCUSSION**

Defendant Dr. Mui brings this motion for summary judgment on grounds that he was not acting under color of state law when he treated plaintiff in late January 2011. The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

> Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff proceeding under this statute must prove that (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, a plaintiff claiming constitutional violations must prove that the "actions complained of are 'fairly attributable' to the government." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1340 (9th Cir. 1997) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)); *see also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001) ("What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. . . . [N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.").

**A.      State Action through Private Conduct**

In general, private conduct is presumed not to constitute governmental action. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). A litigant may overcome this presumption by, for example, demonstrating that (1) a private party is endowed with powers or functions that are traditionally and exclusively governmental in nature; (2) the state jointly participated in the challenged activity; (3) the state coerced or significantly encouraged a private party's conduct; or (4) there is such a close nexus between the state and the challenged activity that seemingly private conduct may be treated as that of the state. *See id.* at 835–36; *see also Kirtley v. Rainey*, 326 F.3d 1088, 1092–96 (9th Cir. 2003); *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002).

In *West v. Atkins*, the United States Supreme Court held that while the provision of medical care is typically considered private activity, medical care provided to state prisoners is a public function. 487 U.S. 42, 57 n.15 ("Unlike the situation confronting free patients, the nonmedical functions of prison life inevitably influence the nature, timing, and form of medical care provided to inmates . . . ."). In that case, the Court concluded that a private physician acted

6

under color of state law when he provided medical services to a state prisoner pursuant to a professional services contract with the state. *Id.* at 54–55. As the Court explained, states have a constitutional obligation under the Eighth Amendment to provide adequate medical care to prisoners in their custody. *Id.* at 54 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In contracting with private physicians, the state deferred to their professional judgment to fulfill this obligation. *Id.* at 55. Moreover, a prisoner with a medical need may only turn to physicians employed, contracted, or otherwise authorized by the state for care. *Id.* At bottom, courts must look to the relationship between the state, the physician, and the prisoner, rather than whether a physician is on the state's payroll or is a party to a state contract. *Id.* at 56; *see also id.* at 55–56 ("It is the physician's *function* within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. . . . Contracting out prison medical care . . . does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." (emphasis added)).

In light of the decision in *West*, several courts have held that private physicians or hospitals having a contractual relationship with state authorities to provide medical services to inmates are acting under color of state law for purposes of § 1983. *See, e.g.*, *Sykes v. Athannasious*, No. 2:12-cv-02570-TLN-KJN, 2015 WL 4662736, at *7 (E.D. Cal. Aug. 5, 2015) (concluding that a private physician acted under color of law where CDCR contacted the physician, approved the prisoner's treatment, determined when and where the prisoner would be treated, paid the physician, and received and reviewed the physician's report regarding the prisoner's case), *findings and recommendations adopted*, No. 2:12-cv-02570-TLN-KJN, 2015 WL 5399491 (E.D. Cal. Sept. 14, 2015); *George v. Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 935 (N.D. Cal. 2010) (concluding that a private hospital and physician providing medical services to a county jail inmate pursuant to a contract with the county were state actors); *Ayala v. Andreasen*, No. 2:04-cv-00903-RRB-CMK, 2007 WL 1395093, at *3 (E.D. Cal. May 10, 2007) (concluding that a private hospital physician, as an agent of the hospital, acted under color of state law when performing medical services on a state prisoner pursuant to a contract between the hospital and the prisoner and a referral by prison officials), *findings and recommendations*

1 *adopted*, No. 2:04-CV-00903-RRB-CMK, 2007 WL 4239813 (E.D. Cal. Nov. 29, 2007); *see also*
2 *Conner v. Donnelly*, 42 F.3d 220, 226 (4th Cir. 1994) ("We hold that a private physician who
3 treats a prisoner upon referral by the state, and who knows that the patient is a prisoner,
4 voluntarily assumes the state's obligation to provide medical care to inmates."). In some
5 instances, however, courts have drawn a distinction between the facts confronted by the Supreme
6 Court in *West* and situations involving emergency medical care. *See, e.g.*, *Clewis v. California*
7 *Prison Health Care Servs.*, No. 2:09-cv-02120-JAM-AC, 2013 WL 2482521, at *6 (E.D. Cal.
8 June 10, 2013) (finding that private medical providers were not acting under color of law when
9 providing emergency services "incidental and transitory" to the state's penal system), *findings*
10 *and recommendations adopted*, No. 2:09-cv-02120-JAM-AC, ECF No. 79 (E.D. Cal. July 16,
11 2013); *see also Stratton v. Buck*, 498 F. App'x 674, 676 (9th Cir. 2012) ("[T]here is no Ninth
12 Circuit case law holding that emergency medical care is a traditionally and exclusively
13 governmental function.").[3]

**B.     Whether Defendant Dr. Mui Acted Under Color of State Law**

Here, the principal question in dispute is whether there is a sufficient relationship between state prison officials, defendant Dr. Mui, and plaintiff Wheeler, such that defendant Mui may be said to have acted under color of state law in providing medical services to plaintiff in January 2011. Viewing the evidence here in the light most favorable to plaintiff as the non-moving party, this court concludes that that summary judgment on this question in favor of defendant is not appropriate.

The evidence presented on summary judgment indicates that plaintiff Wheeler was in the custody of prison officials at SATF on January 19, 2011. By this time, CDCR had contracted with Centennial and/or Colonial to provide outside medical services. After assessing plaintiff's condition, Mr. Ross contacted defendant Dr. Mui by telephone, and the two had a discussion regarding plaintiff's case. Consistent with defendant's typical advice, plaintiff was then transported to the Mercy Hospital emergency room for treatment by defendant. Colonial later

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

8

1  issued a check to "Byron Mui MD," dated August 17, 2011. (*See* UF No. 17, Declaration of
2  Thomas Bell (Doc. No. 333-2, Ex. B) ("Bell Decl."), Ex. 5.) Drawing all inferences from this
3  evidence in plaintiff's favor, a reasonable jury could find that defendant Mui was aware of
4  plaintiff's medical need, and that prison officials contacted defendant and transported plaintiff to
5  Mercy Hospital in accordance with an ongoing contractual relationship between CDCR and
6  certain private physician groups for the purpose of providing medical care to prisoners.

7        While the parties agree that a relationship of some form existed between defendant Dr.
8  Mui and Colonial during the relevant time period,[4] defendant argues that such a relationship
9  cannot form the basis for state action because neither he nor his corporation was aware of or
10 involved in negotiating the terms of any agreement between Colonial and CDCR. (*See* Doc. No.
11 331-1 at 7.) Defendant Mui relies on a district court decision in *Cazares v. Nassif* for the
12 proposition that absent a contract between a physician and CDCR, the physician cannot be said to
13 be acting under color of law. (*Id.* at 8–10.) *See* No. 1:08-cv-00232-AWI-SAB, 2014 WL
14 2118098 (E.D. Cal. May 21, 2014), *findings and recommendations adopted sub nom. Cazares v.*
15 *Tarek*, No. 1:08-cv-00232-AWI-SAB, 2014 WL 4377949 (E.D. Cal. Sept. 4, 2014). In *Cazares*,
16 a prisoner fell during a soccer game at a state prison and was transported to a nearby emergency
17 room for care. *Id.* at *2. The prisoner was treated by an emergency room physician who worked
18 pursuant to an independent contractor agreement with the hospital. *Id.* at *5. The district court
19 concluded that unlike in *West*, the physician in the case before it was not acting under color of
20 state law. *Id.*

21       The scenario described in *Cazares* is readily distinguishable in several ways from the facts
22 as established by the evidence now before the court on summary judgment . First, it is undisputed
23 here that Colonial had a contractual duty to provide certain medical care to CDCR prisoners,
24 unlike the hospital that contracted with the physician in *Cazares*. Second, the evidence before the

---

[4] The parties appear to dispute the proper characterization of that relationship: plaintiff argues that it was an employment relationship, while defendant argues that it was an independent contractor relationship. That legal distinction would appear to be irrelevant for purposes of resolving the pending summary judgment motion. In either case, defendant Dr. Mui was charged with rendering his professional judgment in providing medical care to prisoners on behalf of Colonial.

1  court supports an inference that defendant Mui's agreement with Colonial specifically covered
2  medical care for CDCR prisoners.  While the parties have not presented the precise details of any
3  such agreement, defendant indicates that Colonial continued work with him in a manner similar to
4  the arrangement that existed under his professional services agreement with Centennial.  (*See* UF
5  No. 17.)  That Centennial agreement specifically contemplated the provision of "Specialty
6  Services to patients for [Centennial] referred from the California Department of Corrections."
7  (Bell Decl., Ex. 4.)  Thus, a jury could reasonably conclude from this evidence that the medical
8  care provided by defendant was fairly attributable to the state, given the limited scope of his
9  agreement with Centennial and Colonial.  Third, Mr. Ross directly contacted defendant prior to
10 having plaintiff transported to the hospital.  A reasonable jury could therefore conclude that Mr.
11 Ross's communication with defendant Dr. Mui, in which a prison official discussed details of a
12 prisoner's medical need to an outside physician, took place because of the existing contractual
13 relationship between Colonial and CDCR.  Alternatively, a jury could find that such a
14 communication formed the basis of an oral agreement, separate from the relationship between
15 Colonial and CDCR, whereby the state deferred directly to defendant Dr. Mui's professional
16 judgment to fulfill its obligation under Eighth Amendment—and defendant assumed such an
17 obligation—to provide adequate medical care to its prisoners.  *See West*, 487 U.S. at 55.  Fourth,
18 the fact that Mr. Ross contacted defendant, rather than immediately transporting plaintiff to the
19 emergency room, at the very least raises a factual issue as to whether this was an emergency
20 situation like the one in *Cazares* and other cases falling outside the scope of the Supreme Court's
21 decision in *West*.
22      Because a genuine issue of material fact exists with regard to the nature of defendant
23 Mui's relationship with the state in regard to plaintiff's medical care, defendant is not entitled to
24 summary judgment in his favor.
25 /////
26 /////
27 /////
28 /////

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment regarding whether he acted under color of state law (Doc. No. 331) is denied.

IT IS SO ORDERED.

Dated: __**February 9, 2017**__  _____
UNITED STATES DISTRICT JUDGE